# Exhibit 3

# BELLUS ACADEMY

June 20, 2023
The Honorable Miguel Cardona
Secretary of Education
U.S. Department of Education
400 Maryland Avenue, SW
Washington, DC 20202

Re: Comments of Bellus Academy on the Proposed Financial Value Transparency and Gainful Employment (GE) (Docket ID ED–2023–OPE–0089)

Dear Secretary Cardona:

Bellus Academy respectfully submits comments in response to the request from the U.S. Department of Education (the "Department") on its Notice of Proposed Rulemaking ("NPRM") concerning Financial Value Transparency and Gainful Employment (GE) published in the Federal Register on May 19, 2023 (Docket ID ED–2023–OPE–0089).

Bellus Academy has been owned by William D Lynch since 1972 with 3 locations in San Diego County, California with 3 separate OPEID's. In 2005, Lynelle Lynch (wife of Mr. Lynch) assumed the role of President and in 2009 became a 33% owner. The schools were rebranded Bellus Academy in 2009. In 2011 the Manhattan Kansas location was added as a branch campus expanding from 3 to 4 locations. Bellus Academy is a proud member of both the American Association of Cosmetology Schools (AACS) and Career Education Colleges and Universities ( CECU) where we support our students with the education and leadership we receive from both associations.

Annually the schools enroll approximately 1254 students into 23 programs. Bellus has been recognized for our relentless dedication to educational excellence with a variety of advanced curriculum added into our programs.

We have a rich history of overachieving the accreditation rates:

| 2021 Year | Poway, CA | El Cajon, CA | Chula Vista, CA | Manhattan, KS |
|---|---|---|---|---|
| Licensure Rate | 94% | 100% | 80% | 100% |
| Graduation Rate | 83% | 84% | 72% | 84% |
| Placement Rate | 65% | 66% | 63% | 80% |

13266 Poway Rd.,
Poway, CA 92064
(858) 748-1490

970 Broadway, Suite 110
Chula Vista, CA 91911
(619) 474-6607

1073 E. Main St.,
El Cajon, CA 92021
(619) 442-3407

1130 Westloop Pl.,
Manhattan, KS 66502
(785) 539-1837

bellusacademy.edu

# BELLUS ACADEMY

The schools' demographics are listed below by school:

|  | Poway, CA | El Cajon, CA | Chula Vista, CA | Manhattan, KS |
|---|---|---|---|---|
| **Diversity %** | | | | |
| Native American | 2% | 1% | 0% | 0% |
| Asian | 5% | 6% | 7% | 1% |
| Black or African American | 5% | 18% | 15% | 11% |
| Hispanic/ Latino | 36% | 31% | 59% | 12% |
| Native Hawaiian | 2% | 0% | 1% | 0% |
| White | 39% | 30% | 9% | 69% |
| Two or More Races | 12% | 12% | 7% | 8% |
| **Female %** | 93% | 97% | 84% | 97% |
| **Pell eligible %** | 57% | 63% | 83% | 53% |
| **Age %** | | | | |
| 24 and Under | 51% | 43% | 41% | 68% |
| 25 and Over | 49% | 57% | 59% | 33% |

Although we are generally supportive of the Department's goals to promote transparency, competence, stability, and effective outcomes for students, we have numerous concerns regarding the Department's regulatory proposals. In particular, there are several aspects of the proposed rules that are legally problematic or will create unworkable standards for institutions and adversely impact the workforce.

Our concerns are set out below. We hope our comments play a constructive role in helping the Department develop a final rule that benefits the entire professional beauty and wellness industry and the higher education community that supports the industry.

**Financial Value Transparency and Gainful Employment (GE)**

**First, Bellus Academy supports the application of the proposed Financial Value Transparency framework to all institutions and programs**. We generally support accountability frameworks that disclose to the public meaningful, well-reasoned, and accurate student outcome metrics for all programs at all institutions in ways that protect both students and taxpayers and respect institutional missions.

**We do not believe the Department should make program eligibility determinations based on metrics calculated using data from years that precede the effective date of the rule.** Specifically, in California we have been devastated by COVID with work restrictions and our graduates had multiple challenges during this time. Any new rule must focus on future years.

**The Department must take into consideration programs where the state board has reduced the hours required for licensure which has also significantly lowered the debt to the students.** In

California we reduced the Cosmetology program from 1600 hours to 1000 hours and the Barbering program was reduced from 1500 hours to 1000 hours. The effective date for Bellus Academy on the change of programs was January 1, 2023. The change in hours has significantly lowered the student debt. Utilizing data from years prior to 2023 will not accurately report the current debt for future students in both Cosmetology and Barbering.

**We believe that the Department must include a transitional rate opportunity for GE programs.** The proposed rule has the potential to have all the Cosmetology related programs fail, and any rule that would eliminate an industry is not good policy. The Proprietary / For – Profits schools educate approximately 85% nationally of all Cosmetology graduates, and schools must be given the opportunity to adjust to program specifics that will allow them to serve this very important profession.

**We believe the Department must develop a solution to the problem of unreported and under reported income.** The Beauty industry is recognized for both under-reporting as well as the lack of tip reporting. This is a well-documented issue that has been supported by the IRS and has been utilized in legal proceedings under prior GE rules. The Beauty and Wellness industry has taken the lead in collecting industry data to better present facts on the real earnings of professionals in the industry. A copy of these reports is available as an attachment to this letter. In addition, there are numerous categories of IRS codes that apply to the beauty and wellness profession which might miss income from graduates. Many professionals work independently as a free-lance, booth renter or become an owner that would not be captured as income.

**One of our strongest oppositions to the GE rule is the implementation of an accountability framework that includes an earnings premium measure as contemplated in the proposed rule because the Earnings Threshold is not a meaningful or appropriate basis of comparison.** The proposed rule utilizes high school graduates who are between the ages of 25 to 34 working full-time, which is not an apple-to-apple comparison. Graduates from Beauty school can be 19 – 24 and the average hours worked for full-time professionals is typically 26 – 30 hours. This fact is detailed in the Qnity and ISPA report that is attached. Graduates of beauty school should not be compared to a cohort that is significantly different in both the number of hours they work as well as their age. Individuals who select a career in Cosmetology are predominantly women and choose this profession for the work / life balance that it affords them and their family. We find the earnings threshold to be discriminatory to a sector of professionals who choose a career in beauty and wellness for very specific reasons.

**We are strongly opposed to the Department's removal of the alternate earnings appeal. We recognize that this process must provide an institution an adequate opportunity to present and have considered rebuttal evidence of the earnings data based on the vast range of careers a graduate can select.** Many of our Bellus Academy graduates are women who have selected this career for work life balance as they raise their family. Many take a year off for the birth of a new child and the family has the ability to afford both taking the time off and repaying their student loan. Earnings is not a metric that can determine the viability of a program when there are so many other

BELLUS ACADEMY

life factors. We strongly encourage the Department to identify another metric to determine the value of a program such as loan repayment rates.

**We do not believe the Department should impose sanctions for metrics calculated using data from years that exceed required record retention periods.** At Bellus Academy we have implemented the Department of Education's requirement for record retention and therefore we only keep records for 7 years. The last year we have stored is the academic year of 2016.

**On its website, and in its various acknowledgements and warnings, we believe the Department should recognize that there are many ways to measure postsecondary education value, not just the debt to earnings ratio.** At Bellus Academy we support our students with financial literacy and service-learning curriculum that builds strong life skills and personal character. Students who graduate from Bellus Academy have life skills beyond their trade skills that prepare them for the real world. We would like to recommend that instead of only valuing programs based on debt to earnings, the department evaluate life skills provided within the curriculum that positions students for success.

**We believe the Department must develop a means to account for the impact of geographic location on reported earnings.** Bellus Academy has campuses in California and Kansas. The compensation for the 2 states is very different, as is the cost of living. We strongly believe that geography must be considered when calculating the debt to earnings rates.

**We do not believe that an institution should be penalized if a program is being responsibly retired and produces failing D/E rates in its final years.** Bellus Academy has eliminated programs over the years as we have identified new programs that better fit the industry service demands. A program that an institution voluntarily determines to wind down could suffer a decline in its D/E rates or earnings premium, particularly if the decision to wind down the program was based in part on market changes. Under the Department's proposal, an institution would be prohibited from reintroducing that program for three years, even if the new version is shorter, less expensive, and redesigned to be more attractive to employers.

**We believe that students who have enrolled in or remained enrolled in a program with full knowledge of a program's D/E rates and earnings premium should be permitted to receive Title IV aid until they complete the program.** As stated previously, the programs in Beauty and Wellness have a vast range of career and income options. If someone has decided to complete a program where the majority of the graduates are women and chose to work part time, this should not cause a currently enrolled student to lose their Title IV access.

**We believe the Department must provide institutions with a meaningful opportunity to review and correct its D/E rate data and calculations prior to implementing sanctions.** The Department must allow the schools time to review the loan data and check for accuracy. Bellus Academy enrolls many students who have had prior higher education and loan debt. One reason is that the society pressure to attend "college" is very prevalent and approximately 75% of our students come to us with some

BELLUS ACADEMY

prior higher education. We would not want this data to be included in our loan debt, therefore we would like the opportunity to review and correct the loan data by student.

### Student Warnings and Acknowledgments (Subpart S: 668.605)

**We strongly believe that the proposed warnings will cause irreparable harm to programs, making it impossible to recruit future students and leading to program teach-out.** A school is required to make significant student warnings if it fails only a single year. As such, the current proposal affords institutions virtually no opportunity to adjust for market shifts or other unforeseen events. Under the Department's proposal, the program would be required to make the student warnings due to this single-year anomaly, which we believe would likely force it to close, eliminating an entire school without time to adjust. We urge the Department to develop a more reasonable standard.

### General Financial Responsibility (668.171)

**We believe the Department should simplify the proposed financial responsibility framework.** The rule lists 40 "events" that could lead an institution to a determination that it is not financially responsible. Further, the proposed regulations identify at least **20** different events or activities that must be reported to the Department if they may have occurred. The Department should eliminate this portion of the rule.

**We believe the Department should guarantee institutions an opportunity to provide input and evidence, and commit to reviewing any such input or evidence, prior to reaching any determination that an institution is not financially responsible.** It would be unreasonable and inconsistent with notions of due process to penalize an institution prior to affording it an opportunity to provide information concerning the nature and materiality of a triggering event to the institution's financial health. Bellus Academy has a history of meeting our financial ratios and having strong audit reports. It would be very concerning not to have a just process if at some point in our future there was concern over our financial responsibility. Moreover, it would be poor public policy.

### Program Participation Agreement (668.14)

**We believe the Department should eliminate co-signature requirement at proposed § 668.14(a)(3)(ii) as it is inconsistent with the Department's statutory authority.** The Department's authority to require financial guarantees from owners derives from HEA Section 498(e), which provides that the Secretary has the authority to require financial guarantees from the institution and *individuals* who exercise substantial control. The Secretary does not have statutory authority to require financial guarantee from an *entity*. The Department must also amend the proposed regulation to ensure that it does not require financial guarantees from institutions that meet the requirements of HEA § 498(e)(4).

**The Department should eliminate its proposed edits to § 668.14(b)(26), which would cap the Title IV eligibility for certain programs that lead to gainful employment in a recognized occupation.** The length of educational programs, regardless of industry, is the prerogative of institutions and the



purview of accreditors. Institutions are in the best positions to determine appropriate program lengths and curricula. Bellus Academy has both state board licensed programs as well as programs of longer length that lead to an international certificate. Students who seek our advanced training should be allowed to take the program that will best set them up for success. Bellus Academy has dual oversight within the state of California and Kansas and the state agency has approved all of our program offerings. In addition, we are accredited by NACCAS, and the accreditor has a very detailed process to approve programs which we have utilized to have our programs established as recognized programs for Title IV eligibility for our students. The Department's proposed cap attempts to assert federal control into an area where such control is not appropriate. We observe that Congress, concerned with the potential for such overreach, expressly prohibits the Department from attempting to "exercise any direction, supervision, or control over the curriculum, program of instruction, administration, or personnel of any educational institution."

**The Department should eliminate its proposed edits to § 668.14(b)(32)(ii), which unfairly limits student choices.** Under proposed § 668.14(b)(32)(ii), an institution must determine that a program satisfies the applicable educational prerequisites for professional licensure or certification requirements in the State where the student is enrolled. Many of Bellus Academy's students decide to move or work overseas and therefore must have access to certification programs that are international and not recognized by the state. The Department should not remove these programs and eliminate access for students who wish to take these programs.

## Standards of Administrative Capability (668.16)

**We believe the Department should eliminate its proposal to include "adequate career services" as a requirement for administrative capability.** Bellus Academy offers career services to all our students, and we value the service we provide. We already must perform this service, report our student outcomes to our state and accreditor, therefore we do not see the need for this additional rule to be added. We respectfully request that this is eliminated from the rule.

## Conclusion

Thank you for the opportunity to comment on proposed changes to the rules governing financial value transparency and gainful employment regulations.

We are available and stand ready to assist the Department with any follow-up questions regarding the above comments.

Sincerely,

*Lynelle Lynch*

Lynelle Lynch
CEO
Bellus Academy