# Exhibit 4

Case 4:24-cv-00508-P   Document 1-5   Filed 05/31/24   Page 2 of 5   PageID 148



Published on https://fsapartners.ed.gov/knowledge-center/library/dear-colleague-letters/2024-04-15/implementation-program-length-restrictions-gainful-employment-ge-programs

PUBLICATION DATE: April 15, 2024
DCL ID: GEN-24-06
SUBJECT: Implementation of Program Length Restrictions for Gainful Employment (GE) Programs

SUMMARY: This letter provides guidance and targeted flexibilities to institutions about upcoming changes to program length restrictions for nondegree GE programs.

Dear Colleague:

The Department has received numerous questions from institutions regarding the implementation of final Certification Procedures regulations published on October 31, 2023 (88 FR 74568). Among other provisions, those regulations limit the number of hours in a GE program to the greater of the minimum number of clock hours, credit hours, or the equivalent required for training in the recognized occupation for which the program prepares the student, as established by the state in which the institution is located or, in some cases, another state. As a result, some institutions may be required to reduce the number of credit or clock hours in a GE program in order to maintain Title IV eligibility. Additionally, in some cases a GE program will no longer qualify for Federal Pell Grant program eligibility and will need to satisfy placement and completion rate requirements in order to qualify for participation in the William D. Ford Direct Loan program. This letter provides guidance regarding the implementation of those new limitations and instructions for institutions that are required to reduce the number of hours in their GE programs.

## Current Requirements – 150 Percent Rule

Under the current regulation at 34 CFR § 668.14(b)(26), programs that are required to lead to gainful employment in a recognized occupation (GE programs) must demonstrate a reasonable relationship between the length of the program and entry-level requirements for the recognized occupation for which the program prepares the student, which is sometimes referred to as the "150 percent rule." This relationship is considered reasonable if the number of clock hours provided in the program does not exceed the greater of 150 percent of –

- The minimum number of clock hours required for training in the recognized occupation for which the program prepares the student, as established by the state in which the institution is located if the state has established such a requirement, or as established by any Federal agency; or

- The minimum number of clock hours required for training in the recognized occupation for which the program prepares the student as established in a state adjacent to the state in which the institution is located.

## Revised Requirements Impacting GE Program Length Effective July 1, 2024

The Financial Responsibility, Administrative Capability, Certification Procedures, and Ability to Benefit Final Rule published by the Department on October 31, 2023, amends the program length restrictions at § 668.14(b)(26) effective July 1, 2024 (88 FR 74568, 74696 ). The revised regulations rescind the existing 150 percent rule, further limiting the length of GE programs to the greater of –

- The required minimum number of clock hours, credit hours, or the equivalent required for training in the recognized occupation for which the program prepares the student, as established by the state in which the institution is located, if the state has established such a requirement or as established by any Federal agency; or

- Another state's required minimum number of clock hours, credit hours, or the equivalent required for training in the recognized occupation for which the program prepares the student if the institution is able to document and substantiate certain conditions as provided under § 668.14(b)(26)(ii)(B).

Please note this GE program length limitation does not apply for occupations where the state entry-level requirements include the completion of an associate or higher-level degree, or where the program is delivered entirely through distance education or correspondence courses.

Case 4:24-cv-00508-P   Document 1-5   Filed 05/31/24   Page 3 of 5   PageID 149

Applicable GE programs that exceed these length restrictions by any amount are ineligible in their entirety to participate in the Title IV programs.

## Program Length Reporting and Flexibilities for Existing Students

The above changes to GE program length restrictions will, in some cases, impact the maximum allowable length for Title IV-eligible GE programs currently offered by institutions. In such cases, institutions will ultimately be required to report the revised program length to the Department through Partner Connect once no students remain in the legacy version of the program, as further described below.

As the Department noted in the preamble to the final rule, we believe that it would not be appropriate for this new requirement to affect students who are already enrolled in eligible programs, as we do not want to disrupt those students' educational plans if their program were to lose Title IV eligibility due to exceeding the revised GE program length limitation (88 FR 74568, 74636). Therefore, we will permit institutions to continue offering a program after the implementation date of the regulations that exceeds the applicable maximum length for students who were enrolled in the program prior to the effective date of the regulatory change. For such existing GE programs, institutions will be allowed to continue to serve through completion students who enroll in the program on or before June 30, 2024, under the provisions of the 150 percent rule.

This will mean that some institutions may temporarily offer two versions of the same program concurrently, but they will not be able to enroll new students on or after July 1, 2024, in the version of the program that exceeds the number of hours required by the state. The specific procedures the institution must follow will depend upon the characteristics of the program.

### *Programs that continue to include the regulatory minimum hours*

The Department expects that, in many cases, the revised number of clock or credit hours will not result in the program becoming shorter than the regulatory minimums at § 668.8(d)(1) of 600 clock hours, 16 semester or trimester credit hours, or 24 quarter credit hours, as applicable. In cases where the revised program length does not drop below this threshold — or if the revised program includes at least 300 clock hours, 8 semester or trimester credit hours, or 12 quarter credit hours and only admits students who have completed the equivalent of an associate degree — the Department will not require the institution to report the revised program length until all students who enrolled on or before June 30, 2024, in the longer version of the program have graduated, transferred, or withdrawn. Once no eligible students remain in the legacy version of the program, the institution must then report the updated program length to the Department through Partner Connect and submit appropriate state and accreditation approval documentation reflecting the updated program length. Please note, however, that during this period in which the institution offers two versions of the same program, the institution must carefully track and document which students are associated with each version of the program and must correctly report payment period and disbursement information through the Department's Common Origination and Disbursement (COD) system.

For example, a community college offers a massage therapy program consisting of 900 clock hours, but the state requires only 750 hours for students to qualify to test for licensure (and no other exception applies). The program remains eligible, but eligible students who enroll in the program on or after July 1, 2024, will receive prorated Pell Grant amounts based on a program length of 750 clock hours. However, the Department will not enforce the 750-hour requirement for eligible students who first enrolled in the program on or before June 30, 2024. For these students, the community college may concurrently offer the 900-hour program and these students will remain eligible for unprorated Pell Grant awards based on the previous program length of 900 clock hours. Once all students who first enrolled on or before June 30, 2024, have graduated, transferred, or withdrawn from the program, the institution must report the revised program length of 750 clock hours to the Department through Partner Connect.

### *Programs that are reduced to fewer than the regulatory minimum hours – short-term programs*

In some cases, however, the rescission of the 150 percent rule may cause the length of a program to drop below the aforementioned minimums. Programs that admit students without the equivalent of an associate degree and that include less than 600 clock hours, 16 semester hours, or 24 quarter hours will no longer be eligible to participate in the Federal Pell Grant and Campus-based programs, but would remain eligible, at the institution's option, to participate in the Direct Loan program under § 668.8(d)(3). These programs, also known as short-term programs, must be offered in clock hours and consist of 300 to 599 clock hours. These programs also include certain additional requirements, as further discussed below.

In these situations, an otherwise-eligible student who began enrollment on or before June 30, 2024, in a program that met the minimum program-length criteria at §668.8(d)(1) can continue to receive Pell Grants and Campus-based funds until completing, transferring, or withdrawing from the program. Students beginning enrollment in the program on or after July 1, 2024, could be eligible only for Direct Loans. Programs that continue as short-term programs as of July 1, 2024, following the rescission of the 150 percent rule must report the shortened program length to the Department as a new program through Partner Connect, including appropriate state and accreditation approval documentation reflecting the updated program length, and wait for the Department's approval to offer Direct Loan funds to students while leaving the existing version of the program open on the application. The institution must subsequently report an end date for the previous version of the program once all students who

enrolled on or before June 30, 2024, have graduated, transferred, or withdrawn from the legacy program.

For example, a technical college offers a barbering program consisting of 700 clock hours, but the state requires only 500 hours for students to qualify to test for licensure (and no other exception applies). The program can remain eligible as a short-term program for purposes of the Direct Loan Program only, but the institution must report the new version of the program to the Department through Partner Connect within 10 days of when this version of the program is first offered. Eligible students who enroll in the program on or after July 1, 2024, could only receive Direct Loans. However, the Department will not enforce the 500-hour requirement for eligible students who first enrolled in the legacy program on or before June 30, 2024. For these students, the technical college may concurrently offer the 700-hour program and these students will remain eligible for Title IV awards, including Pell Grants, based on the previous program length of 700 clock hours. Once all students who first enrolled in the program on or before June 30, 2024, have graduated, transferred, or withdrawn from the program, the institution must report an end date for the legacy version of the program through Partner Connect within 10 days.

### *Programs that are reduced to fewer than the regulatory minimum hours – ineligible programs*

Programs that are required by the new rule to drop below 300 clock hours, 8 semester hours, or 12 quarter hours will no longer meet the regulatory definition of an eligible educational program for purposes of an institution's Title IV program participation. Therefore, students who newly enroll in, or re-enroll after withdrawing or being withdrawn from, these educational programs on or after July 1, 2024, will not be eligible for Title IV aid. However, the institution may continue to concurrently offer the program at the original higher clock-hours for students who are enrolled prior to that date, and these students will remain eligible for Title IV aid until those students withdraw, transfer, or graduate from the program. If the institution reduces the length of the program or chooses to discontinue the program, the institution must report the change in eligibility status to the Department no more than 10 days after the date that the last Title IV-eligible student ceases enrollment in the program. An institution that fails to timely report a required update may be subject to additional oversight requirements or an adverse action.

For example, an institution offers a nail technician program consisting of 400 clock hours, but the state requires only 275 clock hours for students to qualify to test for licensure (and no other exception applies). This short-term program will become ineligible to participate in the Title IV programs as of July 1, 2024, the effective date of the regulations. However, the Department will not enforce the 275-hour requirement for eligible students who first enrolled in the program on or before June 30, 2024, and who remain continuously enrolled in the educational program from June 30, 2024, until they graduate, transfer or withdraw from the program. For these students, the institution may concurrently offer the 400-hour program students and these students will remain eligible for Direct Loans based on the previous program length of 400 clock hours. Once all students who first enrolled in the program on or before June 30, 2024, have graduated, transferred, or withdrawn from the program, the institution must report an end date for the program through Partner Connect within 10 days. An institution may allow a student to resume enrollment in such an educational program following the expiration of an approved leave of absence for Title IV purposes which starts on or before June 30, 2024, but an institution may not allow a student to begin an approved leave of absence for Title IV purposes from the program after June 30, 2024. In this case a student who requests a leave of absence from an educational program that no longer meets the regulatory definition of an eligible program must withdraw and the student may enroll in another eligible educational program after June 30, 2024.

## Completion and Placement Rates for Short-Term Programs

In addition to demonstrating reasonable program length under § 668.14(b)(26) as discussed above, § 668.8(e) stipulates that to maintain Direct Loan eligibility the institution must also demonstrate in their annual audit reports, including reports submitted under the Single Audit Act, that a short-term program maintains a substantiated completion rate of at least 70 percent and a substantiated placement rate of at least 70 percent, as calculated under the provisions of § 668.8(f). The Department is aware that, as a result of the rescission of the 150 percent rule, some existing programs will become short-term programs as of July 1, 2024, and that institutions may not be able to immediately track and substantiate completion and placement rates of existing longer programs for which those rates are not currently required.

Programs that are required to become short-term programs because of the regulatory change effective July 1, 2024, are not required to have placement and completion rates of at least 70 percent for the 2023-24 award year, during which time the program was not a short-term program. However, the program will be required to maintain those rates in the 2024-25 award year and thereafter. In these limited instances, the Department will not enforce the requirement that institutions report completion and placement rates for these programs in compliance audits under § 668.23 for fiscal years that begin prior to July 1, 2025.

## Limited Waiver of Two-Year Rule

Under §§ 600.5(a)(7) and 600.6(a)(6) there are some circumstances, such as a recent change of ownership or a recent initial certification to participate in the Title IV programs, where an institution is required to demonstrate that a program has been in existence for at least two years for that program to qualify for Title IV eligibility. These restrictions are commonly known as the "two-year rule." As explained above, as a result of the rescission of the 150 percent rule institutions will, in some cases, be required to report an existing program as a new program to the Department through Partner Connect. We recognize that, under

Case 4:24-cv-00508-P   Document 1-5   Filed 05/31/24    Page 5 of 5   PageID 151

these circumstances, the institution has not in fact developed or deployed a new program but is only reporting a new program to meet a regulatory requirement. As such, if the regulatory change is the sole reason for the reduction in length of a program, the Department will not treat the revised version of the program as a new program and will include the period during which the prior version of the program was in operation as part of the required two years of existence. Such institutions with a restriction on growth or that need to meet the two-year rule must enter a comment on the E-App in the "Section G. Educational Programs – Additional Information" field stating that they are requesting an exception to that limitation because the program modification is required by the rescission of the 150 percent rule. Institutions to which the two-year rule otherwise applies must still meet those requirements before adding any other new programs.

If you have further questions about GE program length restrictions or the flexibilities described in this letter, please use the Contact Customer Support form in FSA's Partner Connect Help Center. To submit a question, enter your name, email address, topic, and question. When submitting a question related to this Dear Colleague Letter, please select the topic "FSA Ask-A-FED/ Policy." In addition, the Department will post frequently asked questions to the OPE Guidance website.

Thank you for your continued support of the Title IV, HEA programs.

Sincerely,

Antoinette Flores
Deputy Assistant Secretary for Policy, Planning, and Innovation
Office of Postsecondary Education