UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| 360 DEGREE EDUCATION, LLC, d/b/a Cortiva Institute; and THE COALITION FOR CAREER SCHOOLS,<br><br>                            Plaintiffs,<br><br>v.<br><br>DEPARTMENT OF EDUCATION; and SECRETARY MIGUEL A. CARDONA, in his official capacity as Secretary of the Department of Education,<br><br>                            Defendants. | Case No. 4:24-cv-00508-P<br><br>**Reply Brief in Support of Plaintiffs' Motion for Temporary Restraining Order, Preliminary Injunction, and Stay** |

# **TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................. 1

ARGUMENT ......................................................................................................................... 1

    I.     Plaintiffs Have Timely Sought Preliminary Relief ................................................... 1

    II.    Plaintiffs Have Demonstrated Likelihood of Success on the Merits ....................... 2

    III.   Plaintiffs Have Demonstrated Irreparable Harm ..................................................... 8

    IV.   Plaintiffs Are Entitled to Preliminary Relief in the Form of an Injunction
           and/or Stay ............................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Am. Paper Inst. v. EPA*,
    660 F.2d 954 (4th Cir. 1981) ...............................................................................................6

*Anyadike v. Vernon Coll.*,
    No. 7:15-cv-157-O, 2015 WL 12964684 (N.D. Tex. Nov. 20, 2015) ...................................2

*Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*,
    627 F.3d 547 (5th Cir. 2010) ...............................................................................................9

*Bennett* v. *Spear*,
    520 U.S. 154 (1997)...........................................................................................................10

*Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*,
    98 F.4th 220 (5th Cir. 2024) ......................................................................................7, 9, 11

*Citizens Telecomms. Co. of Minn., LLC v. FCC*,
    901 F.3d 991 (8th Cir. 2018) ...............................................................................................6

*Energy Future Coalition* v. *EPA*,
    793 F.3d 141 (D.C. Cir. 2015)...........................................................................................10

*Fla. Businessmen for Free Enter. v. City of Hollywood*,
    648 F.2d 956 (5th Cir. 1981) ...............................................................................................8

*Friends of Boundary Waters Wilderness v. Bosworth*,
    437 F.3d 815 (8th Cir. 2006) ...............................................................................................6

*Glob. Van Lines, Inc. v. I.C.C.*,
    714 F.2d 1290 (5th Cir. 1983) .............................................................................................4

*Gonannies, Inc. v. Goupair.Com, Inc.*,
    464 F. Supp. 2d 603 (N.D. Tex. 2006) ................................................................................2

*Hunt v. Wash. St. Apple Adver. Comm'n*,
    432 U.S. 333 (1977)............................................................................................................9

*I.R.S. v. F.L.R.A.*,
    494 U.S. 922 (1990)............................................................................................................4

*Jiao v. Xu*,
    28 F.4th 591 (5th Cir. 2022) ...............................................................................................8

*Leaf Trading Cards, LLC v. Upper Deck Co.*,
   No. 3:17-cv-3200, 2019 WL 7882552 (N.D. Tex. Sept. 18, 2019) .................................1, 2

*Lloyd Noland Hosp. & Clinic v. Heckler*,
   762 F.2d 1561 (11th Cir. 1985) ..........................................................................................6

*Long Island Care at Home, Ltd. v. Coke*,
   551 U.S. 158 (2007) ...........................................................................................................7

*Louisiana v. U.S. Dep't of Energy*,
   90 F.4th 461 (5th Cir. 2024) ...........................................................................................4, 5

*MCR Oil Tools, LLC v. U.S. Dep't of Transp.*,
   No. 24-60230, 2024 WL 2954416 (5th Cir. June 12, 2024) ..............................................4

*Mock v. Garland*,
   75 F.4th 563 (5th Cir. 2023) ...........................................................................................7, 8

*Morgan Stanley Cap. Grp. Inc. v. Pub. Util. Dist. No. 1 of Snohomish Cnty., Wash.*,
   554 U.S. 527 (2008) ...........................................................................................................4

*NRA v. Vullo*,
   144 S. Ct. 1316 (2024) .......................................................................................................8

*SEC v. Chenery Corp.*,
   318 U.S. 80 (1943) .............................................................................................................3

*Second Amend. Found., Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
   3:21-CV-0116-B, 2023 WL 7490149 (N.D. Tex. Nov. 13, 2023) .....................................8

*Sierra Club v. EPA*,
   895 F.3d 1 (D.C. Cir. 2018) ...............................................................................................6

*State v. Rettig*,
   987 F.3d 518 (5th Cir. 2021) .............................................................................................1

*Tex. Gun Rts., Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
   No. 4:23-CV-00578-O, 2023 WL 8352316 (N.D. Tex. Oct. 4, 2023) ...............................4

*Texas v. Biden*,
   646 F. Supp. 3d 753 (N.D. Tex. 2022) ..............................................................................2

*Texas v. EPA*,
   829 F.3d 405 (5th Cir. 2016) .............................................................................................8

*United States v. Bellazerius*,
    24 F.3d 698 (5th Cir. 1994) ........................................................................................... 4

*VanDerStok v. Garland*,
    625 F. Supp. 3d 570 (N.D. Tex. 2022) ...................................................................... 1, 2

*Wages & White Lion Invs., L.L.C. v. F.D.A.*,
    16 F.4th 1130 (5th Cir. 2021) ........................................................................................ 8

*Warth v. Seldin*,
    422 U.S. 490 (1975) ....................................................................................................... 9

**STATUTES**

5 U.S.C. § 705 ................................................................................................................. 1, 11

20 U.S.C. § 1087c .................................................................................................................. 3

20 U.S.C. § 1087d .................................................................................................................. 3

20 U.S.C. § 1094 .................................................................................................................... 3

20 U.S.C. § 1099c-1 ........................................................................................................... 3, 4

20 U.S.C. § 1221e-3 ............................................................................................................... 3

20 U.S.C. § 3403 .................................................................................................................... 3

20 U.S.C. § 3474 .................................................................................................................... 3

**REGULATIONS**

34 C.F.R. § 668.14(b)(26)(ii)(A) ........................................................................................... 3

*Student Assistance General Provisions*, 83 Fed. Reg. 37,242 (July 31, 2018) ................. 7

**OTHER AUTHORITIES**

11A Wright & Miller, Fed. Prac. & Proc. Civ. § 2948.1 (3d ed.) ....................................... 2

ABA, Standing Committee on the Federal Judiciary,
*What It Is and How It Works* (Aug. 2023),
https://www.americanbar.org/content/dam/aba/administrative/
government_affairs_office/fjc-backgrounder.pdf ............................................................. 6

## INTRODUCTION

The Government's opposition brief only confirms that the Department of Education is arbitrarily misconstruing and misapplying state law to the detriment of Plaintiffs Cortiva Institute and the Coalition for Career Schools—just as it did in the Bare Minimum Rule itself. Contrary to the Department's arguments, Plaintiffs have (i) timely sought preliminary relief; (ii) demonstrated a likelihood of success; (iii) demonstrated irreparable harm; and (iv) otherwise established entitlement to preliminary relief in the form of an injunction and/or a stay under 5 U.S.C. § 705.

## ARGUMENT

### I. Plaintiffs Have Timely Sought Preliminary Relief

Plaintiffs filed this action comfortably within the applicable six-year limitations period, *see State v. Rettig*, 987 F.3d 518, 529 (5th Cir. 2021), and more than a month before the July 1, 2024 Effective Date. The motion is fully briefed, and the Court has scheduled oral argument for Monday, June 17—still before the challenged rule goes into effect. There is simply no basis for the Department to suggest Plaintiffs sat on their rights and forfeited entitlement to preliminary relief.

*First*, the Department cites no precedent—and Plaintiffs are aware of none—holding that an APA plaintiff who seeks preliminary relief more than a month before the effective date of a challenged rule nevertheless forfeits the right to such relief. *Cf. VanDerStok v. Garland*, 625 F. Supp. 3d 570, 585 (N.D. Tex. 2022) (APA challenge filed "two weeks *before* the effective date" of the challenged rule was not unreasonably delayed). Instead, the Department cites cases where plaintiffs in private civil disputes have delayed in seeking preliminary relief once their rights were *already* being violated. *See, e.g., Leaf Trading Cards, LLC v. Upper Deck Co.*, No. 3:17-cv-3200, 2019 WL 7882552, at *2 (N.D. Tex. Sept. 18, 2019); *Gonannies, Inc. v. Goupair.Com, Inc.*, 464

1

F. Supp. 2d 603, 609 (N.D. Tex. 2006). Those cases are simply inapposite here.[1]

***Second***, the Bare Minimum Rule will cause ongoing harm even *after* the Effective Date, which means Plaintiffs would still have a basis to seek preliminary relief. Federal courts "routinely stay already-effective agency action under Section 705." *Texas v. Biden*, 646 F. Supp. 3d 753, 770 (N.D. Tex. 2022) (collecting cases). The Department's position would upend ordinary APA practice and effectively require parties to sue immediately to preserve an opportunity to seek preliminary relief. That is not the law.

***Finally***, Plaintiffs had perfectly good reason not to sue the Department in October 2023: waiting to see the Department's guidance in light of recognized implementation challenges. The Department took five-and-a-half months to issue guidance, which only raised more questions than it answered and confirmed that career schools would be harmed. *See* Mot. 15, 23–24. Once it was clear Plaintiffs would be harmed imminently, they quickly sued and sought preliminary relief—all still more than a month before the Effective Date. *Cf. VanDerStok*, 625 F. Supp. 3d at 585.

## II.   Plaintiffs Have Demonstrated Likelihood of Success on the Merits

The Department's opposition does not rehabilitate the Bare Minimum Rule on any of Plaintiffs' three challenges: (a) that it exceeds the Department's statutory authority; (b) that it is arbitrary and capricious; and (c) that it fails to reflect a "logical outgrowth" of the proposed rule.

***Exceeds Statutory Authority***. The Department principally invokes broad and vague grants

---

[1] The Department cites the hornbook proposition that "'[a] long delay by plaintiff . . . may be taken as an indication that the harm would not be serious enough to justify a preliminary injunction.'" Opp. 9 (quoting 11A Wright & Miller, Fed. Prac. & Proc. Civ. § 2948.1 (3d ed.)). But the cases Wright and Miller cite in support are just like *Leaf Trading* and *Gonannies*; indeed, the first two cited involve a *six-year* delay in challenging a congressional redistricting map and a *twelve-year* delay in suing over a building permit. The Department also relies on *Anyadike v. Vernon Coll.*, No. 7:15-cv-157-O, 2015 WL 12964684 (N.D. Tex. Nov. 20, 2015), which noted that "[d]elay in seeking a remedy is an important factor bearing on the need for a preliminary injunction." *Id.* at *3 (internal quotation omitted). But there, Judge O'Connor simply denied an *ex parte* TRO and directed the plaintiff to "meet and confer with the defendants, and . . . jointly provide the Court with a proposed schedule designed to timely consider Plaintiff's request for a preliminary injunction" within the next seven days. Here, the Department has had notice and been heard, and we are still more than two weeks away from the scheduled Effective Date of the Bare Minimum Rule.

of authority to administer federal student aid, *see* Opp. 12 (citing 20 U.S.C. §§ 1094(c)(1)(B), 1221e-3, 3474), and to set eligibility for schools, *see id.* (citing 20 U.S.C. §§ 1087c, 1087d, 1094). But none of those provisions authorizes the Bare Minimum Rule or (most importantly) addresses Congress' express limitation in 20 U.S.C. § 3403(b) on the Department's authority. *See* Mot. 9–10. The *only* provision the Department cites in response to § 3403(b) is § 1099c-1(e), which carves out "Secretarial determinations made regarding the appropriate length of instruction for programs measured in clock hours." But as Plaintiffs have already explained, *see* Mot. 10–11, that reliance on § 1099c-1(e) is doubly flawed.

***First***, that provision cannot justify the Bare Minimum Rule as written because it applies only to "programs measured in clock hours," 20 U.S.C. § 1099c-1(e),[2] while the Bare Minimum Rule applies to all gainful employment programs, whether measured in "clock hours, credit hours, or the equivalent required for training in the recognized occupation," 34 C.F.R. § 668.14(b)(26)(ii)(A) (effective July 1, 2024). Perhaps the Department could have invoked § 1099c-1(e) to promulgate a narrower rule for clock-hour programs, but that is not what it did. Cortiva's PMT Program uses credit hours, not clock hours, and in any event, it would be for the Department on remand after vacatur, not for this Court on review, to decide whether to adopt a different, narrower rule. *See SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("*Chenery I*").

***Second***, the Department effectively concedes in a footnote that it did not justify the Bare Minimum Rule based on § 1099c-1(e)—stating only that it "cited this provision, among others, . . . when responding to comments"—but argues nevertheless that "agencies cannot waive authority granted by Congress simply by failing to cite a statutory provision in a proposed rule."

---

[2] The Department issued additional guidance in the form of frequently asked questions that clearly acknowledges the Department meant to regulate a "credit-hour GE program," even when that program is not subject to any conversion from credit hours to clock hours. U.S. Dep't of Educ., Certification Procedures – Questions and Answers, GEPH-A2 (May 16, 2024), https://www2.ed.gov/policy/highered/reg/hearulemaking/2024/certification-q-and-a.html.

3

Opp. 13 n.5. In an APA case, however, a federal agency absolutely *can* lose the ability to rely on alleged statutory authority it failed to invoke in the administrative record. *See United States v. Bellazerius*, 24 F.3d 698, 702 (5th Cir. 1994) ("We cannot uphold a guideline on the basis of authority on which the Commission did not rely at the time of promulgation."); *Glob. Van Lines, Inc. v. I.C.C.*, 714 F.2d 1290, 1298 (5th Cir. 1983) (holding that the APA notice requirement and *Chenery I* principle apply to an agency's statutory authority); *see also Louisiana v. U.S. Dep't of Energy*, 90 F.4th 461, 469 (5th Cir. 2024) ("An agency may not advance arguments before us without first presenting them in the administrative record.").[3]

***Arbitrary and Capricious***. For purposes of this motion, Plaintiffs have set forth three principal reasons why the Bare Minimum Rule is arbitrary and capricious. *See* Mot. 11–19. The Department first suggests that none of these arguments is suitable for resolution on a motion for preliminary relief, *see* Opp. 15, but courts routinely issue preliminary relief on the premise that an APA challenger is likely to succeed on an arbitrary-and-capricious claim, *see, e.g.*, *Texas Gun Rights, Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 4:23-CV-00578-O, 2023 WL 8352316, at *3 (N.D. Tex. Oct. 4, 2023).[4]

***First***, in response to Plaintiffs' challenge that the Bare Minimum Rule inexplicably treats state-law *minimums* as federal-law *maximums*, *see* Mot. 12–14, the Department offers a justification by analogy to a non-profit legal organization reimbursing CLE credits, *see* Opp. 16–17. But the Department cannot rely on that sort of *post hoc* rationalization unmoored from the

---

[3] Unless a reviewing court concludes that an agency was *required* by statute to take the action it did, the ordinary course is to vacate and remand so that the agency can consider anew, under a correct understanding of its legal authority, whether to take the same discretionary action or some other. *See Morgan Stanley Cap. Grp. Inc. v. Pub. Util. Dist. No. 1 of Snohomish Cnty., Wash.*, 554 U.S. 527, 544 (2008). Construing the scope of § 1099c-1(e) and determining whether it would justify the repeal of the 150% Rule is "not a task [a reviewing court] ought to undertake on the agency's behalf in reviewing its orders." *I.R.S. v. F.L.R.A.*, 494 U.S. 922, 933 (1990).

[4] Further contradicting the Department's sweeping claim, just two days ago, the Fifth Circuit found a likelihood of success on a fact-intensive APA challenge mere weeks after the relevant order was issued. *See MCR Oil Tools, LLC v. U.S. Dep't of Transp.*, No. 24-60230, 2024 WL 2954416, at *4–5 (5th Cir. June 12, 2024).

4

administrative record. *See Louisiana*, 90 F.4th at 469. And it is unavailing in any event: There too, one could reasonably ask whether the organization's goals are better served by reimbursing only the bare minimum in CLE hours or some reasonable amount beyond.[5]

The Department also argues that its arbitrary carve-outs for degree programs and distance learning are justified because (a) "degree programs . . . often include general education components in addition to the specific courses a State requires for licensure," and (b) "students enrolled in [distance] programs would likely not be in the State where those programs are located." Opp. 17. But neither here nor anywhere in the administrative record does the Department grapple with the fact that programs like Cortiva's PMT program similarly offer valuable education beyond what is required for licensure and may educate students who do not intend to practice in Texas. In short, the Department's attempt to justify its treatment of state-law minimums as federal-law maximums fails both substantively and procedurally.

***Second***, in response to Plaintiffs' challenge that the Bare Minimum Rule converts a safe-harbor into a strict-liability trap, *see* Mot. 14, the Department offers no substantive response and simply feigns ignorance, *see* Opp. 17. The point is that the 150% Rule provided a safe-harbor so the Department could mitigate the risk of course-stretching without hampering schools' flexibility. The Bare Minimum Rule does not recalibrate that balance; it blows it up. Now, schools will have *zero* flexibility to enhance their programs beyond the state minimum. And yet, the Department has completely failed to explain why that drastic change was justified, even now.

***Third***, in response to Plaintiffs' challenge that the Bare Minimum Rule fails to justify a dramatic change that upsets 30 years' worth of reliance interests, *see* Mot. 14–19, the Department

---

[5] Moreover, unlike this hypothetical legal-aid organization, which presumably would reimburse lawyers for the minimum CLE requirements and let them pay out-of-pocket for more, the Department forbids a student enrolling in a program over the bare minimum from using *any* federal aid, even for the bare minimum portion. *See* Mot. 14 & n.9.

5

simply reiterates what it did without explaining, based on reasons provided in the administrative record, why it was necessary or appropriate to do so, *see* Opp. 18. On the issue of eliminating Pell Grant eligibility, the Department cites several portions of the Final Rule, *see* Opp. 19, but none of those portions actually addresses the issue. The Department argues that "no commenter had explained why the [Bare Minimum Rule] should deviate from 'States' judgment regarding the appropriate amount of training required.'" Opp. 19. To start, that again conflates a State's judgment about *minimum* hours with a judgment about *maximum* hours.[6] But as discussed further below, it also ignores that commenters had no notice that the Department was considering a rule that looked only to state law. *See infra* p. 7. And finally, the Department flips the burden on its head by criticizing Plaintiffs for showing only that the studies on which the Department relied are "'unreliable' or inconclusive" without citing their own "research . . . submitted during the rulemaking process contradicting the Department's conclusion." Opp. 20. But again, commenters had no notice of what the Department was truly contemplating. And in any event, the burden is not on the aggrieved party to submit rebuttal research to disprove the agency's unreliable sources. It is quintessentially arbitrary and capricious for the Department to base its action on faulty evidence, with or without contradictory evidence in the record.[7]

**Logical Outgrowth**. The Department effectively concedes that the Bare Minimum Rule is not a logical outgrowth of the Proposed Rule. Instead, the Department argues that it was permitted to adopt *any* rule that might further the general purpose, articulated in the Proposed Rule, of

---

[6] Saying, for instance, that a federal judge should have at least twelve years' practice experience before taking the bench, see ABA, Standing Committee on the Federal Judiciary, *What It Is and How It Works* at 3, (Aug. 2023), https://www.americanbar.org/content/dam/aba/administrative/government_affairs_office/fjc-backgrounder.pdf, is quite different from saying that no judicial nominee should have more.

[7] *See, e.g.*, *Citizens Telecomms. Co. of Minn., LLC v. FCC*, 901 F.3d 991, 1014 n.16 (8th Cir. 2018); *Sierra Club v. EPA*, 895 F.3d 1, 11 (D.C. Cir. 2018); *Friends of Boundary Waters Wilderness v. Bosworth*, 437 F.3d 815, 824, 827–28 (8th Cir. 2006); *Lloyd Noland Hosp. & Clinic v. Heckler*, 762 F.2d 1561, 1567–68 (11th Cir. 1985); *Am. Paper Inst. v. EPA*, 660 F.2d 954, 964–65 (4th Cir. 1981).

"prevent[ing] abuses that can arise from allowing overlength programs to participate in Title IV, but to allow programs to go by other States' requirements when there is a legitimate reason to do so." Opp. 21–22. That argument would swallow the "logical outgrowth" doctrine whole. The point of the doctrine is to ensure that the public receives fair notice. *See Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 174 (2007). It is therefore common practice for the Department to indicate clearly in a proposed rule when it is considering particular alternative options to the proposed rule.[8] And knowing now what the Department ultimately did, it would have been easy for the Department to notify the public that it was also considering a state-law-only Bare Minimum Rule and to ask the public to comment on that alternative proposal. It cannot short-cut that comment process now based on generalized statements about the "purpose" of the proposed rule. Indeed, it is telling that the Department does not identify a single comment, from among over 7,500 submitted in the rulemaking process, which addressed the possibility of a Bare Minimum Rule based solely on state law—either for *or* against. If the Department's general discussions of "purpose" in the Proposed Rule were truly sufficient to put the public on notice that the Department was considering such a rule, one might expect at least one interested party to figure it out.

Plaintiffs' "logical outgrowth" claim is also more than sufficient to enjoin the Bare Minimum Rule under the harmless-error principle, *see Mock v. Garland*, 75 F.4th 563, 586 (5th Cir. 2023), for which the Department cites *Second Amendment Foundation, Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 3:21-CV-0116-B, 2023 WL 7490149, at *6 (N.D. Tex. Nov. 13, 2023). *See* Opp. 23. This entire lawsuit demonstrates that, if the Department had provided

---

[8] *See, e.g.*, *Student Assistance General Provisions*, 83 Fed. Reg. 37,242, 37,251–52 (July 31, 2018) (setting forth alternative proposals for the adjudication of borrower-defense-to-repayment ("BDR") claims and specifically soliciting public comment on which alternative best supports its stated aims). The Fifth Circuit recently stayed the Department's final BDR rule for other reasons. *See Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, 98 F.4th 220 (5th Cir. 2024).

adequate notice, Plaintiffs would have had substantial and meaningful comments to submit against the Bare Minimum Rule. That is all that Plaintiffs need to show. *See Mock*, 75 F.4th at 586.

### III. Plaintiffs Have Demonstrated Irreparable Harm

In a remarkable move, the Department argues that Plaintiff Cortiva cannot show irreparable harm because, it says, Texas would not allow it to offer a 600-hour program anyway—and this is all based on a phone call recently placed by a case manager at the Department of Education to an official at the Texas Department of Licensing & Regulations ("TDLR"). *See* Opp. 9–10 & ECF No. 23-2 (Mecca Decl.) ¶ 7.[9] The General Counsel of the TDLR, however, confirmed that "TDLR does not prohibit a massage school from providing a program in excess of 500 hours." Ex. 1 (Thompson Decl.) ¶¶ 1–2. The Department is wrong for a whole host of reasons.

*First*, Plaintiffs have shown irreparable harm because, at a minimum, Cortiva and Bellus will need to cut back certain programs and may need to end programs or close entire schools. *See* ECF No. 5-2 (Lynch Decl.) ¶¶ 15–16; ECF No. 5-1 (Heller Decl.) ¶¶ 23–29. That sort of threat to the business of Plaintiff Cortiva and to the members of Plaintiff The Coalition for Career Schools more than suffices to demonstrate irreparable harm. *See Jiao v. Xu*, 28 F.4th 591, 598 (5th Cir. 2022); *Wages & White Lion Invs., L.L.C. v. F.D.A.*, 16 F.4th 1130, 1142 (5th Cir. 2021); *Texas v. EPA*, 829 F.3d 405, 433 (5th Cir. 2016); *Fla. Businessmen for Free Enter. v. City of Hollywood*, 648 F.2d 956, 958 (5th Cir. 1981).[10] The Department argues that these harms are too speculative,

---

[9] The Department's response is remarkable because, at times, it smacks of a threat that the Department will come after Cortiva for past federal student aid in response to this suit. *See, e.g.*, Opp. 9–10. Cortiva has a First Amendment right to petition the federal courts for redress under the Administrative Procedure Act, and it would violate the First Amendment for the Department to retaliate against Cortiva based on its protected petitioning activity. *See NRA v. Vullo*, 144 S. Ct. 1316 (2024) (holding that NRA stated viable First Amendment claim based on allegations that the New York State Department of Financial Services retaliated against the NRA by contacting third-party insurance companies and pressuring them to go after the organization).

[10] The Department argues, *see* Opp. 10–11, that the Coalition lacks standing because (1) it did not submit a declaration, and (2) it does not have a website. But those arguments fall flat. The Coalition has associational standing to sue based on injuries to its members, *see Ass'n of American Physicians & Surgeons, Inc. v. Texas Medical Board*, 627 F.3d 547, 550 (5th Cir. 2010) (citing *Warth v. Seldin*, 422 U.S. 490, 511 (1975)), and provided declarations from two members—Cortiva and Bellus Academy—demonstrating irreparable harm. The Coalition readily satisfies the three requirements

*see* Opp. 9–11, but the Fifth Circuit recently rejected similar arguments in *Career Colleges & Schools of Texas v. U.S. Department of Education*, 98 F.4th 220, 234–39 (5th Cir. 2024).

**Second**, the Department is simply wrong about Cortiva's licensure under Texas law. Ex. 1 (Thompson Decl.). Cortiva most recently submitted a full application for licensure in 2019 following a change in ownership, which included the appropriate paperwork—provided by TDLR itself—to indicate that Cortiva would offer a massage program "in excess of 500 hours." Vitez Decl. ¶ 9. TDLR approved Cortiva's license and has since renewed it in 2021 and 2023. Vitez Decl. ¶ 13. Other massage schools in Texas, actively licensed by TDLR, similarly provide massage programs that exceed 500 hours. *See also* Ex 3. And the Department—including Ms. Mecca specifically—were fully aware before the filing of this lawsuit that Cortiva offers a 600-hour massage therapy program in Texas. Vitez Decl. ¶¶ 16–17.

**Third**, even if there were to be some issue with Cortiva's offering a 600-hour program in Texas on an ongoing basis, that would be an issue Cortiva could take up with Texas. It would not undermine Cortiva's entitlement to relief against the Bare Minimum Rule. An APA plaintiff does not have to prove that things will definitely turn out differently if an agency's unlawful rule is enjoined; it is enough to remove the Federal Government's regulatory hurdle. *See Bennett* v. *Spear*, 520 U.S. 154, 159 (1997); *Energy Future Coalition* v. *EPA*, 793 F.3d 141, 144 (D.C. Cir. 2015)

---

to sue based on association standing: (1) its members have standing to sue; (2) the interests it seeks to protect are germane to its purpose; and (3) its claims do not require participation of individual members in the lawsuit. *See Hunt v. Wash. St. Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). To start, the Coalition's members include more than 185 members, the majority of which are career schools subject to the Bare-Minimum Rule. *See* Ex. 1 (Thompson Decl.) ¶ 4. Any one of those members would have standing to challenge the rule, and here the Coalition has declarations from two different members substantiating the underlying facts. Next, the Coalition is pursuing claims in this litigation which are directly germane to its purpose: "to provide a forum for career schools impacted by the United States Department of Education's new Program Length Rule (set forth in 34 CFR 668.14(b)(26), formerly known as the 150% Rule) and their corporate partners who wish to support the Association's participation in litigation in opposition to the Program Length Rule." Ex. A to Thompson Decl. (Charter). Lastly, this action seeks a ruling that the Bare Minimum Rule is contrary to law and should be set aside; it does not require the participation of individual members. *See generally* ECF No. 1.

(Kavanaugh, J.). If Cortiva and other Texas massage schools need to engage with the Texas Legislature on the minimum-hours for massage programs when they reconvene in 2025, it will be critical to know whether they must do so under the shadow of the Bare Minimum Rule.

*Fourth*, Cortiva is irreparably harmed by the Bare Minimum Rule beyond the threat to its practical inability to continue offering the PMT program in Texas. Cortiva also operates massage programs in Florida that are similarly affected. *See* ECF No. 5-1 (Heller Decl.), Ex. A at p. 2.

*Finally*, Plaintiff The Coalition for Career Schools has established both associational standing and irreparable harm independent of Cortiva based on the separate declaration from Lynelle Lynch on behalf of Coalition member Bellus Academy. *See* ECF No. 5-2 (Lynch Decl.).

## IV. Plaintiffs Are Entitled to Preliminary Relief in the Form of an Injunction and/or Stay

The balance of equities and public interest favor preserving the *status quo*, especially since the Department continues to demonstrate that it does not understand the impact the Bare Minimum Rule will have on Plaintiffs as well as States, students, and accrediting agencies. The Department can choose to stay the Rule entirely until January 1, 2025 or until the issues raised by Plaintiffs and other commentors are resolved by the Department instead of arbitrarily saying it will "consider exercising" its enforcement discretion to stay the Rule. But the Department has not chosen to do so; thus, the balance of equities and public interest favor the Court issuing an injunction to stay the Rule until a trial on the merits occurs. Under recent Fifth Circuit precedent (also arising from career schools' challenges to Department of Education regulations), it is appropriate for the Court to issue preliminary relief under 5 U.S.C. § 705 that is not party restricted—*i.e.*, that "sets aside" the Bare Minimum Rule not just for Plaintiffs but for all. *Career Colleges*, 98 F.4th at 255.

Dated: June 14, 2024

Respectfully submitted,

*/s/ Melissa M. Hensley*
Melissa M. Hensley (Texas Bar No. 00792578)
Cory R. Ford (Texas Bar No. 24121098)
Michael C. Elliott (Texas Bar No. 24086916)
MCGUIREWOODS LLP
2601 Olive Street, Suite 2100
Dallas, TX 75201
Telephone: (469) 372-3926
Facsimile: (214) 273-7475
cford@mcguirewoods.com
mhensley@mcguirewoods.com
melliott@mcguirewoods.com

Farnaz Farkish Thompson (*pro hac vice*)
John S. Moran (*pro hac vice*)
Jonathan Helwink (*pro hac vice*)
Stephen Tagert (*pro hac vice*)
MCGUIREWOODS LLP
888 16th Street NW, Suite 500
Black Lives Matter Plaza
Washington, DC 20006
Telephone: (202) 828-2817
Facsimile: (202) 828-3327
fthompson@mcguirewoods.com
jmoran@mcguirewoods.com
jhelwink@mcguirewoods.com
stagert@mcguirewoods.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing document has been served upon all counsel of record, via email, on June 14, 2024, as follows:

KATHRYN L. WYER
U.S. Department of Justice, Civil Division
1100 L Street, N.W., Room 12014
Washington, DC 20005
Tel. (202) 616-8475
kathryn.wyer@usdoj.gov

*/s/    Melissa M. Hensley*
Melissa M. Hensley

11