UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**360 DEGREES EDUCATION, LLC,
ET AL.,**

   Plaintiffs,

v.                                     No. 4:24-cv-00508-P

**U.S. DEPARTMENT OF EDUCATION,
ET AL.,**

   Defendants.

## MEMORANDUM OPINION & ORDER

Before the Court is Plaintiffs' Motion for Temporary Restraining Order, Preliminary Injunction, and Stay. ECF No. 5. Having considered the Motion, briefs, hearing arguments, and applicable law, the Court concludes the Motion should be and hereby is **GRANTED in part** and **DENIED in part**.

## BACKGROUND

A new Department of Education (the "Department") rule goes into effect on July 1, 2024. The so-called "Bare Minimum Rule"[1] will restrict federal student aid to vocational programs that require the minimum hours a state mandates for licensure in a given field. For instance, Texas requires a minimum of 500 hours for licensure as a massage therapist. If a massage therapy program requires 600 hours, students are free to attend—but they won't qualify for federal student aid. This represents a sea-change from thirty years of established practice. Over the past three decades, the Department has enforced a "150% Rule," which

---

[1] Plaintiffs call the rule the "Bare Minimum Rule" to elucidate its purpose. *See* ECF No. 5. The Department calls it the "Revised Provision" because it was one revised provision within broader Final Regulations issued last October. *See* ECF No. 23 at 13. The Court adopts Plaintiffs' nomenclature for clarity.

provides access to federal funds so long as a program does not exceed 150% of a state's hours requirement. *See* 34 C.F.R. § 668.14(b)(26)(ii)(A).

Plaintiffs ("the Schools") are a coalition of vocational schools with a member-program in Arlington, Texas. The Schools argue the Bare Minimum Rule exceeds the Department's authority under the Higher Education Act of 1965 ("HEA") and violates the Administrative Procedure Act ("APA"). Facing imminent enforcement of an allegedly unlawful rule, the Schools sued the Department in federal court on May 31, 2024. To maintain the status quo pending their claim's resolution, the Schools subsequently sought preliminary injunctive relief. The Court conducted a hearing on their request for injunctive relief earlier this week. Having considered the arguments of counsel at that hearing, along with the Parties' briefs and applicable legal authorities, the Court determines a limited preliminary injunction is warranted pending resolution of the Schools' lawsuit.

## LEGAL STANDARD

Preliminary injunctions are a "drastic and extraordinary remedy." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010). A movant must show four things to get one:

> (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable harm if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.

*Mock v. Garland*, 75 F.4th 563, 577 (5th Cir. 2023) (quoting *Byrum v. Landreth*, 556 F.3d 442, 445 (5th Cir. 2009)). Given their "drastic" nature, preliminary injunctions are awarded "only if the movant has clearly carried the burden of persuasion with respect to all four factors." *Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 809 (5th Cir. 1989).

## ANALYSIS

As noted above, the Schools seek a temporary restraining order, preliminary injunction, and stay. *See* ECF No. 5. For reasons further

explained below, the Court finds a limited preliminary injunction is warranted and thus constrains this Order to legal frameworks germane to preliminary injunctions. In doing so, the Court is mindful that preliminary injunctions "preserve the status quo" while a lawsuit is resolved. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). To obtain such relief, the Schools must carry their burden for each injunctive-relief factor enumerated above. *See Allied Mktg.*, 878 F.2d at 809. As explained below, they do.

### A. The Schools demonstrate a substantial likelihood of success on the merits.

The Schools must first demonstrate a "substantial likelihood of success on the merits." *Mock*, 75 F.4th at 577. While they don't have to prove "entitlement to summary judgment," *see Byrum*, 566 F.3d at 446, they must still "present a substantial case on the merits." *See Alliance for Hippocratic Med. v. FDA*, 78 F.4th 210, 242 (5th Cir. 2023) (cleaned up) (collecting cases), *reversed on other grounds*, *FDA v. Alliance for Hippocratic Med.*, ___ U.S. ___, 2024 WL 2964140 (2024); *see also Jefferson Cmty. Health Care Ctrs., Inc. v. Jefferson Parish*, 849 F.3d 615, 626 (5th Cir. 2017) ("Though there is no particular degree of likelihood of success that is required in every case, the party seeking a preliminary injunction must establish at least some likelihood of success on the merits before the court may proceed to assess the remaining elements.").

The Schools raise three arguments that the Bare Minimum Rule is unlawful—one under the HEA and two under the APA. *First*, they argue the Department exceeded its authority under the HEA in promulgating the rule. *See* ECF No. 5 at 15–17. Specifically, they argue the Department prescribes conduct for educational institutions in a manner traditionally reserved for states. *See id.* at 16. *Second*, they argue the Bare Minimum Rule is arbitrary and capricious under the APA. *See id.* at 17–25. *Third*, they argue the Bare Minimum Rule violates the APA because, as issued, the rule was not the "logical outgrowth" of the Department's Notice of Proposed Rulemaking ("NPRM"). *See id.* at 25–29. The Court takes each in turn, careful to reiterate that any determination on this factor is not a determination that the Schools will

3

or will not prevail at summary judgment for a given argument. *See Byrum*, 556 F.3d at 445.

1. The Schools do not establish a substantial likelihood of success on the merits for their challenge to the Department's authority under the HEA.

The Schools' first argument hinges on the Department's authority under the HEA. The HEA empowers the Department to "exercise any discretion, supervision, or control" over regulated entities "except to the extent authorized by law." *See* 20 U.S.C. § 3403(b). The Schools say the Bare Minimum Rule "treats state minimums as federal maximums" and thus "contradicts this limitation by setting a maximum program length" for entities courting students who might receive federal student aid. *See* ECF No. 5 at 15. At base, the Schools argue the feds are attempting to usurp authority traditionally reserved for states—e.g., the hours required for licensure of certain regulated vocations. *See id.*

As the Schools note, while federal law "includes an exception to § 3403(b) for '[s]ecretarial determinations made regarding the appropriate length of instruction for programs measured in clock hours,' 20 U.S.C. § 1099c-1(e), the Bare Minimum Rule is not such a determination." *Id.* at 16. Thus, because the Bare Minimum Rule applies to entities *regardless* of their time-registration model, the Schools argue it exceeds the Department's authority and encroaches on the turf of state education regulators. *See id.* The Department doesn't contest that the Bare Minimum Rule is not a "secretarial determination" regarding schools that measure time in clock-hours. *See* ECF No. 23 at 19. Rather, the Department argues "even aside from § 1099c-1(e), States have never had authority to determine under what circumstances schools may participate in federal Title IV programs." *Id.* at 20.

The Department is correct that the federal government may regulate educational institutions by proxy by tethering federal funds to certain requirements; indeed, they've done so for decades.[2] One could imagine

---

[2]For an insightful discussion of this phenomenon's federalism implications, *see* Gail Sunderman & Jimmy Kim, *Expansion of Federal Power in American Education: Federal-State Relationships Under the No Child Left Behind Act, Year One*, HARVARD CIVIL RIGHTS PROJECT, 11–37 (2004).

4

school integration would have taken far longer in many Jim Crow states had the federal government not had "regulation-by-incentivization" in its arsenal. *See Green v. Cnty. Sch. Bd. of New Kent County, Va.*, 391 U.S. 430, 431 & n.2 (1968). And the Bare Minimum Rule does not, on its face, tell the Schools how they must conduct their massage-therapy programs. *See* 88 Fed. Reg. at 74637.

Further, the Court should generally construe the Bare Minimum Rule as the Department interprets, with reasonable deference to the executive. *Dougherty Cnty. Sch. Sys. v. Bell*, 694 F.2d 78, 81 (5th Cir. 1982); *see also Bennett v. Ky. Dep't of Educ.*, 470 U.S. 656, 666 (1985) (acknowledging State's argument that "a reviewing court should simply defer to the Secretary's interpretation" of a contested provision, but noting a determination "can be properly evaluated only against the background of the actual operation of the [provision]"). Thus, more fulsome briefing (and a more fulsome administrative record) would be required for the Schools to prevail on this argument. Afterall, the Schools don't contest the power to regulate-by-incentivization *per se*, but rather the procedural and substantive propriety with which the Department did here.

Still, the Schools have an uphill battle to contest the Department's authority under the HEA when the contested action involved "the authority to set forth conditions in Title IV program participation agreements." ECF No. 23 at 21. This is not to say the Schools *cannot* win on this claim. Indeed, Congress expressly noted the HEA should "not increase the authority of the Federal Government over education or diminish the responsibility for education which is reserved to the States and the local school systems and other instrumentalities of the States." 20 U.S.C. § 3403(a). But the Schools must *clearly* carry their burden on each injunctive-relief element. *See Allied Mktg.*, 878 F.2d at 809. Otherwise, the Court would lower the bar to such a "drastic and extraordinary remedy." *Monsanto*, 561 U.S. at 165. Considering the deference due to the Department and the recognized authority for similar agency actions, the Schools fail to carry their burden here.

5

2. <u>The Schools establish a substantial likelihood of success on the merits for their arbitrary-and-capricious arguments.</u>

The Schools next contend the Bare Minimum Rule is arbitrary and capricious under the APA. *See* ECF No. 5 at 17–25. This argument has several moving parts, but basically asserts the provision is arbitrary and capricious because (1) the Department didn't explain its decision to treat state minimums as federal maximums, (2) the Department acted unreasonably in "converting a program intended to be a safe-harbor into a strict-liability trap," and (3) the Department failed to provide a "reasoned justification" for changing the 150% Rule, "which has been in place for 30 years." *See id.*

As a starting point, it's tough to prove an agency's action was arbitrary and capricious under the APA and relevant precedents. The complexity of modern executive functionalities rightly warrants deference from Article III judges. *See, e.g.*, *United States v. Mead Corp.*, 533 U.S. 218, 227 (2001); *United States v. Morton*, 467 U.S. 822, 834 (1984); *Chevron, USA, Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843–44 (1984). But that deference is not unlimited, and plaintiffs can show a "substantial case" by establishing "at least some likelihood of success on the merits." *Jefferson Parish*, 849 F.3d at 626. This does not lighten the preliminary-injunction inquiry, it merely notes that the first element is satisfied where a bona fide cause of action is presented. *See id.* The burden of doing that is, of course, on the moving party. *See Allied Mktg.*, 878 F.2d at 809. The Schools carry their burden here.

The Schools first argue "the Bare Minimum Rule is arbitrary and capricious because the Department failed to justify the reasonableness of pegging the *maximum* hours for a program to the state-law *minimum*." ECF No. 5 at 18. Of course, the Court is not a tribunal for policy grievances: even bad policies are lawful if the relevant agency explained itself. In this way, the inquiry isn't *how* the Department explained its reasoning, but *whether* the Department explained its reasoning. And the Department explained itself here. *See* 88 Fed. Reg. at 74638; *see generally* ECF No. 23 at 22 ("States set minimum training requirements because they deem a certain amount of training necessary to take up certain occupations. The Revised Provision recognizes that

6

Title IV funding aimed at helping students complete the training needed . . . for those occupations should align with States' assessments of the amount of training required."). That undermines the Schools' "substantial likelihood of success" for this argument.

The Schools' second and third arguments fare much better for this element. For their second, the Schools say "the Department acted arbitrarily and capriciously by converting a program intended to be a safe-harbor into a strict-liability trap." ECF No. 5 at 20. For their third, they say the Department failed to explain its "regulatory changes to the longstanding 150% Rule, which has been in place for 30 years." *Id.* The Schools have plausible paths to victory on both arguments.

The Schools' second argument accurately notes that the Bare Minimum Rule is absolute in its applicability. *See id.*; *see also* FEDERAL STUDENT AID, *Implementation of Program Length Restrictions for Gainful Employment (GE) Programs*, GEN-24-06 (Apr. 15, 2024), https://fsapartners.ed.gov/knowledge-center/library/dear-colleagues-letters/2024-04-15/implementation-program-length-restrictions-gainful-employment-ge-programs. Before the Bare Minimum Rule, a hypothetical school could offer 200-hour barista programs even though the state required 150 hours for licensure. Students attending that school could then receive federal financial aid for the 150 hours, but they would have to pay out-of-pocket for the remainder. Under the Bare Minimum Rule, a school that offers *one hour* over the state's requirement is ineligible for such funds *in its entirety. See id.* That's a big change for covered entities. And while the administrative record is still nascent, the Department has identified nothing that would explain a rationale for this significant modification.

The record similarly reflects a dearth of justification for the Department's pivot on the 150% Rule. While the Department need not present a justification that all covered entities agree with, the law is clear that it must "show that there are good reasons for [these] new polic[ies]." *FCC v. Fox. Tele. Stations, Inc.*, 556 U.S. 502, 515 (2009). Because it didn't, the Schools have a "substantial likelihood of success on the merits" for these APA arguments.

7

3. <u>The Schools establish a substantial likelihood of success on the merits for their "logical outgrowth" arguments.</u>

The Schools similarly establish a substantial likelihood of success on their "logical outgrowth" argument. For this argument, the Schools contend the Department's NPRM failed to provide "fair notice" as required under the APA. *See* ECF No. 5 at 26; *see generally Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 174 (2007). To be sure, the Department complied with its NPRM requirements last spring. *See* 88 Fed. Reg. 32300 (NPRM issued May 19, 2023). But the issue isn't *if* the Department published an NPRM, but whether the NPRM apprised all stakeholders that their rights may be impacted. While the Department passingly referenced broader applicability for forthcoming rules and cited relevant legal authority, its up for debate whether the Bare Minimum Rule represents a "logical outgrowth" of the initial notice. And "[a]n agency must defend its actions based on the reasons it gave when it acted." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 24 (2020).

The Schools argue the Department's NPRM deficiencies are "fatal" because "accreditors are an important part of the regulatory triad." ECF No. 5 at 27. By imposing an absolute condition precedent to federal funds, the current provisions effectively remove accreditors from the equation. *See id.* Thus, the NPRM "failed to signal [that the Department] was considering removing one leg of the triad, accreditors, entirely from the process." *Id.* at 27. And that's just the low-hanging fruit: the Court certainly understands why the Schools saw the Bare Minimum Rule as a bait-and-switch when compared with the scantily-articulated NPRM. Indeed, the Schools are correct that the Department "never relied on § 1099c-1(e)'s clock-hour authority to justify the Bare Minimum Rule." ECF No. 5 at 17. While the NPRM passingly referenced its authority on a different page of the register, the Court is unaware of case law suggesting that would suffice.

At the end of the day, had the NPRM been clearer, the notice-and-comment period would potentially look quite different. And that remains true even though "procedural error alone is not sufficient to support a finding of likelihood of success on the merits." *Second Amend. Found.,*

8

*Inc. v. ATF*, No. 3:21-cv-0116-B, 2023 WL 7490149, at *6 (N.D. Tex. Nov. 13, 2023) (citing *Mock*, 75 F.4th at 586). The Department may ultimately persuade that it provided fair notice, as it's "required to provide only a brief statement to justify its choices and overcome an APA challenge." *See Texas v. United States*, 524 F. Supp. 3d 598, 655–66 (S.D. Tex. 2021) (Tipton, J.) (collecting cases). But because the Department's alleged procedural errors materially prejudiced societal stakeholders like the Schools, the Schools establish a likelihood of success on this argument. The Court now turns to irreparable injury.

### B. The Schools will suffer an irreparable injury without preliminary injunctive relief.

The Schools must next demonstrate an "irreparable injury" absent the requested injunctive relief. *Mock*, 75 F.4th at 577. As noted, preliminary injunctions are a "drastic and extraordinary remedy." *Monsanto*, 561 U.S. at 165. So federal courts will not award one unless strictly necessary to avoid irreparable harm. *Mock*, 75 F.4th at 577. The Schools say they will be irreparably harmed without a preliminary injunction because the Bare Minimum Rule will force them to slash program hours or face diminution in their enrollment. *See* ECF No. 5 at 28. Indeed, the Schools have already seen the Bare Minimum Rule's negative effects vis-à-vis their programming for veterans. *Id.* Simply put, students will go elsewhere or defer their message-therapy education if they cannot access federal student aid to attend the Schools. *See id.* at 28–30. Thus, the Schools argue the Bare Minimum Rule would "threaten the[ir] very existence" if enforced. *Id.* at 28 (citing *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)).

The Department says the Schools' alleged harm is nothing more than a doomsday hypothetical. *See* ECF No. 23 at 15–16. Indeed, the Department says the Schools will not be harmed at all, for two reasons.[3]

---

[3]Though not fully briefed, the Department passingly suggests the Schools lack an irreparable injury because their "standing is murky." ECF No. 23 a 9. This argument is predicated on the assertion that "Plaintiffs [] lack standing to assert current students' interests, much less the alleged interests of unknown future students." *Id.* at 17. The Supreme Court's associational standing precedents roundly reject the Department's argument. *See, e.g.*, *Rumsfeld v. Forum for Acad. & Inst. Rights*, 547 U.S. 47, 53 & n.2 (2006)

9

*First*, the Schools' delay in bringing this action ostensibly indicates the lack of irreparable injury. *See* ECF No. 23 at 14–15. *Second*, the Schools allegedly lack an irreparable injury because "Texas law already imposes a 500-hour maximum on such programs." *Id.* at 16. Neither argument persuades.

The Department's first argument fails because it misconstrues relevant case law. True, a delay in seeking injunctive relief often "militates against the issuance of a preliminary injunction" because it indicates "that there is no apparent urgency to the request." *Gonannies, Inc. v. Goupair.Com, Inc.*, 464 F. Supp. 2d 603, 609 (N.D. Tex. 2006) (Lindsay, J.); *see also* 11A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 2948.1 (3d ed.) ("A long delay by plaintiff . . . may be taken as an indication that the harm would not be serious enough to justify a preliminary injunction."). But the Department takes a practical consideration and articulates it like a hard-and-fast rule. *See* ECF No. 23 at 14–15.

As Messrs. Wright and Miller plainly state, a "long delay by plaintiff . . . *may*" undermine a request for injunctive relief. *See* 11A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 2948.1 (emphasis added). But that's only true "[a]bsent a good explanation." *VanDerStok v. Garland*, 625 F. Supp. 3d 570, 584 (N.D. Tex. 2022) (O'Connor, J.) (citation omitted). In *VanDerStok*, the Court noted that the plaintiffs actively sought to clarify their rights before asking the Court to enjoin a new ATF rule. *See id.* Thus, their four-month delay did not indicate the harm was irreparable, it merely indicated the plaintiffs did their due diligence before filing suit. *See id.* at 585. "Considering these circumstances, Plaintiffs' delay [did] not undercut their showing of irreparable harm." *Id.*

Here, the Bare Minimum Rule was first publicly articulated on October 31, 2023. *See* ECF No. 23 at 14. All else equal, such a delay would strongly undermine the Schools' assertion of irreparable harm. *See VanDerStok*, 625 F. Supp. 3d at 584. But all else isn't equal. Indeed,

---

(explicating the associational standing of coalition of law schools challenging new Department of Defense rule).

it was not clear that the Bare Minimum Rule would apply to the Schools until the Department issued a guidance document on May 16, 2024. *See* ECF No. 26 at 8 & n.2; *see also* U.S. Dep't of Educ., Certification Procedures: Questions & Answers, GEPH-A2 (May 16, 2024), https://www2.ed.gov/policy/highered/reg/hearulemaking/2024/certification-q-and-a.html. The Schools sought preliminary injunctive relief a mere two weeks later. *See* ECF No. 5. Thus, "under these circumstances, [the Schools'] delay does not undercut their showing of irreparable harm." *VanDerStok*, 625 F. Supp. 3d at 585.

The Department's second argument fails because even if Texas had a hard 500-hour requirement for massage programs, the Schools don't violate that regulatory ceiling. The Parties dispute whether Texas applies this rule as the Department suggests. *See, e.g.*, ECF No. 26 at 13 ("The General Counsel of TDLR, however, confirmed that 'TDLR does not prohibit a massage school from providing a program is excess of 500 hours.'"). Indeed, there is a boilerplate form for this exact purpose. *See* ECF No. 26-1 at 4–6 (email correspondence noting "a school offering such a program [in excess of the statutory limit] must obtain a signed 'massage student acknowledgement'"). But the Court understands how one could read the statute and conclude, as the Department does, that "Texas law already imposes a 500-hour maximum on such programs." ECF No. 23 at 16; *see* TEX. OCC. CODE ANN. §§ 455.156(b)(1), 455.205(b). That's because the law clearly states: "a message school . . . may not require the successful completion of more course hours than the number of hours required for licensing as a massage therapist." *Id.* § 455.205(b). And 500 is the magic number in Texas. *See id.* § 455.156(b)(1).

But just because the Schools' curricula provides in excess of that amount does not mean "[n]o Texas massage therapy program will incur any harm whatsoever." *See* ECF No. 23 at 15. As discussed above, there's a specific administrative process to facilitate programs above the 500-hour ceiling. ECF No. 26-1 at 4–6. If a student completes the required 500 hours, the Schools will gladly certify as much to the relevant state governance authority. *See id.*; *see also* ECF No. 26 at 14. And they communicate this to students on the front end. *See* ECF No. 26-1 at 5. Completion of curricula beyond that minimum is thus required for the

11

respective program, but not for the certification required for licensure. *See id.*

\*        \*        \*

Parties frequently confuse the magnitude of a harm with the irreparability of a harm. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 18–20 (2008); *see also Restaurant Law Ctr. v. U.S. Dep't of Lab.*, 66 F.4th 593, 597 (5th Cir. 2023) (citing *Texas v. EPA*, 829 F.3d 405, 433 (5th Cir. 2016)) ("In determining whether costs are irreparable, the key inquiry is 'not so much the magnitude but the irreparability.'"). Yet even enormous harms can be compensable by money damages, thus failing to justify injunctive relief. *See Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("The key word in this consideration is irreparable. Mere injuries, however substantial, . . . are not enough. The possibility that adequate compensatory or other relief will be available at a later date . . . weighs heavily against a claim of irreparable harm."). That's off the table here, as the Schools sue the federal government. *Wages & White Lion Invs., LLC v. FDA*, 16 F.4th 1130, 1136 (5th Cir. 2021). And "complying with a regulation later held invalid almost always produces the irreparable harm of nonrecoverable compliance costs." *Louisiana v. Biden*, 55 F.4th 1017, 1034 (5th Cir. 2022) (citing *Texas*, 829 F.3d at 433); *see generally Restaurant Law Ctr.*, 66 F.4th at 433.

Still, without minimizing difficulties the Bare Minimum Rule will impose upon regulated entities, it's probably a stretch to say the Rule would "threaten the[ir] very existence." *See* ECF No. 5 at 28. For instance, the Court is unsure why Cortiva, the largest member-school, "will likely need either to discontinue its [massage therapy] Program, which is its largest program, or to shut its doors in Arlington altogether, if the Bare Minimum Rule goes into effect." *Id.* Or why "other schools . . . will be required to eliminate some of [their] programs completely." *Id.* The Bare Minimum Rule does not, on its face, require any of the above actions. Rather, the Schools can choose between a potential diminution in enrollment *or* simply trimming some fat to reduce their required hours.

While the resulting loss would impact the Schools' bottom line, it hardly seems catastrophic. Nevertheless, the costs of doing so would still be irreparable under Fifth Circuit case law. *See Rest. Law Ctr.*, 66 F.4th at 597 ("Under our precedent, the nonrecoverable costs of complying with a putatively invalid regulation typically constitute irreparable harm." (collecting cases)). Thus, even if the magnitude of the Schools' harm is debatable, the irreparability of that harm is not. *See id.* Because the law doesn't require the Schools to await enforcement of a potentially invalid rule, and because the resulting compliance costs would be irreparable, the Schools satisfy the first injunctive-relief requirement. *Mock*, 75 F.4th at 577.

### C. The balance of equities and public interests support limited preliminary injunctive relief.

Finally, the Schools must show (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest. *Mock*, 75 F.4th at 577. These factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). On one hand, if the Department is enjoined, it "suffers the irreparable harm of denying the public interest in enforcement of its laws." *Veasey v. Abbott*, 870 F.3d 387, 391 (5th Cir. 2017). On the other, "it is always in the public interest" to stop enforcement of unconstitutional or invalid laws. *See Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 458 n.9 (5th Cir. 2014). As explained below, the Schools carry their burden for both prongs of this merged interest.

For the private-interests component, the Court "looks to the relative harm to both parties if the injunction is granted or denied." *Def. Distrib. v. U.S. Dep't of State*, 838 F.3d 451, 460 (5th Cir. 2016). If an injunction is granted here, the Schools will avoid subjection to a potentially unlawful rule and the Department will be forced to delay its enforcement. *See* ECF No. 5. As a result, the Schools will be saved from an irreparable injury; the Department will merely face a longer implementation timeframe. *See id.* Conversely, if an injunction is denied, the Department will be able to proceed efficiently, but the Schools will suffer an irreparable harm. *See Louisiana*, 55 F.4th at 1034

13

(citing *Texas*, 829 F.3d at 433). The disparity in these alternative outcomes tips the private-interests analysis in the Schools' favor. That isn't to say the Department lacks "a strong interest in implementing rules on schedule according to the master calendar, 20 U.S.C. § 1089(a)." ECF No. 23 at 30. Rather, it simply notes the practical ramifications of a tardy rule are far less serious for the Department than the practical ramifications of complying with a putatively invalid rule are for the Schools. *See Restaurant Law Ctr.*, 66 F.4th at 433.

For the public-interests component, the Court "pay[s] particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinbgerger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). Both Parties hold strong convictions that public interests support their position here. Without delving into complicated questions of policy vis-à-vis the Bare Minimum Rule, the Court notes that "the public is served when the law is followed." *Daniels Health Scis., LLC v. Vascular Health Scis., LLC*, 710 F.3d 579, 585 (5th Cir. 2013). While the Schools don't carry their summary judgment burden, *see Byrum*, 566 F.3d at 446, they do present a substantial merits case that the Bare Minimum Rule is unlawful. *See generally* ECF No. 5 at 15–27. In short, they "establish at least some likelihood of success on the merits" with regard to the Bare Minimum Rule's impropriety. *See Jefferson Parish*, 849 F.3d at 626. And the public has a strong interest in avoiding unlawful rules and regulations, irrespective of the soundness of their articulated policy rationale. *See Daniels Health*, 710 F.3d at 585.

Defendants' brief on this point leaves a lot to be desired, but it notes that public interests disfavor overbroad equitable remedies. *See* ECF No. 23 at 30. The Court agrees. Thus, as noted, the Court constrains its analysis to the Schools' request for a preliminary injunction. Preliminary injunctions, of course, "are to be treated as the exception rather than the rule." *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). But the Schools carry their burden of obtaining one here. Accordingly, the Court must determine the most limited possible scope that will afford "complete relief." *See Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). Having done so, the Court further agrees with the Department that the injunction "should [] be limited to

the Revised Provision, which is only one among numerous provisions set forth in the October 31, 2023 Final Regulations." ECF No. 23 at 31. Anything broader would be unnecessary to provide complete relief and would needlessly hinder the Department's programming. *See id.* Accordingly, a limited preliminary injunction as to the Bare Minimum Rule is properly "tailored to redress the plaintiff's particular injury" here. *See Gill v. Whitford*, 585 U.S. 48, 72–73 (2018).

## CONCLUSION

For the above reasons, the Schools carry their burden in establishing the requisite grounds for a preliminary injunction. Accordingly, the Court **GRANTS** the Schools' Motion (ECF No. 5) with respect to its request for preliminary injunctive relief, but the Court **DENIES** the Motion with respect to all other equitable remedies. Thus, the Court **ORDERS** that enforcement and implementation of the Bare Minimum Rule, as described herein and contained in the Department of Education's October 31, 2023 Final Regulations, is hereby **ENJOINED** pending resolution of this lawsuit.

**SO ORDERED** on this **21st day** of **June 2024.**

MARK T. PITTMAN
UNITED STATES DISTRICT JUDGE