**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| |
|---|
| 360 DEGREE EDUCATION, LLC *et al.*, |
| *Plaintiffs*, |
| v. |
| UNITED STATES DEPARTMENT OF EDUCATION, *et al.*, |
| *Defendants*. |

No. 4:24-cv-00508-P

**DEFENDANTS' MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................iii

INTRODUCTION .......................................................................................................... 1

RELEVANT BACKGROUND ........................................................................................ 3

ARGUMENT .................................................................................................................. 5

    I.    Plaintiffs Lack Standing ................................................................................. 5

        A.    Legal Standard ............................................................................... 5

        B.    Cortiva Lacks Standing Because Its Massage Program Is Already
               Ineligible for Title IV ..................................................................... 6

        C.    CCS Has Not Established Associational Standing ................................. 10

    II.    The Northern District of Texas Is an Improper Venue for This Case ................. 13

        A.    Legal Standard ............................................................................... 14

        B.    Venue Is Improper in This District Under 28 U.S.C. § 1391(e).............. 14

             1.    No party resides in this District. .................................................. 15

             2.    No substantial part of the events and omissions giving rise to
                  Plaintiffs' claims occurred in this District. .................................. 17

             3.    Dismissal is appropriate. ............................................................ 18

        C.    In the Alternative, the Court Should Transfer This Case to the District
               of Columbia Under 28 U.S.C. § 1404(a) .................................. 19

CONCLUSION .............................................................................................................. 22

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49 (2013) .......... 14-15

*Career Colleges & Sch. of Texas* ("*CCST*") *v. U.S. Dep't of Educ.*,
    No. 4:23-CV-0206-P, 2023 WL 2975164 (N.D. Tex. Apr. 17, 2023) ............. 1, 14, 17-18

*CCST v. U.S. Dep't of Educ.,* 98 F.4th 220 (5th Cir. 2024) ....................................................... 11

*Chapman v. Dell, Inc.*, No. 09-cv-7, 2009 WL 1024635 (W.D. Tex. Apr. 15, 2009) ........... 19-20

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ..................................................................... 6

*Cohen v. Smith*, 534 F. Supp. 618 (S.D. Tex. 1982) ................................................................... 16

*Ctr. for Biological Diversity v. Spellmon*,
    No. 21-cv-47, 2022 WL 3541879 (D. Mont. Aug. 18, 2022) ......................................... 16

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006) ................................................................. 5

*Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599 (2020) (mem.) ......................................... 21

*Experian Info. Sols., Inc. v. FTC*,
    No. 3:00-cv-1631-H, 2001 WL 257834 (N.D. Tex. Mar. 8, 2001) ................................. 18

*FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024) ............................................... 13

*Ferrer v. Chevron Corp.*, 484 F.3d 776 (5th Cir. 2007) ............................................................. 16

*Fla. Nursing Home Ass'n v. Page*, 616 F.2d 1355 (5th Cir. 1980), *rev'd on other grounds*,
    *Fla. Dep't of Health & Rehab. Servs. v. Fla. Nursing Home Ass'n,*
    450 U.S. 147 (1981)......................................................................................................... 15

*Garcia v. Acosta*, 393 F. Supp. 3d 93 (D.D.C. 2019) ........................................................... 15, 17

*Ga. Republican Party v. SEC*, 888 F.3d 1198 (11th Cir. 2018) ................................................. 16

*Greco v. NFL*, 116 F. Supp. 3d 744 (N.D. Tex. 2015) ............................................................... 12

*Grupo Dataflux v. Atlas Glob. Grp., L.P.,* 541 U.S. 567 (2004) ................................................... 5

*Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673 (E.D. Tex. 2001) ................................................... 19

*Icon Indus. Controls Corp. v. Cimetrix, Inc.*, 921 F. Supp. 375 (W.D. La. 1996) ..................... 20

*In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 632 (5th Cir. 2022) ...................... 22

*In re Radmax, Ltd.*, 720 F.3d 285 (5th Cir. 2013) ........................................................... 21

*In re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. 2008) .................................... 14, 19, 20, 22

*Inst. of Certified Pracs., Inc. v. Bentsen*, 874 F. Supp. 1370 (N.D. Ga. 1994) ........................... 16

*Kansas v. Garland*, No. 2:24CV00088 JM, 2024 WL 2384611 (E.D. Ark. May 23, 2024) ....... 16

*Kayihura v. Garland,* No. 3:24-CV-0367-D, 2024 WL 2868995 (N.D. Tex. June 6, 2024) ...... 16

*Lawson v. U.S. Dep't of Justice*, 527 F. Supp. 3d 894 (N.D. Tex. 2021) .................................... 14

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ........................................................... 10

*McClintock v. Sch. Bd. E. Feliciana Par.*, 299 F. App'x 363 (5th Cir. 2008) ........................... 14

*MCG, Inc. v. Great W. Energy Corp.*, 896 F.2d 170 (5th Cir. 1990) ........................................... 6

*Middle S. Energy, Inc. v. City of New Orleans*, 800 F.2d 488 (5th Cir. 1986) ........................... 6

*Miller v. Albright*, 523 U.S. 420 (1998) ........................................................... 16

*Murthy v. Missouri*, 144 S. Ct. 1972, 1985 (2024) ........................................................ 5, 6, 10

*NAACP v. Alabama*, 357 U.S. 449 (1958) ........................................................... 12

*Nat'l Infusion Ctr. Ass'n v. Becerra,*
    No. 1:23-CV-707, 2024 WL 561860 (W.D. Tex. Feb. 12, 2024) .................................... 16

*New Leaf Serv. Conts., Inc. v. Gerhard's Inc.,* No. 3:22-CV-1145-G, 2023 WL 2938241
    (N.D. Tex. Apr. 13, 2023), *appeal dismissed,* No. 23-10786, 2023 WL 9423931
    (5th Cir. Sept. 25, 2023) ........................................................... 6

*Oceana, Inc. v. Pritzker*, 58 F. Supp. 3d 2 (D.D.C. 2013) ........................................................... 17

*Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999) ........................................................... 6

*Rumsfeld v. Forum for Acad. & Inst. Rights*, 547 U.S. 47 (2006) .............................................. 11

*Seville v. Maersk Line, Ltd.*, 53 F.4th 890 (5th Cir. 2022) ............................................. 18, 19, 21

*Sigoloff v. Austin*, No. 4:22-cv-923-P, 2023 WL 2142982 (N.D. Tex. Feb. 21, 2023) ... 14, 15, 20

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) ............................................... 5

*Solano v. Ali Baba Mediterranean Grill, Inc.*,
    No. 3:15-cv-0555, 2015 WL 7770893 (N.D. Tex. Dec. 3, 2015) ...................................... 6

## Statutes

Higher Education Act ("HEA") Title IV, 20 U.S.C. §§ 1070-1099dd ......................................... 1

20 U.S.C. § 1001 ................................................................................... 7

28 U.S.C. § 1391 ...................................................... 2, 14, 15, 16, 17, 19, 20

28 U.S.C. § 1404 ...................................................... 2, 14, 19, 20, 21, 22

28 U.S.C. § 1406 ...................................................... 2, 14, 15, 18, 19, 22

Tex. Bus. Orgs. Code § 252.001 ................................................................ 12

Tex. Occ. Code Ann. § 455.156 .............................................................. 3, 7

Tex. Occ. Code Ann. § 455.205 .............................................................. 3, 7

## Regulations

34 C.F.R. § 600.2 .................................................................................. 8

34 C.F.R. § 668.8 .................................................................................. 8

34 C.F.R. § 668.14 ............................................................................. 3, 11

## Secondary Sources

14D Wright & Miller, Fed. Prac. & Proc. Juris. § 3827 (4th ed.) ....................................... 19

15 Wright & Miller, Fed. Prac. & Proc. Juris. § 3854 (4th ed.).......................................... 21

## <u>INTRODUCTION</u>

Whatever the merits of the claims in this case, Plaintiffs lack standing to pursue them, and venue in this District is improper. This is another instance where no plaintiff in this case is both "(1) present in the division and (2) subject to the burden imposed by the rule," *Career Colleges & Sch. of Texas* ("*CCST*") *v. U.S. Dep't of Educ.*, No. 4:23-CV-0206-P, 2023 WL 2975164, at *2 (N.D. Tex. Apr. 17, 2023), and this Court should accordingly dismiss or transfer this case as it did *CCST*. Plaintiffs challenge a regulation ("Revised Provision") promulgated by the Department of Education ("Department") that would limit eligibility for federal financial assistance programs under the Higher Education Act, Title IV to vocational training programs that are no longer than necessary to obtain a state license. In Texas, the Revised Provision would require that massage therapy programs like that offered by plaintiff 360 Degree Education, LLC, dba Cortiva Institute ("Cortiva") be no longer than 500 hours—the licensure requirement in Texas—to be Title IV eligible. But under the circumstances here, existing Title IV requirements, entirely unrelated to the Revised Provision, already impose the same limit, leaving Cortiva with no injury fairly traceable to the Revised Provision that could be redressed through this lawsuit.

Longstanding Title IV law, separate from the Revised Provision and not at issue in this case, requires Title IV eligible programs to be "legally authorized" by their state. Here, the Texas Department of Licensing and Regulation ("TDLR") has only authorized Cortiva to provide a 500-hour massage program. That fact is plainly established by Cortiva's TDLR Certificate of Approval and other unequivocal statements that TDLR provided to the Department. And that fact remains true even if—as Plaintiffs suggested in prior briefing—TDLR does not *prohibit* schools from offering longer programs to students willing to waive their rights under Texas law. Any other massage program Cortiva provides, including its current 600-hour program, is already ineligible

for Title IV, and the Revised Provision will not change that. Accordingly, Cortiva lacks standing.

Organizational plaintiff The Coalition for Career Schools ("CCS") also lacks standing. CCS's Charter shows that it was created solely for purposes of litigating this case. But Plaintiffs have not identified a CCS member with standing. Nor should the Court endorse a theory of associational standing that allows associations to be manufactured on the spot solely to bring a particular lawsuit. Such a maneuver runs far afield of standing doctrine and is instead a blatant attempt to circumvent established limits on the scope of injunctive relief, and to allow organization members—like Cortiva here—two bites at the apple when the American Massage Therapy Association ("AMTA"), an established trade association, has separately filed suit to challenge the same regulation in the District of Columbia. *See AMTA* v. *U.S. Dep't of Educ.*, No. 1:24-cv-1670 (D.D.C. filed June 7, 2024).

Venue is also improper under 28 U.S.C. § 1391(e). No Plaintiff or Defendant resides in this District. Plaintiffs rely solely on Cortiva for venue, but its principal place of business is in Florida. Even under the most liberal theory of transactional venue, Plaintiffs cannot identify an event or omission in this District that gave rise to their claims when the Revised Provision will not impact Cortiva at all. Plaintiffs' decision to file suit in the Northern District of Texas, even though Cortiva faces no risk of injury from the regulation Plaintiffs challenge, will unnecessarily tax the resources of this Court and should not be countenanced. This case should therefore be dismissed pursuant to 28 U.S.C. § 1406, and Plaintiffs can seek to intervene in *AMTA* if they wish. Alternatively, this action should be transferred to D.D.C. under 28 U.S.C. §§ 1404(a) or 1406.

## RELEVANT BACKGROUND[1]

Plaintiffs filed suit on May 31, 2024, challenging a single regulatory provision set to go into effect on July 1, 2024, and sought emergency relief the same day. *See* ECF 1, 5. The provision they challenge, the new 34 C.F.R. § 668.14(b)(26)(ii)(A), would amend an existing provision that limits the amount of training that Title IV eligible vocational programs can require of their students by reducing program length limits from 150% to 100% of what a state requires for licensure. In other words, under this provision, vocational programs that do not seek Title IV eligibility may continue to offer courses of whatever length they wish (as long they comply with nonfederal requirements), but the Department would not disburse Title IV student aid funds through programs that mandate extra training beyond what the state has determined is necessary for a particular occupation. Plaintiffs allege that, if the provision takes effect, Cortiva would be forced to reduce its 600-hour massage therapy program to a 500-hour program—the massage therapy licensure requirement in Texas—in order to remain Title IV eligible. Compl. ¶ 10.

In response to Plaintiffs' emergency motion, Defendants provided information from TDLR, the state agency responsible for Cortiva's Texas license, establishing that TDLR's Certificate of Approval for Cortiva's massage program only authorized a 500-hour program. *See* Declaration of Shari Mecca [ECF 23-2] ¶ 7 & attach. A. Defendants also cited the Texas statutory provisions that prohibit Texas massage schools from requiring students to complete more than the 500 hours of training needed for licensing as a massage therapist. *Cf.* TEX. OCC. CODE ANN. §§ 455.156(b)(1), .205(b). Defendants argued that, based on this material, it appeared that Texas law already limited massage therapy programs to 500 hours.

---

[1] Defendants provided a more comprehensive description of the statutory and regulatory framework underlying Plaintiffs' claims in their opposition to Plaintiffs' emergency motion. *See* ECF 23. The description here is limited to information relevant to issues of standing and venue.

In their reply, Plaintiffs attached an email from TDLR General Counsel Doug Jennings stating that "TDLR does not prohibit a massage school from providing a program in excess of 500 hours," but that such a program "must obtain a signed 'massage student acknowledgement' (TDLR form # MAS123N) from the student." Declaration of Farnaz F. Thompson ("Thompson Decl.") ex. B at 1 [ECF 26-1, at 6]. Notably, Mr. Jennings did not state that Cortiva was authorized or approved by TDLR to provide a 600-hour massage program. Plaintiffs also attached a declaration from Cortiva employee Nicole Vitez, who did assert that Cortiva was "approved by the TDLR to offer a massage therapy program in excess of 500 hours." Declaration of Nicole Vitez [ECF 26-2] ¶ 7. However, Ms. Vitez did not attach a Certificate of Approval from TDLR establishing such approval. *Cf.* Def. Surreply [ECF 29] at 2-7 (explaining none of the attachments to Ms. Vitez's declaration established TDLR approval for a 600-hour massage therapy program).

On June 21, 2024, the Court preliminarily enjoined enforcement and implementation of the Revised Provision. Order of June 21, 2024 [ECF 30]. Among other things, the Court rejected Defendants' argument that Plaintiffs faced no irreparable injury based on Texas law's "500-hour maximum" for massage therapy programs. *See id.* at 11. The Court reasoned that a Texas massage therapy program might nevertheless provide a program in excess of 500 hours because TDLR does not prohibit such programs as described by Mr. Jennings. *See id.* (citing ECF 26-1, at 4-6).

Defendants attach hereto additional statements from TDLR confirming that TDLR does not approve or authorize massage programs in excess of 500 hours, even if it does not "prohibit" them. *See* Second Declaration of Shari Mecca ("Second Mecca Decl.") ¶¶ 8-11 & Exs. B-C (attached hereto). Because Title IV eligibility depends on a program's authorization by the state, the Department has concluded that Cortiva's 600-hour massage program is ineligible for Title IV under existing law. *See id.* ¶ 12. Moreover, the Department has further concluded that the

information provided by TDLR will require a statewide review because of the likelihood that other Texas massage programs that the Department had treated as Title IV eligible may also be ineligible if they exceed 500 hours. *Id.* On July 19, 2024, the Department notified TDLR that it plans to review "the Title IV eligibility of all massage programs provided at institutions in Texas participating in the Title IV programs to determine if the institutions have been improperly disbursing Title IV funds to students in massage programs with hours in excess of the 500 clock hours approved by TDLR." *Id.* & Ex.D.

## ARGUMENT

### I.    Plaintiffs Lack Standing

#### A.    Legal Standard

Article III's "'case or controversy' requirement is 'fundamental to the judiciary's proper role in our system of government.'" *Murthy v. Missouri*, 144 S. Ct. 1972, 1985 (2024). The Supreme Court has emphasized that, "[i]f a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006). Article III standing must exist at the time a plaintiff files suit. *Grupo Dataflux v. Atlas Glob. Grp., L.P.,* 541 U.S. 567, 570 (2004). To establish standing, a plaintiff "must show that she has suffered, or will suffer, an injury that is 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Murthy*, 144 S. Ct. at 1986. Because Plaintiffs here seek declaratory and injunctive relief, they must establish that, as of the date suit was filed, they faced a future injury that was "certainly impending, or there [wa]s a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). Moreover, "it is a bedrock principle that a federal court cannot redress 'injury that results from the independent action of some third party not before the court.'"

*Murthy*, 144 S. Ct. at 1986; *cf. Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 413 (2013) ("[W]e have been reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment."). "The requirement that jurisdiction be established as a threshold matter . . . is inflexible and without exception." *Solano v. Ali Baba Mediterranean Grill, Inc.,* No. 3:15-cv-0555, 2015 WL 7770893, at *1–2 (N.D. Tex. Dec. 3, 2015) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999)).

In ruling on a Rule 12(b)(1) motion to dismiss, a court may rely on "1) the complaint alone; 2) the complaint supplemented by undisputed facts; or 3) the complaint supplemented by undisputed facts and the court's resolution of disputed facts." *New Leaf Serv. Conts., Inc. v. Gerhard's Inc.,* No. 3:22-CV-1145-G, 2023 WL 2938241, at *2 (N.D. Tex. Apr. 13, 2023) (quoting *MCG, Inc. v. Great W. Energy Corp.*, 896 F.2d 170, 176 (5th Cir. 1990)), *appeal dismissed,* No. 23-10786, 2023 WL 9423931 (5th Cir. Sept. 25, 2023). In a factual attack on jurisdiction, the plaintiff bears the burden to prove, "by a preponderance of the evidence, that the trial court has subject matter jurisdiction over the claims." *Id.* (citing *Middle S. Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir. 1986)).

### B.    Cortiva Lacks Standing Because Its Massage Program Is Already Ineligible for Title IV

Plaintiff Cortiva relies on alleged injuries to its massage therapy program in Arlington, Texas to establish Cortiva's standing. *See* Compl. ¶ 3 (identifying Cortiva's Arlington program as the "Professional Massage Therapy" or "PMT Program" referenced throughout the Complaint). Plaintiffs allege that Cortiva's PMT Program is a 600-hour program but that, if the Revised Provision goes into effect, Cortiva will have to either "cut its program from 600 hours to 500 hours" to continue participating in Title IV, *id.* ¶ 19, or "cease to operate" due to the absence of Title IV tuition income funneled through students to the school. *id.* ¶ 48.

6

As the Court recognized in its Order of June 21, 2024, the notion that Cortiva would have to cease operations if it were to reduce its massage therapy program from 600 to 500 hours is "probably a stretch." Order of June 21, 2024, at 12. Plaintiffs' bare assertion is insufficient to identify a cognizable injury at the pleading stage. The notion that students who wish to become licensed massage therapists would be unwilling or unable to fund attendance at a 500-hour program through Title IV loans or otherwise, when such a program would be less expensive overall and would allow students to enter the workforce more quickly, is unsupported and implausible.

But Plaintiffs face an even more fundamental problem with respect to Cortiva's standing to challenge the Revised Provision. As explained above, Cortiva's 600-hour PMT Program is already ineligible for Title IV for reasons entirely separate from the Revised Provision: TDLR has only authorized Cortiva to provide a 500-hour program. *See* Second Mecca Decl. ¶ 8 & Ex. B at 3-4. Indeed, TDLR has notified the Department that it "will not and cannot approve any massage, barber, or cosmetology course for more than the required hours of education for licensure"—which under Texas law is 500 hours. *Id.* ¶ 11 & Ex. C; TEX. OCC. CODE ANN. §§ 455.156(b)(1), .205(b). According to TDLR, this policy is the result of the state agency's evaluation of Texas state law and its conclusion that it lacked authority under state law to approve anything but a 500-hour course. Second Mecca Decl. Ex. B at 2.

The fact that TDLR has not authorized Cortiva's 600-hour PMT Program requires the conclusion that this Program is *already* ineligible to participate in Title IV under current Title IV statutory and regulatory requirements that are completely independent of the Revised Provision. *Id.* ¶ 5 ("Each program that a participating postsecondary institution provides must also be legally authorized by the state and approved by the institution's accreditor to be Title IV eligible."); 20 U.S.C. § 1001(a)(2) (school must be "legally authorized within [its] State to provide a

7

[postsecondary] program"); 34 C.F.R. § 600.2 (requiring an "[e]ducational program" to be "legally authorized" as a prerequisite to Title IV participation); *id.* § 668.8(a) (requiring a Title IV-eligible program to be an "educational program," defined in § 600.2 as requiring legal authorization). The Department therefore has concluded that "Cortiva's 600-hour Massage Program in Arlington, Texas is not Title IV eligible because it exceeds the hours approved by the state." Second Mecca Decl. ¶ 12. Setting aside the Revised Provision will have no impact on the Program's Title IV eligibility. Rather, the Program will remain ineligible due to its lack of state authorization.

The Court's prior conclusion that TDLR has in place "a specific administrative process to facilitate programs above the 500-hour ceiling," *see* Order of June 21, 2024 at 11, does not change this standing analysis. The Department considered TDLR General Counsel Mr. Jenning's statement that TDLR does not "prohibit" schools from offering longer massage programs if students are willing to sign a certain form. *See* Second Mecca Decl. ¶ 10. However, TDLR's unequivocal statements that it does not approve anything but a 500-hour massage program, together with the content of the TDLR form itself, make clear that student signatures on the TDLR form do not result in TDLR approval for the program that exceeds 500 hours. *See id.* The form that TDLR's General Counsel Mr. Jennings cited merely suggests that TDLR will acquiesce in a school's operation of an overlength massage program without TDLR approval, provided that students waive their rights under Texas law to attend an approved 500-hour program that does not exceed the length mandated by the State. *See* TDLR, Massage Student Acknowledgement (TDLR Form MAS123N rev Aug 2021) ("I understand that the State of Texas requires only the minimum 500-hour course of instruction for licensure as a massage therapist, and anything beyond that is strictly voluntary").[2] That is a far cry from approving an overlength program and strongly suggests

---

[2] The form is available on TDLR's website at https://www.tdlr.texas.gov/mas/masforms.htm (scroll to Massage Schools / Massage Student Acknowledgement (PDF)).

that Texas does not wish to encourage students' unnecessary expenditure of time and resources on massage therapy training beyond what the State requires for licensing.

In any event, the fact that TDLR does not *approve* overlength programs is dispositive for purposes of Title IV eligibility—an issue the Court's Order of June 21, 2024 did not address— because the Department bases its Title IV eligibility determinations on State approval, and nothing less than that satisfies the statutory and regulatory requirements governing Title IV eligibility. To be sure, because the Department learned only recently that TDLR only authorizes Cortiva to provide a 500-hour massage therapy program, Cortiva's 600-hour PMT Program has, until now, been treated as eligible for Title IV grant and loan programs. However, the Department cannot simply ignore the information it has received from TDLR going forward. On July 19, 2024, the Department notified TDLR that it considers massage programs above TDLR's approval limit to be ineligible for Title IV and that the Department will be reviewing all massage programs provided at Title IV-participating Texas schools to ensure their Title IV eligibility has been accurately assessed. Second Mecca Decl. ¶ 12 & Ex. D.[3]

Accordingly, the Revised Provision will have no impact on Cortiva's PMT Program at all. If Cortiva continues to operate a 600-hour program without TDLR approval, it will remain ineligible for Title IV for reasons entirely separate from the Revised Provision. If instead it operates a 500-hour program consistent with its TDLR approval, the Revised Provision would

___

[3] Plaintiffs have suggested that any action by the Department to enforce existing Title IV requirements with respect to Cortiva's Title IV eligibility would be improper retaliation. However, the requirement that programs be legally authorized by their state is longstanding and is not at issue in this case. Plaintiffs have cited no basis for the notion that the Department must forego its oversight responsibilities and allow an ineligible program to continue to be treated as eligible simply because the Department learned about the program's ineligibility from the state licensing agency during the pendency of a lawsuit that challenges an entirely different provision. Any action that the Department takes will be governed by existing law.

9

have no impact on it because its PMT Program length will already be 100% of the State's licensure requirement, for reasons that, again, are independent of the Revised Provision itself. By the same token, enjoining or setting aside the Revised Provision would also have no impact on Cortiva. Plaintiffs therefore cannot show that it is "likely, as opposed to merely speculative," that Cortiva's alleged injury would be redressed by a favorable decision in this case. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (internal quotation omitted).

Nor would invalidation of the Revised Provision remove an obstacle to Cortiva's future Title IV eligibility. The Texas Legislature's laws imposing restrictions on massage therapy program lengths, and TDLR's corresponding decision not to grant TDLR approval to massage therapy programs over 500 hours (even if it does not prohibit such programs from operating), are entirely independent of Title IV and the Department's implementing regulations. States and state licensing boards make decisions regarding occupational licensing based on their judgments regarding how much training is required before entering a skilled occupation. Indeed, the Texas Legislature already enacted laws requiring 500 hours of training for a massage therapy license, and prohibiting massage schools from requiring any additional training, without regard to the Title IV eligibility requirements set forth by Congress and the Department. There is therefore no basis to conclude that the Texas Legislature or TDLR would revise Texas law or licensing practices in response to any decision in this case. Accordingly, Cortiva lacks standing to pursue its claims in this case. *See Murthy*, 144 S. Ct. at 1994 (rejecting theory of standing that required "speculat[ion] about the decisions of third parties" (internal quotation omitted)).

## C.    CCS Has Not Established Associational Standing

The other plaintiff in this case, CCS, relies on a theory of associational standing. Compl. ¶¶ 50-52. "Associational standing is a three-part test: (1) the association's members would

independently meet the Article III standing requirements; (2) the interests the association seeks to protect are germane to the purpose of the organization; and (3) neither the claim asserted nor the relief requested requires participation of individual members." *CCST v. U.S. Dep't of Educ.,* 98 F.4th 220, 233–34 (5th Cir. 2024).

Plaintiffs have not established that CCS satisfies the first prong. As explained above, CCS member Cortiva lacks standing, and any other CCS member that is a massage program in Texas would lack standing for the same reasons. While CCS may be able to identify a member school outside Texas that has standing, so far it has not made sufficient assertions to do so.[4]

More problematic, however, is the second prong of associational standing. Defendants pointed out in TRO proceedings that CCS had no public website and its "purpose" was unclear. Plaintiffs then attached CCS's Charter to their reply, but the Charter and the accompanying declaration of Plaintiffs' counsel only make clear that CCS was formed after the Department issued the Revised Provision on October 31, 2023, and was created for the sole purpose of being a plaintiff in and funding this case. *See* Thompson Decl. ex. C art.II (identifying CCS's "purpose" as "to provide a forum for career schools impacted by the United States Department of Education's new Program Length Rule (set forth in 34 CFR 668.14(b)(26), formerly known as the 150% Rule) and

---

[4] As discussed in prior briefing, the only other CCS member that Plaintiffs have identified is Bellus Academy, but that school so far has relied solely on past unredressable injuries, or alleged future injuries of individuals who were not currently enrolled in Bellus programs but may wish to enroll in the future. Def. TRO Opp. [ECF 23] at 10-11 & n.4. Although the Court's Order of June 21, 2024 cited *Rumsfeld v. Forum for Acad. & Inst. Rights*, 547 U.S. 47, 53 & n.2 (2006), as suggesting that a school may assert the interests of unknown future students, that case did not address third party standing; instead, it simply held that the organizational plaintiff in that case, Forum for Academic and Institutional Rights (FAIR), had associational standing on behalf of its members, which were themselves schools, not students. The law school members alleged that their own "First Amendment right[s] to decide whether to disseminate or accommodate a military recruiter's message" were infringed. *Id.* at 53. Here, although Bellus may be able to identify an injury as a regulated entity, its choice to focus instead on the Revised Provision's impact on unknown third parties calls into question what its own injury might be.

their corporate partners who wish to support the Association's participation in litigation in opposition to the Program Length Rule"); *id.* § 3.1 (identifying membership criteria as the desire to "support [CCS's] purpose . . . either financially through support of a legal fund or otherwise").

Because the Charter establishes that the *sole* purpose of CCS is to litigate this case, Plaintiffs cannot show that CCS here seeks to protect interests "germane" to its purpose—which addresses not only relevance but appropriateness of the representation.[5] By manufacturing its own existence, CCS also seeks to manufacture its standing for purposes of this case.[6] But applying associational standing here goes far afield of the original doctrine, which generally recognizes that an *established* membership organization with an established mission may represent members' related interests in litigation—often in situations where individual members would be unable to do so. *See, e.g.*, *NAACP v. Alabama*, 357 U.S. 449, 459 (1958) (in original case recognizing associational standing, Supreme Court emphasized that, absent NAACP's representation, an individual member's right not to disclose his identity would be "nullif[ied] . . . at the very moment of its assertion"). Here, CCS's true purpose is not to represent a preexisting membership, but to circumvent established jurisdictional and equitable limitations on the proper scope of injunctive relief.

---

[5] *See* Merriam-Webster online (defining "germane" as "at once relevant and appropriate").

[6] Indeed, as Defendants explained in prior briefing, CCS does not appear to be a proper unincorporated nonprofit association under Texas law. Rather, its proper organizational category, or whether it has one, remains unclear. Texas law requires such associations to have at least three "members," and "members" are limited to those who "may participate in the selection of persons authorized to manage the affairs of the nonprofit association or in the development of policy of the nonprofit association." TEX. BUS. ORGS. CODE § 252.001. The association must also have a "nonprofit purpose." *Id.* CCS appears to meet neither criterion because it has only two voting members—Cortiva Institute and Bellus Academy. Charter § 3.2— and its purpose is to oppose a Department rule due to the rule's potential impact on the profits of companies like Cortiva and Bellus. *Greco v. NFL*, 116 F. Supp. 3d 744, 759–61 (N.D. Tex. 2015) (concluding that because the NFL is comprised of NFL teams that are each for-profit businesses, the NFL more closely resembles a for-profit unincorporated association than a nonprofit association).

As Justice Thomas pointed out in his concurrence in *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024), associational standing is inherently problematic insofar as it allows a plaintiff "two bites at the apple," or is used to expand the scope of injunctive relief in a case beyond the regular jurisdictional and equitable bounds, without regard to whether more than one association member can demonstrate an injury-in-fact. *See id.* at 403 ("Because no party should be permitted to obtain an injunction in favor of nonparties, I have difficulty seeing why an association should be permitted to do so for its members."). Here, those concerns predominate and should preclude associational standing. CCS appears to have been created solely for the dubious purpose of serving as a plaintiff in this case and thereby securing relief beyond the individual corporate plaintiff (who, as explained above, lacks standing in its own right), to an undisclosed list of nonvoting CCS members. And Plaintiffs' pursuit of such relief in this Court duplicates the relief sought in another District by a pre-existing trade association—AMTA—in which Cortiva, the only other plaintiff in this case, is already a member.[7] *See AMTA v. U.S. Dep't of Educ.,* No. 1:24-cv-1670 (D.D.C. filed June 7, 2024). The Court therefore should hold that CCS lacks standing.

## II.    The Northern District of Texas Is an Improper Venue for This Case

The Court should also dismiss this case because the Northern District of Texas is not an appropriate venue for Plaintiffs' claims. Short of dismissal, the Court should transfer the case to the District of Columbia, where venue would be proper and *AMTA*, another case challenging the same rule, is already pending. Even if the Northern District of Texas were technically a proper venue for this case, transfer would still be appropriate based on factors of convenience and the interest of justice.

---

[7] *See* https://www.amtamassage.org/find-massage-school/?keyword=Cortiva.

### A.    Legal Standard

Federal Rule of Civil Procedure 12(b)(3) allows a party to move to dismiss any action that is brought in an improper venue. FED. R. CIV. P. 12(b)(3); *Lawson v. U.S. Dep't of Justice*, 527 F. Supp. 3d 894, 896 (N.D. Tex. 2021). "Once a defendant raises improper venue, the plaintiff has the burden to prove that venue is proper." *Sigoloff v. Austin*, No. 4:22-cv-923-P, 2023 WL 2142982, at *1 (N.D. Tex. Feb. 21, 2023); *see also CCST*, 2023 WL 2975164, at *3 ("Put simply, if a plaintiff cannot defend its choice of venue, the case does not belong there in the first place."); *Lawson*, 527 F. Supp. 3d at 896 (adopting this rule as "the better approach"). If venue is improper, the district court "shall dismiss, or if it be in the interest of justice, transfer [the] case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a); *see also McClintock v. Sch. Bd. E. Feliciana Par.*, 299 F. App'x 363, 366 (5th Cir. 2008) (noting that the choice between dismissal and transfer is discretionary). Even if venue is proper, "a district court may transfer any civil action to any other district or division where it might have been brought" "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a); *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008).

### B.    Venus Is Improper in This District Under 28 U.S.C. § 1391(e)

Venue for civil actions brought against federal officers or agencies is governed by 28 U.S.C. § 1391(e). That provision makes venue proper "in any judicial district in which" one of three conditions is satisfied: "(A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1). Because the Northern District of Texas does not meet any of the three statutory conditions, "the case must be dismissed or transferred." *Atl. Marine Constr. Co. v.*

*U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 56 (2013) (citing 28 U.S.C. § 1406(a)).

### 1.  No party resides in this District.

Venue based on the residence of the parties does not lie in this District. Section 1391(e)(1)(A) holds venue proper in the judicial district where a defendant officer, employee, or agency of the United States resides. There can be no dispute here that Defendants the Department of Education and the Secretary of Education "reside" in the District of Columbia for purposes of venue. *Sigoloff*, 2023 WL 2142982, at *3 (recognizing the "residence" of a federal defendant for purposes of venue "is where the official duties are performed"); *see also Fla. Nursing Home Ass'n v. Page*, 616 F.2d 1355, 1360 (5th Cir. 1980) ("The general rule in suits against public officials is that a defendant's residence for venue purpose[s] is the district where he performs his official duties."), *rev'd on other grounds, Fla. Dep't of Health & Rehab. Servs. v. Fla. Nursing Home Ass'n,* 450 U.S. 147 (1981). And each of the Defendants here performs their official duties in the District of Columbia. *See, e.g.*, Pls.' Requests for Summons [ECF 4, 6], at 1 (noting Defendants' offices are at 400 Maryland Avenue SW, Washington, D.C. 20202). That some agency employees or offices might operate from other locations makes no difference to this analysis. *See, e.g.*, *Garcia v. Acosta*, 393 F. Supp. 3d 93, 109 (D.D.C. 2019) ("Although the Department maintains a regional office in Chicago, neither the Secretary of Labor nor the Department of Labor 'resides' in the Northern District of Illinois; both are, instead, residents of the District of Columbia."). Thus, the District of Columbia is where Defendants reside.

Alternatively, § 1391(e)(1)(C) recognizes proper venue where a plaintiff "resides." Plaintiffs do not assert CCS resides in this District. Compl. ¶¶ 27, 31. Rather, Plaintiffs rely solely on Cortiva for purposes of venue, asserting that Cortiva "resides in the Fort Worth Division." *Id.* ¶ 31. However, as explained above, Cortiva lacks standing, so venue cannot be based on Cortiva.

*Ga. Republican Party v. SEC*, 888 F.3d 1198, 1205 (11th Cir. 2018) (transferring a case for improper venue where the only party that satisfied venue lacked standing); *Miller v. Albright*, 523 U.S. 420, 427 (1998) (describing district court's transfer of case after concluding the plaintiff whose residence conferred proper venue lacked standing); *Kansas v. Garland*, No. 2:24CV00088 JM, 2024 WL 2384611, at *1 (E.D. Ark. May 23, 2024) (venue improper after finding the only plaintiff who resided in the district lacked standing); *Nat'l Infusion Ctr. Ass'n v. Becerra*, No. 1:23-CV-707, 2024 WL 561860, at *5 (W.D. Tex. Feb. 12, 2024) (same); *Ctr. for Biological Diversity v. Spellmon*, No. 21-cv-47, 2022 WL 3541879, at *3 (D. Mont. Aug. 18, 2022) ("When venue is based [on] a plaintiff's residence, that particular plaintiff must have standing to bring the claims asserted."); *Inst. of Certified Pracs., Inc. v. Bentsen*, 874 F. Supp. 1370, 1372 (N.D. Ga. 1994) (dismissing case for improper venue where the sole plaintiff located in the district lacked standing); *Cohen v. Smith*, 534 F. Supp. 618, 622 (S.D. Tex. 1982) (holding "that plaintiff Cohen has standing to pursue this action, and consequently, her residence can be considered for purposes of determining whether venue is proper in this district").

Moreover, even aside from Cortiva's lack of standing, pursuant to 28 U.S.C. § 1391(c)(2), Cortiva must be deemed to reside "only in the judicial district in which it maintains its principal place of business[.]" The Cortiva catalog attached to Plaintiffs' Complaint shows that Cortiva's principal place of business is in Florida. Compl. ex.1 [ECF 1-2, at 3] (identifying corporate offices in Pompano Beach, Florida). That document suffices to establish that Cortiva does not reside in this Division. *See Kayihura v. Garland,* No. 3:24-CV-0367-D, 2024 WL 2868995, at *3–4 (N.D. Tex. June 6, 2024) (recognizing well established rule that a "written document that is attached to a complaint as an exhibit is considered part of the complaint" (quoting *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007))). The Department's records also indicate that Cortiva's

principal place of business is in Florida. *See* Second Mecca Decl. ¶¶ 2-3 (indicating the Department's Program Participation Agreement with Cortiva, also called 360 Degree Education, identifies Cortiva's St. Petersburg, Florida school as its main location, and the Arlingon school as an additional location). Venue therefore is not proper under § 1391(e)(1)(C).

### 2.    No substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District.

That leaves § 1391(e)(1)(B). Plaintiffs invoke that provision by asserting that venue is proper because "a substantial part of the events giving rise to the claim occurred in this district." Compl. ¶ 31. However, Plaintiffs challenge a Department rule that was promulgated in Washington, D.C. Courts have recognized that the promulgation of a federal agency rule "occurred," for venue purposes, in the District of Columbia. *Cf. Garcia*, 393 F. Supp. 3d at 109 (denying motion to transfer in part because challenged regulation "was promulgated in the District of Columbia, and, if modified, will be modified here as well"); *Oceana, Inc. v. Pritzker*, 58 F. Supp. 3d 2, 6 (D.D.C. 2013) (recognizing D.D.C. courts deem venue proper in D.D.C. when a case challenges "federal regulations promulgated in the capital").

To the extent Plaintiffs mean to suggest that "a substantial part" of the relevant events "occurred" in this Division because Cortiva's PMT Program is here, and the Revised Provision therefore will apply to Cortiva, that notion is untenable, first and foremost, because, as explained above, the Revised Provision will not affect Cortiva's Title IV eligibility. Cortiva already faces the choice between continuing to offer its 600-hour program, which is not eligible to participate in Title IV based on statutory and regulatory requirements independent of the Revised Provision, or reducing its program's length to 500 hours for reasons that, again, are independent of the Revised Provision. As explained above, Cortiva lacks standing precisely because the Revised Provision will not impact Cortiva's Title IV eligibility. The situation here is thus identical to that in *CCST*,

where this Court held venue improper because no party "was both (1) present in the division and (2) subject to the burden imposed by the [challenged] rule." *See CCST*, 2023 WL 2975164, at *2. The Court should hold venue improper here for the same reasons.

Furthermore, to the extent the Revised Provision would impact vocational programs, its impact would affect vocational programs across the country. There is no basis to conclude its future application in this Division is "a substantial part of the events or omissions giving rise to [Plaintiffs'] claims," particularly where Plaintiffs challenge the promulgation of the Revised Provision as a matter of law. *See Experian Info. Sols., Inc. v. FTC*, No. 3:00-cv-1631-H, 2001 WL 257834, at *3 (N.D. Tex. Mar. 8, 2001) (adopting findings and recommendation) (venue was not proper in the Northern District of Texas where plaintiff's claim involved a pure question of law about an agency rule rather than any enforcement action taken within the district). If anything, the Revised Provision will have less of an impact in this Division than in Districts outside Texas because any other massage therapy program in this Division is likely in the same situation as Cortiva and would similarly lack standing to challenge the Revised Provision.

### 3.    Dismissal is appropriate.

If the Court holds that neither Plaintiff has standing, it should dismiss this case for lack of subject matter jurisdiction. Even where subject matter jurisdiction is not an issue, when a court determines that a case has been filed in an improper venue, it "should generally dismiss the case." *Seville v. Maersk Line, Ltd.*, 53 F.4th 890, 894 (5th Cir. 2022). But in situations where at least one plaintiff would have standing, "the court retains discretion to transfer [the case] to a proper venue if such a transfer would serve 'the interest of justice.'" *Id.* (quoting 28 U.S.C. § 1406(a)). "Among the relevant considerations for determining whether transfer is in the interest of justice, courts examine the plaintiff's reasons for filing suit in the improper district in the first place and ask

whether the 'plaintiff's belief that venue was proper was in good faith and reasonable.'" *Id.* (quoting 14D WRIGHT & MILLER, FED. PRAC. & PROC. § 3827 (4th ed.)).

Justice favors dismissal here because Plaintiffs reasonably could have foreseen that, because Cortiva's TDLR approval covers only a 500-hour program, its 600-hour program is already ineligible to participate in Title IV. *See* 14D WRIGHT & MILLER, FED. PRAC. & PROC. § 3827 (4th ed.) ("[D]istrict courts often dismiss rather than transfer under Section 1406(a) if the plaintiff's attorney reasonably could have foreseen that the forum in which the suit was filed was improper and that similar conduct should be discouraged."); *accord Seville*, 53 F.4th at 894 (discussing dismissal as a means to discourage similar conduct). In addition, dismissal will cause minimal (if any) prejudice because AMTA has already challenged the Revised Provision in the District Court for the District of Columbia. Should the Court conclude that either plaintiff had standing, that plaintiff could even seek to intervene in the *AMTA* case if it believed AMTA's counsel did not adequately represent its interest. *See* FED. R. CIV. P. 41(b).

## C.    In the Alternative, the Court Should Transfer This Case to the District of Columbia Under 28 U.S.C. § 1404(a)

Even if the Court determines that this District is an appropriate venue, it should exercise its discretion to transfer the case to the District of Columbia under 28 U.S.C. § 1404(a). "[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege" by authorizing courts to "prevent plaintiffs from abusing their privilege under § 1391 by subjecting defendants to venues that are inconvenient under the terms of § 1404(a)." *Volkswagen*, 545 F.3d at 313. "Where the plaintiff's chosen forum has no factual nexus to the case, that choice carries little significance if other factors weigh in favor of transfer." *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 677 (E.D. Tex. 2001); *see also, e.g.*, *Chapman v. Dell, Inc.*, No. 09-cv-7, 2009 WL 1024635, at *4 (W.D.

Tex. Apr. 15, 2009) (deference to a plaintiff's choice of forum is lessened when it does not reside in the chosen forum and when "'the operative facts of the dispute occur[red] outside the [Plaintiffs'] chosen forum.'" (quoting *Icon Indus. Controls Corp. v. Cimetrix, Inc.*, 921 F. Supp. 375, 383–84 (W.D. La. 1996))). "The underlying premise of § 1404(a) is that courts should prevent plaintiffs from abusing their privilege under [28 U.S.C.] § 1391 by subjecting defendants" to venues that lack any substantial connection to the litigation. *Volkswagen*, 545 F.3d at 313.

The private factors that guide the Section 1404 analysis all favor transfer here or are neutral. *See id.* at 315. The Final Rule was developed and promulgated in Washington, D.C., each of the Defendants resides there, and the administrative record will be compiled there. *See id.* at 316. Further, the United States District Court for the District of Columbia has substantial "familiarity dealing with cases in which Defendants are named." *Sigoloff*, 2023 WL 2142982, at *3. Indeed, the *AMTA* case is already pending in that District. To the extent Plaintiffs' convenience is at issue, Plaintiffs' counsel are in Washington, D.C.; Cortiva's principal place of business is in Florida; and CCS's other voting member, Bellus Academy, is in California. The District of Columbia likely would be more convenient but at a minimum would be no less convenient than this District.

The public interest factors strongly favor transfer as well. First, as the Court has recently recognized, this District "has a very busy docket, with little capacity to hear cases better suited in another venue." *Id.* at *4. Second, the public interest factor that recognizes there can be a "local interest in having localized interests decided at home" weighs heavily in favor of transfer out of this District. *See Volkswagen*, 545 F.3d at 316. The District of Columbia "will have a significant interest in adjudicating cases involving Defendants since [their] offices are in [that] jurisdiction." *Sigoloff*, 2023 WL 2142982, at *4. Moreover, none of the Defendants resides in this District. It would be an abuse of discretion to "deny[] transfer where only the plaintiff's choice weighs in

favor of denying transfer and where the case has no connection to the transferor forum and virtually all of the events and witnesses regarding the case . . . are in the transferee forum." *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013) (footnotes omitted).

Finally, even if the convenience factors did not clearly favor transfer—which they do— "the interest of justice," 28 U.S.C. § 1404(a), alone would justify transfer. *See* 15 WRIGHT & MILLER, FED. PRAC. & PROC. JURIS. § 3854 (collecting cases). Not only is there no public interest in having this matter litigated in this District, the public's interest in the fair administration of justice would be harmed if a filing with strong indicia of forum-shopping were left unchecked. *See Seville*, 53 F.4th at 894. This case bears such indicia simply by the fact that Plaintiff Cortiva here purported in the case's Civil Cover Sheet to *reside* in this District, *see* ECF 1-1 (identifying "County of Residence of First Listed Plaintiff" as "Fort Worth, Texas"), ignoring that its principal place of business is in Florida, thereby making Florida Cortiva's residence. CCS similarly purports to be a nonprofit organization under the laws of Texas, but as explained above, and as its Charter makes clear, it was only formed in order to file suit here. As Justice Gorsuch recently warned, "[t]here are currently more than 1,000 active and senior district court judges, sitting across 94 judicial districts," and thus "there is a nearly boundless opportunity" for plaintiffs "to shop for a friendly forum." *Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599, 600–01 (2020) (mem.) (Gorsuch, J., concurring) (criticizing "gamesmanship" by plaintiffs seeking nationwide injunctions). Allowing this lawsuit to proceed unchecked would only encourage continued gamesmanship by litigants outside the Northern District, further clutter the Court's busy docket with emergency motions and expedited proceedings, and leave this Court with even less time and fewer resources to devote to the resolution of local disputes.

In short, this is exactly the sort of case where other venues—particularly the U.S. District

Court for the District of Columbia—"have a greater 'stake' in the litigation" than this District. *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 632 (5th Cir. 2022) (citing *Volkswagen*, 545 F.3d at 317–18). Accordingly, if the Court does not dismiss this case for the reasons set forth above, the Court should transfer this case to the District of Columbia.

## <u>CONCLUSION</u>

For the foregoing reasons, this case should be dismissed. In the alternative, the case should be transferred to the District of Columbia under either 28 U.S.C. § 1406(a) or 28 U.S.C. § 1404(a).

DATED:  July 26, 2024                    Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Director, Federal Programs Branch

<u>/s/ Kathryn L. Wyer</u>
KATHRYN L. WYER (DC Bar #90023642)
U.S. Department of Justice, Civil Division
1100 L Street, N.W., Room 12014
Tel. (202) 616-8475
kathryn.wyer@usdoj.gov
*Counsel for Defendants*