**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| 360 DEGREE EDUCATION, LLC, d/b/a Cortiva Institute; and THE COALITION FOR CAREER SCHOOLS, <br><br>                         Plaintiffs, <br><br> v. <br><br> DEPARTMENT OF EDUCATION; and SECRETARY MIGUEL A. CARDONA, in his official capacity as Secretary of the Department of Education, <br><br>                         Defendants. | Case No. 4:24-cv-00508-P <br><br> **Brief in Opposition to Defendants' Motion to Dismiss** |

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ........................................................................................................ 1

BACKGROUND ......................................................................................................... 2

    A.    Plaintiffs Sued to Challenge the Bare Minimum Rule, and the Court Granted a Preliminary Injunction ................................................................................... 2

    B.    The Department Develops a "Bare Minimum Rule 2.0" and Attempts to Use It As a Basis to Moot Cortiva's Claims and Seek Transfer of Venue ................... 3

ARGUMENT ............................................................................................................... 4

    I.    Plaintiffs Have Standing ............................................................................. 4

        A.    Cortiva ............................................................................................ 4

        B.    The Coalition for Career Schools ..................................................... 8

    II.    Venue Is Proper Here ................................................................................ 12

CONCLUSION .......................................................................................................... 17

CERTIFICATE OF SERVICE ..................................................................................... 19

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bounty-Full Entm't, Inc. v. Forever Blue Entm't Grp., Inc.*,
  923 F. Supp. 950 (S.D. Tex. 1996) ....................................................................12

*Braspetro Oil Servs. Co. v. Modec (USA), Inc.*,
  240 F. App'x 612 (5th Cir. 2007) ............................................................... 12-13

*Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*,
  98 F.4th 220 (5th Cir. 2024) ....................................................................2, 9, 10, 11

*Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*,
  No. 4:23-CV-0206-P, 2023 WL 2975164, at *1 (N.D. Tex. Apr. 17, 2023)...............12, 14

*Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*,
  681 F. Supp. 3d 647 (W.D. Tex. 2023)................................................................8, 10, 12

*Chafin v. Chafin*,
  568 U.S. 165 (2013).......................................................................................6

*CIT Grp./Com. Servs., Inc. v. Romansa Apparel, Inc.*,
  No. 3:02-CV-1954-P, 2003 WL 169208 (N.D. Tex. Jan. 21, 2003) ................................13

*Coal. for Gov't Procurement v. Fed. Prison Indus., Inc.*,
  365 F.3d 435 (6th Cir. 2004) ........................................................................7

*Contender Farms, L.L.P. v. U.S. Dep't of Agric.*,
  779 F.3d 258 (5th Cir. 2015) ....................................................................9, 11, 12

*Ctr. for Bio. Diversity v. EPA*,
  937 F.3d 533 (5th Cir. 2019) ........................................................................9

*Def. Distributed v. Bruck*,
  30 F.4th 414 (5th Cir. 2022) ........................................................................15

*Duarte ex rel. Duarte v. City of Lewisville*,
  759 F.3d 514 (5th Cir. 2014) ........................................................................5

*FDA v. All. for Hippocratic Med.*,
  602 U.S. 367 (2024).......................................................................................9

*Founders Ins. Co. v. Billy's Bar & Grill, LLC*,
  No. 3:18-CV-00367-M, 2019 WL 5425478 (N.D. Tex. Oct. 23, 2019).....................13-14

*Ft. Stewart Schs. v. FLRA,*
    495 U.S. 641 (1990) ............................................................................7

*Gill v. Whitford,*
    585 U.S. 48 (2018) ............................................................................9

*In re Chamber of Com. of United States,*
    105 F.4th 297 (5th Cir. 2024) ....................................14, 15, 16, 17

*In re Clarke,*
    94 F.4th 502 (5th Cir. 2024) ....................................................15, 17

*In re Planned Parenthood Fed'n of Am., Inc.,*
    52 F.4th 625 (5th Cir. 2022) ..........................................................15

*In re Volkswagen of Am., Inc.,*
    545 F.3d 304 (5th Cir. 2008) ........................................................15

*Kisor v. Wilkie,*
    588 U.S. 558 (2019) ........................................................................7

*Knox v. Serv. Emps.,*
    567 U.S. 298 (2012) ........................................................................6

*Loper Bright Enters. v. Raimondo,*
    144 S. Ct. 2244 (2024) ................................................................7-8

*Louisiana v. Biden,*
    55 F.4th 1017 (5th Cir. 2022) ........................................................3

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ..............................................................4, 9, 11

*Mass. Fair Share v. L. Enf't Assistance Admin.,*
    758 F.2d 708 (D.C. Cir. 1985) ......................................................7

*Morton v. Ruiz,*
    415 U.S. 199 (1974) ........................................................................7

*Noble Drilling Servs., Inc. v. Certex USA, Inc.,*
    620 F.3d 469 (5th Cir. 2010) ......................................................12

*Perez v. Mortg. Bankers Ass'n,*
    575 U.S. 92 (2015) ..........................................................................7

*Reuters Ltd. v. F.C.C.*,
    781 F.2d 946 (D.C. Cir. 1986) ........................................................................7

*Shoebacca, Ltd. v. K-2 Corp.*,
    No. 3:17-CV-0473-G, 2017 WL 3115159 (N.D. Tex. July 21, 2017).............13

*Texas v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
    700 F. Supp. 3d 556 (S.D. Tex. 2023) ....................................................... 4-5

*Texas v. EEOC*,
    933 F.3d 433 (5th Cir. 2019) ....................................................................9, 12

*Texas v. United States*,
    95 F. Supp. 3d 965 (N.D. Tex. 2015), *injunction dissolved on other grounds*,
    No. 7:15-cv-00056-O, 2015 WL 13424776 (N.D. Tex. June 26, 2015).....................12, 14

*Umphress v. Hall*,
    479 F. Supp. 3d 344 (N.D. Tex. 2020) ...........................................................14

*Warth v. Seldin*,
    422 U. S. 490 (1975)..........................................................................................8

**STATUTES**

20 U.S.C. § 1001(a)(2)............................................................................................3

20 U.S.C. § 1098a(b) ..............................................................................................7

28 U.S.C. § 1391(e)(1).........................................................................................14

28 U.S.C. § 1391(e)(1)(B) ..........................................................................2, 12, 14

28 U.S.C. § 1404(a) ........................................................................................15, 17

28 U.S.C. § 1406....................................................................................................12

28 U.S.C. § 2112....................................................................................................14

42 U.S.C. § 7607....................................................................................................14

**REGULATIONS**

34 C.F.R. § 668.14(b)(26)(ii)(A) .............................................................................2

34 C.F.R. § 668.86(b) ..............................................................................................6

34 C.F.R. § 668.91(c)(1)........................................................................................6

34 C.F.R. § 668.119(a)..........................................................................................6

**RULE**

Fed R. Civ. P. 12(b)(3)........................................................................................12

**OTHER AUTHORITIES**

*2023-2024 Federal Student Aid Handbook*, Vol. 2, Ch. 8...........................................6

## INTRODUCTION

The Court has already held that Plaintiffs are likely to succeed on at least two of their challenges to the Bare Minimum Rule, and yet the Defendants have insisted on filing a motion to dismiss. In so doing, they attack Plaintiffs' standing and chosen venue, but none of those arguments has merit. The Court should promptly deny the motion and proceed to cross-motions for summary judgment, which both parties know is how this case will ultimately be resolved.

*First*, Defendants challenge Plaintiff Cortiva's standing based on a new argument, developed in response to (indeed, retaliation for) this lawsuit, that Cortiva's 600-hour PMT Program is ineligible for federal student aid because Texas's licensing body reviews and approves only the 500-hour curriculum. As explained in Plaintiffs' contemporaneously filed show-cause motion, that new announcement violates the preliminary injunction because it implements the Bare Minimum Rule—and in any event, it is unlawful and should be enjoined in its own right. But, for purposes of the Motion to Dismiss, the standing argument fails on its own terms. Cortiva plainly has standing based upon the same injury that supports the preliminary injunction. The Department's announcement that it might bring a separate enforcement action in the future does not moot the case. Indeed, Defendants concede that the "the Department will abstain from initiating an enforcement action against Cortiva at least until after the Court rules on Defendants' Motion to Dismiss." Certificate of Conference to Motion for Show Cause or in the Alternative Preliminary Injunction. That alone confirms that the Department's attack on Cortiva's standing is specious.

*Second*, Defendants also fall short in challenging the standing of Plaintiff, The Coalition for Career Schools, whose members, including Cortiva Institute and Bellus Academy, have incurred concrete costs as a result of the Bare Minimum Rule, including expanded recordkeeping

1

requirements and expanded staff training. These are the same injuries that the Court cited in granting the preliminary injunction, *see* ECF No. 30 at 12 (Memorandum Opinion & Order) (herein after "PI Order"), and, under binding Fifth Circuit precedent, they are sufficient to establish the Coalition's standing, *see Career Colleges & Schools of Texas v. United States 'Department of Educucation*, 98 F.4th 220, 234 (5th Cir. 2024). As in *Career Colleges*, the Department's standing challenges are "more bewildering than persuasive." *Id*.

  ***Finally***, venue is proper in the Northern District of Texas because "a substantial part of the events or omissions giving rise to [Plaintiffs'] claim occurred" here, 28 U.S.C. § 1391(e)(1)(B)— particularly, the effects of the Bare Minimum Rule on Plaintiff Cortiva in the City of Arlington and Tarrant County. Indeed, the Department has devoted such a significant portion of its briefing in this case to the application of Texas law to a Texas massage therapy program that it is surprising they even bothered to raise this venue argument.

*  *  *

  The Court should deny the motion to dismiss and refuse the proposed transfer of venue.

## **<u>BACKGROUND</u>**

**A. Plaintiffs Sued to Challenge the Bare Minimum Rule, and the Court Granted a Preliminary Injunction**

  Plaintiffs Cortiva and the Coalition for Career Schools brought this action under the Administrative Procedure Act to challenge one portion of a U.S. Department of Education (the "Department") regulation—the "Bare Minimum Rule"—which amends 34 C.F.R. § 668.14(b)(26)(ii)(A) to prohibit the use of federal student aid for career programs that exceed the minimum hours required by a state for licensure in the relevant field. *See* PI Order 1–2 (describing the Bare Minimum Rule). That new rule was scheduled to take effect on July 1, 2024. But on June 21, 2024, this Court granted Plaintiffs' motion for a preliminary injunction and ordered "that

2

enforcement and implementation of the Bare Minimum Rule, as described herein and contained in the Department of Education's October 31, 2023 Final Regulations, is hereby **ENJOINED** pending resolution of this lawsuit." *Id.* at 30.

The Court held that Plaintiffs are likely to succeed on at least two of their challenges to the Bare Minimum Rule: (a) that the Bare Minimum Rule is "arbitrary and capricious," *see id.* at 6–7, and (b) that the rule fails to reflect a "logical outgrowth" of the Department's original proposed rule, *see id.* at 8–9. As a prerequisite to granting the preliminary injunction, the Court also held that Plaintiffs had established irreparable harm. *See id.* at 9–13. The Court questioned whether the Bare Minimum Rule represented an existential threat to Cortiva and other career schools, but it correctly recognized that even smaller harms like "'compliance costs'" suffice. *Id.* at 12 (quoting *Louisiana v. Biden*, 55 F.4th 1017, 1034 (5th Cir. 2022)).

**B.    The Department Develops a "Bare Minimum Rule 2.0" and Attempts to Use It As a Basis to Moot Cortiva's Claims and Seek Transfer of Venue**

On July 26, 2024, the Department filed this motion to dismiss. *See* ECF No. 42 (Mot. to Dismiss); ECF No. 43 (Department Brief in Supp. of Mot. to Dismiss) (hereinafter Dep't Mem."). The Department's lead argument, *see* Dep't Mem. 6–10, is that Plaintiff Cortiva lacks standing based on the premise that Cortiva's 600-hour PMT Program is already ineligible for federal student aid under the Higher Education Act's state authorization requirements, *see* 20 U.S.C. § 1001(a)(2). The Department relies upon a new declaration from its own official, Shari Mecca, *see* ECF No. 44 at 2–8 (2d Mecca Decl.), which candidly acknowledges that this new position was developed in response to this lawsuit and specifically targets Cortiva and other massage schools in Texas.

For purposes of standing, this new argument is a complete red herring. The Department has not taken any action to enforce this novel and retaliatory interpretation of the state

3

authorization requirements against Cortiva; indeed, its counsel has represented that it has no intention to do so until after this Court rules on the Motion to Dismiss. But the threat is nevertheless significant for other reasons. It has the clear purpose, and the inevitable effect, of coercing Cortiva and other Texas massage schools to reduce their programs to the State's 500-hour bare minimum requirement on the threat of losing Title IV eligibility and having the Department come after them for recoupment or other disciplinary action. That is why Plaintiffs feel they have no choice but to file their contemporaneous show-cause motion, which explains why this new retaliatory policy violates the existing preliminary injunction and, in any event, is unlawful and should be enjoined.

Defendants also argue that Plaintiff The Coalition for Career Schools lacks associational standing, *see* Dep't Mem. 10–13, and that venue is not proper in the Northern District of Texas, *see id.* at 13–22.

## ARGUMENT

### I.      Plaintiffs Have Standing

Both Plaintiffs have Article III standing. Their Complaint and their successful motion for a preliminary injunction establish an "injury in fact"; that this injury is "fairly traceable" to the Bare Minimum Rule; and that it is sufficiently likely that a favorable judicial decision will redress the injury. *See generally Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

#### A.      Cortiva

Contrary to the Defendant's specious assertions, Cortiva's PMT Program is, and remains, eligible for federal student aid, suffers a concrete injury as a result of the Bare Minimum Rule, and thus has standing to bring this action. This is truly an easy case. "It follows from *Lujan* that if a plaintiff is an object of a government regulation, then that plaintiff ordinarily has standing to challenge that regulation." *Texas v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 700 F.

Supp. 3d 556 (S.D. Tex. 2023) (citing *Duarte ex rel. Duarte v. City of Lewisville*, 759 F.3d 514, 518 (5th Cir. 2014)). Indeed, this Court already acknowledged Cortiva's concrete injury-in-fact in ruling on the preliminary injunction. While the Court did not go so far as to conclude that the regulation could put Cortiva out of business, it readily acknowledged that Cortiva has incurred compliance costs as a result of the Bare Minimum Rule and will continue to incur such costs if the rule goes into effect. *See* PI Order 12–13. That alone suffices to answer the Department's standing challenge.

Resisting this common-sense conclusion, the Defendants offer a complex theory that Cortiva is not injured by the Bare Minimum Rule because, they say, its PMT Program is *already* ineligible for federal student aid. *See* Dep't Mem. 4–7 ("[T]he Department has concluded that Cortiva's 600-hour massage program is ineligible for Title IV under existing law."). As explained in depth in Plaintiffs' contemporaneous show-cause motion, the Department's position is misguided, unlawful, and an improper repackaging of the Bare Minimum Rule itself. Cortiva readily satisfies the state authorization requirement, and the Department lacks an adequate legal or factual basis to conclude otherwise. *See* App. 000026 (Rubinstein Decl. ¶ 4); App. 000021 (Jones Decl. ¶¶ 18–19).

But for purposes of this Rule 12 motion, that is all beside the point. Cortiva currently participates in the federal student aid program for its 600-hour PMT Program, and it is undisputed that, under the Bare Minimum Rule, it could not. And as this Court has already recognized, the Bare Minimum Rule imposes compliance costs—including the steps that would be necessary to reduce the program to 500 hours. *See* PI Order 12–13. The Department's assertion that it could potentially coerce Cortiva to incur those costs a different way or strip Cortiva of eligibility for an allegedly different reason in the future does not defeat standing. (And as explained in the

contemporaneous show-cause motion, this is not genuinely a different reason; it is simply the Bare Minimum Rule under a different guise.) At most, the Department's new arguments would go to mootness—but only after the Department took the required regulatory steps to render Cortiva ineligible. The Supreme Court has warned against this sort of conflating of mootness with the merits of the Plaintiff's claims. *See Chafin v. Chafin*, 568 U.S. 165, 174 (2013). A case becomes moot "'only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'" *Id.* at 172 (quoting *Knox v. Serv. Emps.*, 567 U.S. 298, 307 (2012)). That is simply not this case.

The administrative hurdles the Department would have to clear to impose its retaliatory interpretation of the state authorization requirement on Cortiva are substantial. The Higher Education Act of 1965, as amended ("HEA"), and Department regulations create two pathways for the Department to end an institution or a program's participation in the Title IV program: 1) Program Reviews; and 2) an action under Subpart G of Part 668 to Title 34 of the Code of Federal Regulations, 34 C.F.R. §§ 668.81 through 668.100. In both cases, schools that are subject to the Department's enforcement actions are provided the opportunity to respond and present evidence and argument for why the Department should not take the proposed action. *See 2023-2024 Federal Student Aid Handbook*, Vol. 2, Ch. 8; 34 C.F.R. § 668.86(b). In addition, institutions that disagreed with the determination made by the Department may request a hearing before the Department's Office of Hearings and Appeals and, if appropriate, an appeal before the Secretary. *See* 34 C.F.R. §§ 668.119(a); 668.91(c)(1). It is only *after* these procedures are fully exhausted that the Department may appropriately declare that an institution or program is not eligible for Title IV, HEA funds.

When a federal agency creates a regulatory process, the agency must follow the procedures created. *See Ft. Stewart Schs. v. FLRA*, 495 U.S. 641, 654 (1990); ("It is elementary administrative law that an agency must operate within the confines of its own regulations.")); *see also Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("[I]t is incumbent upon agencies to follow their own procedures."); *Mass. Fair Share v. L. Enf't Assistance Admin.*, 758 F.2d 708, 711 (D.C. Cir. 1985) ("It has long been settled that a federal agency must adhere firmly to self-adopted rules by which the interests of others are to be regulated."); *Coal. for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 467 (6th Cir. 2004) ("[A]n executive agency must be rigorously held to the standards by which it professes its action to be judged." (citation omitted)). "Simply stated, rules are rules, and fidelity to the rules which have been properly promulgated, consistent with applicable statutory requirements, is required of those to whom Congress has entrusted the regulatory missions of modern life." *Reuters Ltd. v. F.C.C.*, 781 F.2d 946, 951 (D.C. Cir. 1986). The Department's standing argument wholly circumvents its own binding procedures set out in a rule and thereby violates these fundamental principles of administrative law.

Nor is the Department's new legal position—articulated in a declaration submitted for the purposes of this litigation—entitled to any force or effect. That new retaliatory position has not gone through notice-and-comment rulemaking much less negotiated rulemaking as required under 20 U.S.C. § 1098a(b). It therefore cannot "'have the force and effect of law'" or "bind private parties." *Kisor v. Wilkie*, 588 U.S. 558, 583 (2019) (quoting *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 103 (2015)); *see also id.* at 579 ("[A] court should decline to defer to a merely convenient litigating position or *post hoc* rationalization advanced to defend past agency action against attack," and "a court may not defer to a new interpretation, whether or not introduced in litigation, that creates unfair surprise to regulated parties.") (cleaned up); *Loper Bright Enters. v. Raimondo*,

144 S. Ct. 2244, 2263 (2024) ("When the best reading of a statute is that it delegates discretionary authority to an agency, the role of the reviewing court under the APA is, as always, to independently interpret the statute and effectuate the will of Congress subject to constitutional limits.").

No provision in the HEA or elsewhere allows the Department to make a determination about the eligibility of a Title IV-eligible institution without observing established procedures. As a result, the Department' mere allegation about the eligibility status of the PMT Program is erroneous and irrelevant. At best, the Department's assertion is a stray irrelevancy that it never should have put before the Court. At worst, it is a conscious attempt to coerce Cortiva to drop its challenge to the Bare Minimum Rule under the threat of ruinous enforcement consequences. But for purposes of assessing Cortiva's standing, the Court may safely ignore the Department's erroneous and unlawful assertion that Cortiva's PMT Program is ineligible for Title IV funds due to a lack of state authorization.[1]

### B.    The Coalition for Career Schools

The Coalition also has standing under binding precedent.   As an unincorporated association, the Coalition can establish standing in two ways under current doctrine: it can assert standing as the representative of its members (*i.e.*, "associational standing"), or, alternatively, it can claim that it suffered an injury in its own right (*i.e.*, "organizational standing"). *Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, 681 F. Supp. 3d 647, 654 (W.D. Tex. 2023) (quoting *Warth v. Seldin*, 422 U. S. 490, 511 (1975)). Here, the Coalition relies on representative or associational standing, which exists where "(1) the association's members would independently meet the Article

---

[1] To the extent this new retaliatory policy reflects a violation of the preliminary injunction and a retaliatory threat against a Plaintiff Cortiva, however, the Court should not ignore it—which is why Plaintiffs felt compelled to file their contemporaneous show-cause motion.

III standing requirements; (2) the interests the association seeks to protect are germane to the purpose of the organization; and (3) neither the claim asserted nor the relief requested requires participation of individual members." *Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, 98 F.4th 220, 234 (5th Cir. 2024) (quoting *Ctr. for Bio. Diversity v. EPA*, 937 F.3d 533, 536 (5th Cir. 2019)).[2] An individual member of an association's standing is determined by the "familiar three-part test for Article III testing." *Id.* (quoting *Gill v. Whitford*, 585 U.S. 48, 65, (2018)).

*Career Colleges* makes clear that, under current doctrine and binding Fifth Circuit precedent, an association may establish standing based on the injury of a single member. Here, two Coalition members—Cortiva and Bellus Academy—have established standing and satisfied the three-prong test in *Lujan*. As outlined above, Cortiva has demonstrated standing based on the effects of the Bare Minimum Rule on its PMT Program in Arlington, Texas. Bellus Academy has also satisfied the requirements of standing under *Career Colleges* by establishing through declaration: 1) that the institution has suffered an injury in fact due to additional recordkeeping and incurred compliance costs; 2) that injury is the result of the BMR; and 3) a favorable court decision on the BMR would redress the injury. *Career Colleges*, 98 F.4th at 234.

Again, this is an easy case. An "increased regulatory burden" typically satisfies the injury in fact requirement under Article III. *Id.* (quoting *Texas v. EEOC*, 933 F.3d 433, 446 (5th Cir. 2019), in turn quoting *Contender Farms, L.L.P. v. U.S. Dep't of Agric.*, 779 F.3d 258, 266 (5th Cir. 2015)). As the Fifth Circuit explained in *Career Colleges*, standing is demonstrated where, as here, a challenged regulation imposes an "immediate increase in regulatory burden" on the

---

[2] While Justice Thomas recently raised concerns about whether associational standing should be allowed under Article III of the Constitution, he explicitly recognized that his views are inconsistent with current doctrine. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 405 ("No party challenges our associational-standing doctrine today. That is understandable; the Court consistently applies the doctrine, discussing only the finer points of its operation.")

plaintiff, which is "neither speculative nor contingent nor dependent on the independent actions of third parties." *Id.*

In *Career Colleges*, the court found that "at least some degree of preparatory analysis, staff training, and reviews of existing compliance protocols" for a member school constituted sufficient harm to provide standing to the associational plaintiff. *Id.* (*citing Career Colleges*, 681 F. Supp. 3d at 655). Here, members of the Coalition—including both Cortiva and Bellus—are faced with the same burden: preparing for compliance with the Bare Minimum Rule will necessitate rewriting academic programs; pursuing and gaining approval from institutional and/or programmatic accreditors for revised offerings; and staff training associated with compliance with the BMR. ECF No. 5-1 at 42–44 (Heller Decl. ¶¶ 30–36); ECF No. 5-2 at 6–7 (Lynch Decl. ¶¶ 17, 20), Thus, members of the Coalition have established a sufficient injury to support standing.[3]

Defendants also quibble with the particulars of the Coalition's bylaws, *see* Dep't Mem. 11–12, but those arguments also miss the mark. The Coalition recently updated its bylaws to more clearly articulate its purpose—since Defendants have attempted to put that purpose at issue. *See* App. 000036–40 (Thompson Decl. Ex. B (First Amended and Restated Charter and Bylaws for Coalition)). In relevant part, those Bylaws provide:

> "The Association is organized and shall be operated for social welfare purposes. More specifically, the purpose of the Association is to provide a forum for career schools impacted by the United States Department of Education's new Program Length Rule referred to hereinafter as the "Bare Minimum Rule" (set forth in 34 CFR 668.14(b)(26), formerly known as the 150% Rule) who wish to support the Association's participation in litigation in opposition to the Program Length Rule for the benefit and protection of the public who may wish to receive an education beyond what the Bare Minimum Rule provides." *Id.*

Further, the Bylaws define the Rights and Privileges of Members as follows:

---

[3] Notably, the *Career Colleges* declared that the plaintiff's had standing after analyzing only the first *Lujan* prong. The traceability and redressability prongs are not genuinely in doubt in this context, and Defendants do not argue them either.

"Voting Members shall have the right to vote on the election of directors and shall have the right to vote on any amendment or restatement of this Charter and Bylaws. All other voting rights and powers shall be exercised by the Board of Directors. Nonvoting Members shall have no voting rights on any matter pertaining to the Association. Both Voting Members and Nonvoting Members may participate in and shall have a voice in the development of policy through the Association's dissemination of information to the Members with an opportunity to share thoughts and opinions and provide direct input to the directors and officers of the Association." *Id.*

These clarifications, which do not significantly depart from the previous iteration of the Bylaws, make clear that the *raison d'être* of the Coalition is to benefit and protect the interests of members of the public who may wish to receive an education beyond what the Bare Minimum Rule allows. Those interests, which the Coalition seeks to defend through its participation in this litigation, are germane to the purpose of the organization.

Notably, the Defendants do not address the third prong of associational standing—"neither the claim asserted nor the relief requested requires participation of individual members"—but it is a non-issue anyway. The Coalition's members—like the members of the association in *Career Colleges*—are "objects of the challenged regulations" and face direct injuries from the Bare Minimum Rule in the form of new regulatory burdens and increased risk of financial liability. *Career Colleges*, 681 F. Supp. 3d at 655 (quoting *Lujan*, 504 U.S. at 561–62); *see also Contender Farms*, 779 F.3d at 266 ("[W]e find no reason to depart from the ordinary rule that Contender Farms and McGartland, as objects of the Regulation, may challenge it."). As in *Career Colleges*, there is no real dispute that CCS's member schools are among the objects of the regulation at issue. When a challenged regulation applies to a plaintiff directly, "there is ordinarily little question" that the plaintiff has standing. *Id.*

Like the plaintiffs in *Career Colleges*, Plaintiffs here submitted declarations from member schools stating that they have expended time conducting "preparatory activities" to ensure

11

compliance with the Bare Minimum Rule. This is the type of concrete injury that the Fifth Circuit has deemed adequate to provide standing in other regulatory challenges. *Career Colleges*, 681 F. Supp. 3d at 655 (citing *Texas v. EEOC*, 933 F.3d 433, 446 (5th Cir. 2019)); *see also Contender Farms*, 779 F.3d at 266 ("[An] increased regulatory burden typically satisfies the injury in fact requirement").

Under binding Fifth Circuit, the Coalition has associational standing.

## II.    Venue Is Proper Here

This litigation—including the Department's own substantive arguments—has focused as much on the application of Texas law to a Texas massage therapy program as they have on the substance of the Department's Bare Minimum Rule. It is therefore somewhat curious that Defendants would challenge the propriety of venue. But in any event, their arguments are meritless.

In a regulatory challenge like this one, "a substantial part of the events or omissions giving rise to the claim[s]," 28 U.S.C. § 1391(e)(1)(B), are deemed to take place where an unlawful rule imposes its burdens. *See, e.g.*, *Texas v. United States*, 95 F. Supp. 3d 965, 973 (N.D. Tex. 2015) (O'Connor, J.), *injunction dissolved on other grounds*, No. 7:15-cv-00056-O, 2015 WL 13424776 (N.D. Tex. June 26, 2015). Under Rule 12(b)(3) and 28 U.S.C. § 1406, Plaintiffs need to make only a *prima facie* showing that venue exists. *Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, No. 4:23-CV-0206-P, 2023 WL 2975164, at *1 (N.D. Tex. Apr. 17, 2023).[4] All facts must be viewed in the light most favorable to the plaintiff with all conflicts resolved in the plaintiff's favor. *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 473 (5th Cir. 2010); *Braspetro Oil*

---

[4] Plaintiffs maintain that the burden of demonstrating improper venue should be on the defendant, *see, e.g.*, *Bounty-Full Entm't, Inc. v. Forever Blue Entm't Grp., Inc.*, 923 F. Supp. 950, 957 (S.D. Tex. 1996), but Plaintiffs recognize this Court has previously placed the burden on plaintiffs. *See Career Colls. & Schs. of Tex.*, No. 4:23-CV-0206-P, 2023 WL 2975164, at *1.

*Servs. Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 615 (5th Cir. 2007). Further, all conflicts in the parties' affidavits must be resolved in the plaintiff's favor. *See Shoebacca, Ltd. v. K-2 Corp.*, No. 3:17-CV-0473-G, 2017 WL 3115159, at *2 (N.D. Tex. July 21, 2017) ("Conflicts in the parties' affidavits must also be resolved in favor of the plaintiff."); *CIT Grp./Com. Servs., Inc. v. Romansa Apparel, Inc.*, No. 3:02-CV-1954-P, 2003 WL 169208, at *2 (N.D. Tex. Jan. 21, 2003) (same).

Plaintiffs have readily established venue, particularly through the allegations of Plaintiff Cortiva. And Defendants do not really dispute that. Their venue argument is functionally contingent on its argument that Cortiva lacks standing. *See* Dep't Mem. 17. As explained above, Defendants' standing argument lacks merit. If the Court rejects it, the Court can also readily reject the venue challenge as well. With Cortiva in the case, there should be no question that "a substantial part of the events or omissions giving rise to [Cortiva's] claim occurred" in the Northern District of Texas. Cortiva operates in the Northern District, conducts a significant amount of its business in the Northern District, and currently employs twenty people at the Arlington, Texas campus. App. 000030 (Small Decl. ¶ 5). In addition, approximately 110 students are enrolled at the Arlington campus, with 65 students currently enrolled in the PMT Program. *Id.* (Small Decl. ¶ 6). All students are present on-campus to complete their studies and training and must physically clock-in and clock-out each day. *Id.* (Small Decl. ¶ 7). Indeed, because of the nature of the training provided to Cortiva's Arlington campus, students almost always reside nearby. *Id.* (Small Decl. ¶ 8).

The nature of these injuries within the Northern District of Texas more than satisfies the "substantial part of the events" provision, which "[c]ourts tend to liberally construe." *Founders Ins. Co. v. Billy's Bar & Grill, LLC*, No. 3:18-CV-00367-M, 2019 WL 5425478, at *6 (N.D. Tex.

Oct. 23, 2019). Cortiva itself—as well as other individuals, such as its employees and students, who will be negatively affected by the Bare Minimum Rule—will feel all their injuries in the Northern District of Texas because that is where the Bare Minimum Rule imposes its burden. Thus, Cortiva satisfies 28 U.S.C. § 1391(e)(1)(B) because "venue under this provision is proper where an unlawful rule imposes its burdens." *See, e.g.*, *Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, No. 4:23-CV-0206-P, 2023 WL 2975164, at *2 (N.D. Tex. Apr. 17, 2023) (Pittman, J.) (citation omitted); *Umphress v. Hall*, 479 F. Supp. 3d 344, 351–52 (N.D. Tex. 2020) (Pittman, J.) (same); *Texas*, 95 F. Supp. 3d at 973 (same).

The Department's arguments for why there is no transactional venue strain credulity as it implies that the only division where "a substantial part of the events" occurred is the District of Columbia because that is where it promulgated the Rule and because the Rule affects vocational programs nationwide. *See* ECF No. 43 at 17–18. But that reading would wipe out 28 U.S.C. § 1391(e)(1), which allows civil actions to "be brought in *any* judicial district" in which a substantial part of the events occurred and would make it so no nationwide rule could be challenged outside of the District of Columbia because that is where virtually every rule is promulgated. In other contexts, Congress has provided that legal challenges to particular categories of agency regulations must be filed in the District of Columbia and/or be consolidated into a single case. *See, e.g.*, 28 U.S.C. § 2112 (establishing a consolidation and transfer mechanism for use "[i]f proceedings are instituted in two or more courts of appeals with respect to the [FCC] order"); 42 U.S.C. § 7607 (providing that challenges to certain EPA actions under the Clean Air Act "may be filed only in the United States Court of Appeals for the District of Columbia"). Congress has never established a similar rule more generally for regulatory challenges under the Administrative Procedure Act. *See In re Chamber of Com. of United States*, 105 F.4th 297, 307 (5th Cir. 2024).

14

There is also no compelling reason for the court to transfer venue to the U.S. District Court for the District of Columbia under 28 U.S.C. § 1404(a). Under that statutory provision—which governs venue transfer based on convenience—"[t]he bar is much higher" because the movant must establish "good cause" by showing "(1) that the marginal gain in convenience will be *significant*, and (2) that its evidence makes it plainly obvious—i.e., clearly demonstrated—that those marginal gains will *actually* materialize in the transferee venue." *Id.* at 304 (quoting *In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024)) (emphasis in original).

The Department makes a last-gasp effort for this Court to transfer the case under 28 U.S.C. § 1404(a) based on the alleged inconvenience of this venue. *See* Dep't Mem. 20–21. But the Department comes nowhere close to meeting its burden, which is to "'clearly establish[] good cause' by 'clearly demonstrating that a transfer is for the convenience of parties and witnesses, in the interest of justice.'" *In re Clarke*, 94 F.4th at 508 (quoting *Def. Distributed v. Bruck*, 30 F.4th 414, 433); *see also In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 629 (5th Cir. 2022) ("The *ultimate inquiry* is whether the destination venue is 'clearly more convenient than the venue chosen by the plaintiff.'" (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc))). To meet that burden, the Department must "adduce evidence and arguments that clearly establish good cause for transfer based on convenience and justice." *Id.* (quoting *Def. Distributed*, 30 F.4th at 433).

Under established precedent, Defendants fail to carry that burden.[5] The Department vaguely suggests that the private interest factors[6]—which focus on "the convenience of the

---

[5] Defendants' argument here is a far weaker version of the arguments at issue in *In re Chamber of Com.*, particularly given Cortiva's role as a named plaintiff and the centrality of Texas law and Texas harms in this litigation to date.

[6] The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Chamber of Com.*, 105 F.4th at 304 (citation omitted).

parties," *id.* at 306—favor transfer. *See* Dep't Mem. 20. But Defendants do not explain themselves. They are presumably focused on the convenience to their Justice Department counsel, but they completely fail to address the interests of Cortiva and potential witnesses located in Texas. And the Fifth Circuit has squarely held that the Federal Government's general assertions that D.C. is a more convenient venue are insufficient to support transfer. *See In re Chamber of Com.*, 105 F.4th at 307.

The same goes for the Department's public interest factor analysis. The Department argues that the public interest factors[7] favor transfer because (1) the Northern District "has a very busy docket" and (2) there is a "local interest in having localized interests decided at home." Dep't Mem. 20. Even if *In re Chamber of Com.* did not undercut that basis for transfer, *see* 105 F.4th at 308, it would fail on its own terms. This case unmistakable implicates localized interests here in Texas which ought to be decided here. Indeed, Defendants themselves have undertaken a crusade to contact Texas regulatory officials, to make novel pronouncements about the meaning and effect of Texas law, and to deploy those arguments heavy-handedly against a Texas massage therapy program that operates within the district. Those issues should be resolved here, not far away in the Nation's capital.

When an agency promulgates a regulation with diffuse effects—because citizens nationwide are impacted—the Fifth Circuit has made clear that the public-interest factor is neutral and thus does not support discretionary transfer. *See id.* at 308–09. And contrary to Defendants argument, the event associated with "the promulgation of a rule [is] not the type of event[] that courts should consider under this factor." *Id.* at 309. Courts may consider court congestion when

---

[7] The public interest factors are "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *In re Chamber of Com.*, 105 F.4th at 304 (citation omitted).

deciding whether to transfer, *see id.* at 310, but that factor alone cannot justify transfer, *see id.* at 311. Separately, a factor not mentioned by the Department—"the familiarity of the forum with the law that will govern the case," *id.* at 304 (citation omitted)—favors keeping the case in Texas because the Department has specifically chosen to base many of its arguments on a novel interpretation of Texas law.

Other case law further supports keeping the case in the Northern District of Texas. In *In re Clarke*, the Fifth Circuit granted a petition for writ of mandamus when a district court transferred a case despite the presence of five individual plaintiffs living in Texas who would be negatively affected by the agency's decision. 94 F.4th at 507. Like here, the government's argument boiled down to an argument that the Texas forum had court congestion and that there was merely a chance that D.D.C. would hear the case quicker. *See id.* at 515 ("Indeed, not even the court congestion factor supports transferring the case to D.D.C.—it would be a stretch to say that court congestion 'favors D.D.C.' and not just transfer 'somewhere else.'"). And, like here, the interest was diffuse and affected both the Texas forum and D.D.C. equally. *Id.* at 513.

Because the Department is wrong on the law and because it has adduced no evidence— much less evidence that "clearly establish[es] good cause for transfer based on convenience and justice," *id.* at 508—the Court should deny the request to transfer under § 1404(a).

## CONCLUSION

The Court should promptly deny the motion dismiss and reject Defendants' request to transfer. The parties and the Court are fully aware that this case will be resolved on cross-motions for summary judgment. There is no need to further delay in getting to that stage of the litigation.

Dated August 1, 2024          Respectfully submitted,

*/s/ Farnaz Farkish Thompson*
Melissa Hensley (Texas Bar No. 00792578)
Cory R. Ford (Texas Bar No. 24121098)
Michael C. Elliott (Texas Bar No. 24086913)
McGuireWoods LLP
2601 Olive Street, Suite 2100
Dallas, TX 75201
Telephone: (469) 372-3926
Facsimile: (214) 273-7475
mhensley@mcguirewoods.com
cford@mcguirewoods.com
melliott@mcguirewoods.com

Farnaz Farkish Thompson (D.C. Bar No. 1659285) (*pro hac vice*)
John S. Moran (D.C. Bar No. 1014598) (*pro hac vice*)
Jonathan Helwink (D.C. Bar No. 1754411) (*pro hac vice*)
Stephen Tagert (Virginia Bar No. 99641) (*pro hac vice*)
McGuireWoods LLP
888 16th Street NW, Suite 500
Washington, DC 20006
Telephone: (202) 828-2817
Facsimile: (202) 828-3327
fthompson@mcguirewoods.com
jmoran@mcguirewoods.com
jhelwink@mcguirewoods.com
stagert@mcguirewoods.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 1, 2024, I caused the foregoing to be filed with the Clerk of the U.S. District Court for the Northern District of Texas using the Court's CM/ECF system, which will electronically serve copies of the same on counsel for all parties.

*/s/ Farnaz Farkish Thompson*
Farnaz Farkish Thompson
