**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| 360 DEGREE EDUCATION, LLC, d/b/a Cortiva Institute; and THE COALITION FOR CAREER SCHOOLS,<br><br>                                        Plaintiffs,<br><br>v.<br><br>DEPARTMENT OF EDUCATION; and SECRETARY MIGUEL A. CARDONA, in his official capacity as Secretary of the Department of Education,<br><br>                                        Defendants. | Case No. 4:24-cv-00508-P<br><br>**Brief in Support of Plaintiffs' Motion for Order to Show Cause, or in the Alternative, for a Further Preliminary Injunction** |

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ...................................................................................................... 1

BACKGROUND ........................................................................................................ 4

    A.    The Court Granted a Preliminary Injunction and Enjoined the Department from Implementing or Enforcing the Bare Minimum Rule ..................................... 4

    B.    Through an Exhibit to Its Motion to Dismiss, the Department Announced a New "Bare Minimum Rule 2.0" That Would Strip Cortiva and Other Texas Massage Schools of Federal Funding for Exceeding the State's Bare-Minimum 500-Hour Licensing Requirement ............................................................ 4

    C.    Cortiva Readily Meets the State Authorization Requirement ................................ 8

ARGUMENT ........................................................................................................... 11

    I.    The Bare Minimum Rule 2.0 Violates the Preliminary Injunction ...................... 11

    II.    Even If the Bare Minimum Rule 2.0 Did Not Violate the Existing Preliminary Injunction, the Court Should Enjoin the Department from Implementing or Enforcing It Because It Is Unlawful .......................................... 14

        A.    Plaintiffs Would Likely Succeed in Challenging the Bare Minimum Rule 2.0 ............................................................................................... 14

        B.    Absent an Injunction, Plaintiffs Will Suffer Irreparable Harm ................... 19

    III.    The Balance of the Equities and Public Interest Favor Entering A Preliminary Injunction or Temporary Restraining Order ................................... 20

CONCLUSION......................................................................................................... 22

CERTIFICATE OF SERVICE ................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Chamber of Com. of United States v. Consumer Fin. Prot. Bureau,*
No. 4:24-CV-00213-P, 2024 WL 2310515 (N.D. Tex. May 10, 2024)............................21

*Def. Distrib. v. U.S. Dep't of State,*
838 F.3d 451 (2016)............................................................................................................20

*Dep't of Com. v. New York,*
588 U.S. 752 (2019)............................................................................................................17

*Hartman v. Moore,*
547 U.S. 250 (2006)......................................................................................................17, 18

*In re Bradley,*
588 F.3d 254 (5th Cir. 2009) .............................................................................................11

*In re Joseph P. Conte Toyota, Inc.,*
167 F.3d 537 (5th Cir. 1998) ..........................................................................................1, 14

*Jackson Women's Health Org. v. Currier,*
760 F.3d 448 (5th Cir. 2014) ..........................................................................................3, 21

*Jostens, Inc. v. Hammons,*
No. 4:20-CV-00225, 2021 WL 5578671 (E.D. Tex. Nov. 29, 2021) ..........................11, 12

*Kisor v. Wilkie,*
588 U.S. 558 (2019)......................................................................................................15, 16

*Loper Bright Enters. v. Raimondo,*
144 S. Ct. 2244 (2024).......................................................................................................16

*Lozman v. City of Riviera Beach,*
585 U.S. 87 (2018)..............................................................................................................17

*Martin v. Trinity Indus., Inc.,*
959 F.2d 45 (5th Cir. 1992) ...............................................................................................12

*Morgan v. Fletcher,*
518 F.2d 236 (5th Cir. 1975) .............................................................................................21

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins.,*
43 U.S. 29 (1983)................................................................................................................17

*Mt. Healthy City Bd. of Ed. v. Doyle*,
    429 U.S. 274 (1977)................................................................18

*Nieves v. Bartlett*,
    587 U.S. 391 (2019)...........................................................17, 18

*Nken v. Holder*,
    556 U.S. 418 (2009)...........................................................3, 20

*Perez v. Mortg. Bankers Ass'n*,
    575 U.S. 92 (2015)................................................................16

*Sackett v. EPA*,
    566 U.S. 120 (2012)..............................................................13

*SEC v. First Fin. Grp. of Tex., Inc.*,
    659 F.2d 660 (5th Cir. 1981) ................................................12

*Texas v. Biden*,
    646 F. Supp. 3d 753 (N.D. Tex. 2022) .................................17

*Wis. Gas Co. v. FERC*,
    758 F.2d 669 (D.C. Cir. 1985) .............................................20

**CONSTITUTION**

U.S. CONST. amend. I....................................................................17

**STATUTES**

20 U.S.C. § 1001...........................................................................6

20 U.S.C. § 1001(a)(2)...........................................................*passim*

20 U.S.C. § 1098a(b)(1)................................................................16

N.M. Admin. Code § 16.7.4.12........................................................7

Tex. Occ. Code § 455.156 .............................................................15

Tex. Occ. Code § 455.203(c) .........................................................15

16 Tex. Admin. Code § 117.58........................................................15

16 Tex. Admin. Code § 117.62(c) ...................................................................................15

16 Tex. Admin. Code § 117.62(c)(2) ..............................................................................10

**REGULATIONS**

34 C.F.R. § 600.2 ........................................................................................................ 8-9

34 C.F.R. § 600.9 ...................................................................................................9, 10, 15

34 C.F.R. § 668.8(a) ........................................................................................................9

34 C.F.R. § 668.14(b)(26)(ii)(A) ....................................................................................4

34 C.F.R. § 668.448(b)(26)(ii)(A) .................................................................................18

*Distance Education & Innovation*, 85 Fed. Reg. 18,638 (Apr. 2, 2020) .......................7

*Financial Responsibility, Administrative Capability, Certification Procedures,
Ability To Benefit (ATB)*, 88 Fed. Reg. 74,568 (Oct. 31, 2023)......................................6

*Student Assistance General Provisions & Federal Pell Grant Program*,
59 Fed. Reg. 9,526 (Feb. 28, 1994) ................................................................................7

*Student Assistance General Provisions; Federal Family Education Loan Programs;
Federal Pell Grant Program*, 59 Fed. Reg. 22,348 (Apr. 29, 1994) ...............................7

**RULE**

Fed. R. Civ. P. 15 ............................................................................................................1

**OTHER AUTHORITIES**

La. S.B. 353, https://www.legis.la.gov/Legis/ViewDocument.aspx?d=1383047 ...........7

TDLR Complaints and Enforcement,
https://www.tdlr.texas.gov/complaints-and-enforcement/.............................................10

U.S. Dep't of Educ., Federal Student Aid, Temporary Injunction on Program
Length Regulations (July 3, 2024),
https://fsapartners.ed.gov/knowledge-center/library/electronic-announcements/2024-07-
03/temporary-injunction-program-length-regulations ...................................................7

WRIGHT & MILLER, *Enforcement of and Collateral Attack on Injunctions*,
11A FED. PRAC. & PROC. CIV. § 2960 (3d ed.) .............................................................13

## INTRODUCTION

After this Court enjoined the U.S. Department of Education from "enforcement and implementation of the Bare Minimum Rule," ECF No. 30 at 15; ECF No. 39 at 1, the Department[1] announced that, in retaliation for the filing of this regulatory challenge, it will strip Plaintiff Cortiva and other Texas massage schools of federal funding because "the state only approves 500-hour massage programs, and such institutions should not continue disbursing Title IV funds to students enrolled in massage programs that exceed the length approved by the state." ECF No. 44 at 8 (2d Mecca Decl. ¶ 12). That "Bare Minimum Rule 2.0"—a Department of Education policy to strip schools of funding for exceeding the State's bare-minimum licensure requirement—violates the preliminary injunction. The Court should promptly enter an order for the Department to show cause why it should not be held in civil contempt.[2]

And even if this retaliatory threat did not violate the preliminary injunction, it would still be an unlawful agency action the Court should enjoin in its own right. "A court has the inherent authority to protect its jurisdiction through injunction." *In re Joseph P. Conte Toyota, Inc.*, 167 F.3d 537 (5th Cir. 1998). The Department is transparently attempting to moot this case through strongarm tactics against Cortiva and other schools. *See* ECF No. 43 at 6–10 (Dep't Mem. in Supp. of Mot. to Dismiss). If necessary, Plaintiffs could amend their complaint to add new substantive counts challenging this Bare Minimum Rule 2.0, *see generally* Rule 15(a)(1)–(2)—but Plaintiffs

---

[1] Both the Department of Education itself and Education Secretary Miguel Cardona are named Defendants here, but for simplicity's sake, Plaintiffs refer here simply to the Department. The distinction is immaterial for present purposes.
[2] Consistent with this Court's direction, Plaintiffs are contemporaneously filing a brief in opposition to Government Defendants' Motion to Dismiss, which will address among other things Plaintiffs Cortiva and the Coalition for Career Schools' standing. But given the Department's bold representations about the retaliatory action it intends to take against Cortiva and other Texas massage programs—based on the notion that they exceed Texas's bare-minimum 500-hour requirement—Plaintiffs feel they have no choice but to bring this motion as well. This episode illustrates the dramatically coercive power that the Department wields over institutions of higher education who accept federal student aid and the dangers that arise when the Department abuses that power.

do not believe that is necessary given the Court's inherent authority. It is not even clear yet whether the Department intends to follow this policy more broadly or has simply adopted it here as retaliation against a school that dared to challenge the Bare Minimum Rule.

There are several reasons why this Bare Minimum Rule 2.0 is unlawful, aside from violating the preliminary injunction:

(1) Contrary to the Department's assertion here, the state-authorization requirement in Title IV of the Higher Education Act ("Title IV" or "HEA") does not mean that a state administrative agency must approve each hour of a particular program, and Cortiva readily meets the statutory standard as an institution "legally authorized within [Texas] to provide a program of education beyond secondary education," 20 U.S.C. § 1001(a)(2);

(2) If the Department really wanted to enforce its novel interpretation, it would need to go through negotiated rulemaking;

(3) The Department's stated decision to apply this interpretation to Cortiva and other massage programs in Texas, but not to other schools, is quintessentially arbitrary and capricious; and

(4) The Department's new retaliatory action against Cortiva, in response to its filing of this regulatory litigation, and violates Cortiva's rights under the First Amendment to the United States Constitution.

In light of these fatal defects, the Court should resoundingly reject the Department's new version of the Bare Minimum Rule.

The traditional factors support enjoining the Department from pursuing this threat further.

***First***, Plaintiffs are likely to succeed on the merits of at least one, if not all, of the arguments above.  Cortiva is authorized by the Texas Department of Licensing & Regulation ("TDLR") to provide post-secondary education in massage therapy, and its Professional Massage Therapy ("PMT") Program complies with Texas law; Cortiva and its PMT Program thus fully comply with Title IV's state authorization requirements. Defendants' novel interpretation of the state-authorization requirement—which is not codified in any statute, regulation, or guidance document, and appears for the first time in an email attached to the Department's motion to dismiss, *see* ECF

No. 44 at 38–40 (July 19, 2024 Email from Martina Fernandez-Rosario, FSA to Lorrain Sroufe, TDLR)—is wrong; is not the product of required rulemaking procedures; is arbitrary and capricious to the extent it is aimed at Cortiva and other Texas massage schools but no one else; and is plainly governmental retaliation against Cortiva for the protected First Amendment activity of filing this lawsuit.

*Second*, Plaintiffs will suffer irreparable harm absent preliminary relief because, by the Department's own telling, this Bare Minimum Rule 2.0 will cause Cortiva to lose access to Title IV funds for its PMT Program in Arlington, Texas, or to incur unrecoverable compliance costs to meet the Department's newly announced standard—the same irreparable injury that this Court relied upon in issuing a preliminary injunction against the Bare Minimum Rule in the first place. *See* ECF No. 30 at 9–13 (Memorandum Opinion & Order).

*Third and fourth*, the balance of the equities and the public interest also favor preliminary relief. As this Court has already noted, "[t]hese factors 'merge when the Government is the opposing party,'" *id.* at 13 (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)), and "'it is always in the public interest' to stop enforcement of unconstitutional or invalid laws," *id.* (quoting *Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 458 n.9 (5th Cir. 2014)). As before, if the Court agrees that Plaintiffs are likely to succeed on the merits and that the Department's unlawful actions during the course of this litigation will cause irreparable harm absent injunctive relief, then the last two pieces fall easily into place.

Plaintiffs thus seek a show-cause order, or in the alternative, injunctive and other appropriate preliminary relief to prevent the Department from applying the Bare Minimum Rule 2.0 to Cortiva or other Texas schools. In order to protect the orderly resolution of this litigation—which the Court has already expressed a desire to resolve promptly—the Court should further

3

enjoin the Department from taking *any* action to deprive Cortiva of Title IV eligibility for student aid without first affirmatively seeking leave of court. This additional prophylactic measure will ensure that this litigation does not get sidetracked by any other novel attempts by the Department to moot out Plaintiffs' claims.

## BACKGROUND

**A.     The Court Granted a Preliminary Injunction and Enjoined the Department from Implementing or Enforcing the Bare Minimum Rule**

Plaintiffs Cortiva and the Coalition for Career Schools brought this action under the Administrative Procedure Act to challenge one portion of the Department's regulations—the "Bare Minimum Rule"—which amends 34 C.F.R. § 668.14(b)(26)(ii)(A) to prohibit the use of federal student aid for career programs that exceed the minimum hours required by a state for licensure in the relevant field. *See* ECF No. 30 at 1–2 (describing the Bare Minimum Rule). That new rule was scheduled to take effect on July 1, 2024. But on June 21, 2024, this Court granted Plaintiffs' motion for a preliminary injunction and ordered "that enforcement and implementation of the Bare Minimum Rule, as described herein and contained in the Department of Education's October 31, 2023 Final Regulations, is hereby **ENJOINED** pending resolution of this lawsuit." *Id.* at 30.

**B.     Through an Exhibit to Its Motion to Dismiss, the Department Announced a New "Bare Minimum Rule 2.0" That Would Strip Cortiva and Other Texas Massage Schools of Federal Funding for Exceeding the State's Bare-Minimum 500-Hour Licensing Requirement**

On July 26, 2024, the Department filed a motion to dismiss, *see* ECF No. 42, and argued among other things that Cortiva lacks standing because "Cortiva's 600-hour PMT Program is already ineligible for Title IV" based on the Department's interpretation of 20 U.S.C. § 1001(a)(2). That section represents part of the definition of an "institution of higher education," and provides that "the term 'institution of higher education' means an educational institution in any State that

. . . is legally authorized within such State to provide a program of education beyond secondary education." *Id*. On its face, that statutory provision simply requires that, to be an "institution of higher education," the *institution* must be authorized to provide "a program"—which Cortiva indisputably is.

But the Department's argument is based on a different interpretation of § 1001(a)(2). The Department states: "Each program that a participating postsecondary institution provides must also be legally authorized by the state and approved by the institution's accreditor to be Title IV eligible."  ECF No. 43 at 7 (Department Brief in Supp. of Mot. to Dismiss) (quotation omitted). And, the Department says, Cortiva's PMT Program cannot meet that standard because, even though the 600-hour program is lawful, TDLR has reviewed and approved only the 500-hour minimum curriculum, not the additional 100 hours.  In the Department's July 19, 2024 interpretation, "[w]here states approve programs of a specific length, the Department considers the state's authorization to cover programs of that length but not programs that exceed that length." ECF No. 44 at 39 (July 19, 2024 Email from Martina Fernandez-Rosario, FSA to Lorrain Sroufe, TDLR).

This newly announced policy position is a "Bare Minimum Rule 2.0." It provides that "Cortiva, and similarly situated institutions in Texas," who provide "massage programs in excess of 500 hours are not eligible for Title IV funding because the state only approves 500-hour massage programs, and such institutions should not continue disbursing Title IV funds to students enrolled in massage programs that exceed the length approved by the state." ECF No. 44 at 8 (2d Mecca Decl. ¶ 12). This new policy position is not based on any preexisting statute, regulation, or guidance document; rather, by the Department's own admission, it is a position developed on an *ad hoc* basis in response to Cortiva's participation in this lawsuit. *See* ECF No. 44 at 5 (2d Mecca

Decl. ¶ 8) (making clear that the Department's position was developed "after the filing of the Complaint in this case" based on a specific inquiry made to TDLR about Plaintiff Cortiva). And the principal authority cited in the Department's legal brief is a declaration from a Department official prepared specifically for purposes of this litigation. *See* ECF No. 43 at 7–9.

Contrary to the Department's suggestion in its motion-to-dismiss brief, this newly announced policy is not "entirely separate from the [Bare Minimum Rule]." *Id.* at 7. It is the exact same thing. When TDLR authorizes a school to offer massage therapy programs in Texas, it reviews and certifies only the 500-hour program portion precisely because that is the minimum baseline required for licensure under state law. App. 000026 (Rubinstein Decl. ¶¶ 3–4); App. 000020–24 (Jones Decl. ¶¶ 13-28); App. 000033–35 (Thompson Decl. Ex. A (July 30, 2024 Email from TDLR General Counsel Dough Jennings)). For the Department to say that caps an eligible massage therapy program in Texas at 500 hours is to enforce or implement the Bare Minimum Rule. The Department's reliance on the state authorization requirement in § 1001(a)(2) does not change anything; that is one of the very provisions the Department cited as statutory authority for promulgating the Bare Minimum Rule in the first place. *See* U.S. Department of Education, *Financial Responsibility, Administrative Capability, Certification Procedures, Ability To Benefit (ATB)*, 88 Fed. Reg. 74,568, 74,638 (Oct. 31, 2023) ("[T]he Department has authority under the HEA sections 101, 102, and 481(b) to implement and enforce statutory eligibility requirements, including those relating to GE programs.").[3]

Moreover, the Bare Minimum Rule 2.0 would render the 150% Rule, which is currently in effect, null and void. App. 000024 (Jones Decl. ¶ 28) ("If the Department's interpretation in the Motion were correct, it would undermine the entire history and interpretation of the 150% Rule,

---

[3] Section 101 of the Higher Education Act is codified at 20 U.S.C. § 1001.

going back to 1994."); App. 000026–27 (Rubinstein Decl. ¶¶ 5–6).  After this Court confirmed that the preliminary injunction is indeed nationwide, the Department issued an announcement concerning the injunction that states in relevant part: "Therefore, until further notice institutions must continue to comply with the maximum program length regulations that were in effect prior to July 1, 2024.  The existing regulations limit the maximum program length of GE programs to 150% of a state's minimum educational requirements for licensure, or 100% of the requirements of an adjacent state, whichever is greater."[4]  U.S. Dep't of Educ., Federal Student Aid, Temporary Injunction on Program Length Regulations (July 3, 2024), https://fsapartners.ed.gov/knowledge-center/library/electronic-announcements/2024-07-03/temporary-injunction-program-length-regulations. Cortiva's PMT Program at 600 hours is still less than 150% of the minimum 500-hour curriculum required for licensure in Texas. Adjacent states actually require more than 600 hours for state licensure with respect to massage therapists.  The Department seems to ignore that two adjacent states to Texas, New Mexico and Louisiana, have state licensure requirements for massage therapists that exceed 500 hours.  New Mexico requires a 650-hour "minimum curricula of massage therapy training" for licensure under New Mexico Administrative Code § 16.7.4.12, and Louisiana recently increased its requirement to a minimum "six hundred twenty-five hour instructor-supervised course of studies" through Senate Bill 353, amending La. Code § 37:3556(A)(1)(a)(ii), https://www.legis.la.gov/Legis/ViewDocument.aspx?d=1383047.

---

[4] The Department for the first time in this announcement refer to the 150% Rule as "the maximum program length regulations," and attempt to eschew the longstanding understanding and interpretation of the 150% Rule as a safe harbor.  The 150% Rule has served as a safe harbor at its inception in 1994, both in the notice of proposed rulemaking, *Student Assistance General Provisions & Federal Pell Grant Program*, 59 Fed. Reg. 9,526, 9,547-48 (Feb. 28, 1994), and in the notice of final rule, *Student Assistance General Provisions; Federal Family Education Loan Programs; Federal Pell Grant Program*, 59 Fed. Reg. 22,348, 22,387 (Apr. 29, 1994).  The 150% Rule as revised in 2020 also is characterized as a safe harbor in the notice of proposed rulemaking, *Distance Education & Innovation*, 85 Fed. Reg. 18,638, 18,663 (Apr. 2, 2020).  The Department's new characterization of the 150% Rule as a maximum instead of a safe harbor also smacks of retaliation.  App. 000027 (Rubinstein Decl. ¶ 6); App. 000020–24 (Jones Decl. ¶¶ 14-28).

The Bare Minimum Rule 2.0 renders the 150% Rule ineffective and has the same effect and relies on the same statutory authority as the Bare Minimum Rule that the Court enjoined the Department from enforcing or implementing.

## C.    Cortiva Readily Meets the State Authorization Requirement

As noted above, Cortiva is indisputably "legally authorized within [Texas] to provide a program of education beyond secondary education." 20 U.S.C. § 1001(a)(2). That should be the beginning and end of the matter, but the Department has made clear that it intends to invoke this provision to strip Cortiva and other Texas massage schools of eligibility for federal student aid. That retaliatory threat is doubly flawed because (a) it improperly incorporates an additional program-authorization requirement into § 1001(a)(2) that Congress never enacted, and (b) the massage therapy programs at issue, including Cortiva's 600-hour PMT Program are "authorized" in Texas within the meaning relevant for purposes of Title IV eligibility.

The Department appears to conflate the portion of a school's program curriculum that TDLR reviews and approves (which is limited to the bare-minimum 500-hour portion) with state-law "authorization" for a school to offer that program. Nothing in federal law provides that state authorities must review and approve the entirety of a program's curriculum for the program to be Title IV eligible. If it did, that requirement would disqualify most higher-education programs in the United States.

It is particularly telling that the Department cites two irrelevant regulations but ignores the regulation that describes the state authorization requirement. *See* ECF No. 43 at 8 (citing 34 C.F.R. §§ 600.2, 668.8(a)). Section 600.2 defines an "educational program" as "[a] legally authorized postsecondary program of organized instruction or study that . . . (i) [l]eads to an academic, professional, or vocational degree, or certificate, or other recognized educational credential . . .

8

and . . . (ii) [m]ay, in lieu of credit hours or clock hours as a measure of student learning, utilize direct assessment of student learning . . . ." 34 C.F.R. § 600.2. It says nothing about what it means to be legally authorized, and Cortiva's PMT Program indisputably satisfies the credential requirement it does impose. Section 668.8(a) is even further afield, as it makes no mention of state law and simply provides that "[a]n eligible program is an educational program that (1) is provided by a participating institution; and (2) satisfies the other relevant requirements contained in this section." *Id.* § 668.8(a).

The Department *has* promulgated a separate regulation which elaborates on the state authorization requirement and makes no mention of approving curriculum. *See* 34 C.F.R. § 600.9. The Department's brief omits any mention of that regulation. It provides:

(a)(1) An institution described under §§ 600.4, 600.5, and 600.6 is ***legally authorized by a State*** if the State has a process to review and appropriately act on complaints concerning the institution including enforcing applicable State laws, and the institution meets the provisions of paragraphs (a)(1)(i), (a)(1)(ii), or (b) of this section.

(i)(A) The institution is established by name as an educational institution by a State through a charter, statute, constitutional provision, or other action issued by an appropriate State agency or State entity and is authorized to operate educational programs beyond secondary education, including programs leading to a degree or certificate.

(B) The institution complies with any applicable State approval or licensure requirements, except that the State may exempt the institution from any State approval or licensure requirements based on the institution's accreditation by one or more accrediting agencies recognized by the Secretary or based upon the institution being in operation for at least 20 years.

(ii) If an institution is established by a State on the basis of an authorization to conduct business in the State or to operate as a nonprofit charitable organization, but not established by name as an educational institution under paragraph (a)(1)(i) of this section, the institution—

(A) By name, must be approved or licensed by the State to offer programs beyond secondary education, including programs leading to a degree or certificate; and

(B) May not be exempt from the State's approval or licensure requirements based on accreditation, years in operation, or other comparable exemption.

(b) An institution is considered to be legally authorized to operate educational programs beyond secondary education if it is exempt as a religious institution from State authorization under the State constitution or by State law.

*Id.* Cortiva readily meets the requirements of § 600.9. The Department concedes that TDLR licenses Cortiva's PMT Program. *See* ECF No. 44 at 4 (2d Mecca Decl. ¶ 4) ("Texas location is licensed by the Texas Department of Licensing and Regulation (TDLR)."). TDLR also provides a process to review and appropriately act on complaints concerning the institution including enforcing applicable State laws under 16 Texas Administrative Code § 117.62(c)(2), requiring schools to inform students that complaints may be made to the TDLR at a specific address, telephone number, or website. *See* TDLR Complaints and Enforcement, https://www.tdlr.texas.gov/complaints-and-enforcement/

While the Department has gotten spun up over its misunderstanding of emails exchanged with TDLR officials, the state agency's General Counsel remains steadfast that Cortiva is authorized to provide post-secondary education in massage therapy in Texas, including through its 600-hour PMT Program. *See* App. 000033–35 (Thompson Decl. Ex. A (July 30, 2024 Email from TDLR General Counsel Dough Jennings)) ("Because the Cortiva Institute is licensed by TDLR as a massage therapy school, its license is in good standing, and our agency has approved its base curriculum, the school is legally authorized to offer massage therapy education within Texas."). That is simply a separate question from whether TDLR reviews and an approves the full curriculum or only the 500-hour portion that constitutes the State's bare-minimum requirement.

## **ARGUMENT**

In response to Cortiva's filing of this lawsuit, and after this Court enjoined it from implementing or enforcing the Bare Minimum Rule, the Department developed the Bare Minimum Rule 2.0 to inflict the same consequences, for the same reasons, citing the same legal authority. This new retaliatory policy threatens to strip Cortiva and other Texas massage schools of Title IV eligibility, it does so because they offer programs beyond the 500-hour minimum that Texas requires (and thus reviews), and it invokes the state authorization requirement in 20 U.S.C. § 1001(a)(2). That Bare Minimum Rule 2.0 violates the Court's preliminary injunction, and the Court should issue an order to show cause why the Department should not be held in civil contempt. Or, if the Court concludes that the existing preliminary injunction does not cover the Bare Minimum Rule 2.0, it should issue an injunction that does. The Department should not be permitted to threaten Plaintiffs for participating in this litigation and distract from the timely resolution of this regulatory challenge based on a specious new policy position that is severely legally flawed.

## I.      **The Bare Minimum Rule 2.0 Violates the Preliminary Injunction**

The most straightforward problem with the Department's new policy position is that it violates the Court's existing preliminary injunction. As illustrated above, the new policy inflicts the same consequence (loss of Title IV eligibility), for the same reason (exceeding the 500-hour minimum that Texas law requires), citing the same authority (20 U.S.C. § 1001(a)(2)) as the enjoined Bare Minimum Rule.

The Court "may enforce its orders through civil contempt, which is intended to compel obedience to a court order." *Jostens, Inc. v. Hammons*, No. 4:20-CV-00225, 2021 WL 5578671, at *2 (E.D. Tex. Nov. 29, 2021) (citing *In re Bradley*, 588 F.3d 254, 263 (5th Cir. 2009)). "'A

11

party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order.'" *Id.* (citing *SEC v. First Fin. Grp. of Tex., Inc.*, 659 F.2d 660, 669 (5th Cir. 1981)). A finding of civil contempt is appropriate where a party shows "by clear and convincing evidence that: (1) a court order is or was in effect; (2) the order requires certain conduct; and (3) the opposing party fails to comply with the court order." *Id.* (citing *Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 47 (5th Cir. 1992)). Neither "good faith" nor "substantial compliance" is a defense. *Id.*

Here, there is no question that the Court's preliminary injunction, issued June 21, 2024, was in effect on July 26, 2024, when the Department announced the Bare Minimum Rule 2.0 policy through the filing of its motion to dismiss. And it remains in effect today. Therefore, the only question is whether the Department avoided violating the preliminary injunction by casting its new policy position as an interpretation and application of 20 U.S.C. § 1001(a)(2) wholly separate from the Bare Minimum Rule. *See* ECF No. 43 at 7. Plaintiffs respectfully submit that the Department's new policy position, developed in retaliation against Cortiva for bringing this lawsuit, constitutes a clear violation of the Court's Order against implementation or enforcement of the Bare Minimum Rule. ECF No. 30 at 15; ECF No. 39 at 1.

The Department's claimed restraint in bringing an enforcement action is irrelevant. Though the representation appears nowhere in the submission made to the Court on the Department's motion to dismiss, opposing counsel has represented by e-mail that the Department does not intend to take any enforcement action against Cortiva at least until the pending motion to dismiss is resolved. *See* Certificate of Conference; *but see* ECF No. 43 at 4 (Department Brief in Supp. of Mot. to Dismiss) ("[T]he Department has concluded that Cortiva's 600-hour massage program is ineligible for Title IV under existing law."); ECF No. 44 at 8 (2d Mecca Decl. ¶ 12) ("[T]he

Department will soon notify Cortiva, and similarly situated institutions in Texas, that massage programs in excess of 500 hours are not eligible for Title IV funding . . . and such institutions should not continue disbursing Title IV funds . . . ."). Even if the Court takes counsel's representations at face value, they do not change the calculus. First, the preliminary injunction prohibits the Department from "enforcement **and** implementation of the Bare Minimum Rule." ECF No. 30 at 30 (emphasis added). The Department may not be bold enough to enforce the Bare Minimum Rule 2.0 at this stage, but it is plainly taking steps to implement it—including by announcing the policy publicly through its legal filings with the attendant *in terrorem* effect of notifying schools that the Department thinks they may be disbursing federal funds illegally. Second, it is well established that the target of an agency's regulatory authority generally does not have to sit around and "wait for the Agency to drop the hammer." *Sackett v. EPA*, 566 U.S. 120, 127 (2012).

The Court has broad discretion to craft an appropriate remedy to coerce compliance with its order. *See generally* WRIGHT & MILLER, *Enforcement of and Collateral Attack on Injunctions*, 11A FED. PRAC. & PROC. CIV. § 2960 (3d ed.). At this stage, Plaintiffs respectfully submit that the Court should not only order the Department anew not to enforce or implement the Bare Minimum Rule 2.0 but also enjoin the Department from taking any action to deprive Cortiva of Title IV eligibility for student aid without first affirmatively seeking leave of court. This prophylactic measure will ensure that the Department continues to comply with the preliminary injunction. It will also help to ensure that this litigation does not get sidetracked by any other novel attempts by the Department to moot out Plaintiffs' claims.

II.   **Even If the Bare Minimum Rule 2.0 Did Not Violate the Existing Preliminary Injunction, the Court Should Enjoin the Department from Implementing or Enforcing It Because It Is Unlawful**

If the Court were to conclude that the existing preliminary injunction does not cover the Bare Minimum Rule 2.0, Plaintiffs respectfully ask the Court to enjoin the Department from implementing or enforcing it now. The Court has "inherent authority to protect its jurisdiction through injunction." *In re Joseph P. Conte Toyota, Inc.*, 167 F.3d 537 (5th Cir. 1998). The exercise of that authority is warranted here where, at best, the Department is deploying a strongarm tactic to end-run the scope of the preliminary injunction in an effort to moot this case. *See* ECF No. 43 at 6–10 (Department Brief in Supp. of Mot. to Dismiss). If the Court thought it necessary, Plaintiffs could amend their complaint to add a substantive count challenging the Bare Minimum Rule 2.0 as a separate agency action. But Plaintiffs submit that such an amendment would be unnecessary and would cause unnecessary delay. The Court has ample authority as things stand to enjoin the Department from enforcing or implementing this new retaliatory policy position.

A.   **Plaintiffs Would Likely Succeed in Challenging the Bare Minimum Rule 2.0**

If Plaintiffs ever need to challenge the Bare Minimum Rule 2.0 on the merits, they are likely to succeed. This reverse-engineered policy suffers multiple fatal defects separate and apart from the fact that it violates the existing preliminary injunction.

*First*, as explained above, the state authorization requirement in 20 U.S.C. § 1001(a)(2) does not mean that a state administrative agency must approve each hour of a particular program, and Cortiva readily meets the statutory standard as an institution "legally authorized within [Texas] to provide a program of education beyond secondary education," *id*. The Department acknowledges that Cortiva is legally authorized to provide a PMT Program in Texas but contends that Cortiva is authorized to provide only a *500-hour* PMT Program in Texas.  Title IV, however,

does not reference or include any program length requirements in its definition of an institution of higher education eligible for Title IV funds. *See* 20 U.S.C. § 1001(a)(2). Nor does the Department include program length requirements in its regulatory description of the state authorization requirement. *See* 34 C.F.R. § 600.9. Even if Title IV did require state authorization for program length, Texas law clearly authorizes a PMT Program longer than 500 hours to operate in Texas. Under the plain meaning of Title IV and its implementing regulations, Cortiva is an institution of higher education eligible to receive Title IV funds because Cortiva is legally authorized to provide its PMT Program in Texas.

If there were any residual doubt, TDLR confirms that a PMT Program complies with the requirements for licensure, specifically offering a 500-hour program, under Texas Occupations Code § 455.156 and 16 Texas Administrative Code § 117.58. A PMT Program that offers a program longer than 500 hours is still a legally *authorized* program in Texas, at least so as long as the school furnishes to students the form required under Texas Occupations Code § 455.203(c) and 16 Texas Administrative Code § 117.62(c) and obtains a signed form from the students. Such a form would not be necessary or required if a PMT Program longer than 500 hours were not legally authorized to operate in Texas. The Department cites no legal authority—just the declaration of its own official, prepared for purposes of this litigation—for the proposition that these sorts of state-law requirements are incorporated into § 1001(a)(2). *Cf. Kisor v. Wilkie*, 588 U.S. 558, 579 (2019) ("[A] court should decline to defer to a merely convenient litigating position or *post hoc* rationalization advanced to defend past agency action against attack," and "a court may not defer to a new interpretation, whether or not introduced in litigation, that creates unfair surprise

15

to regulated parties.") (cleaned up).[5] But even if they were, Cortiva and its PMT Program would satisfy them.

**Second**, if the Department really wanted to enforce its novel interpretation, it would need to go through negotiated rulemaking. The Administrative Procedure Act generally requires notice-and-comment rulemaking before an agency may issue "legislative rules"—*i.e.*, rules that "bind private parties." *Kisor*, 588 U.S. at 583 (quotation omitted). There is room for an agency to adopt an "interpretive" rule without notice-and-comment rulemaking, *see generally Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92 (2015), but those rules "are not supposed to 'have the force and effect of law,'" *Kisor*, 588 U.S. at 583 (quoting *Perez*, 575 U.S. at 103). The Department's entire argument here is premised on the notion that its new interpretation applies to and binds Cortiva, such that Cortiva lacks standing. *See* ECF No. 43 at 6–9. But the Department cannot make that argument where, as here, its new interpretation is not reflected in a legislative rule that has gone through notice-and-comment rulemaking. And given the particularities of the Higher Education Act, the Department would need to put its new policy position through *negotiated* rulemaking in particular. *See* 20 U.S.C. § 1098a(b)(1).

**Third**, the Department's stated decision to apply this interpretation to Cortiva and other massage programs in Texas, but not to other schools, is quintessentially arbitrary and capricious. The Department has announced that it will take action against Cortiva and other massage therapy schools in Texas, *see* ECF No. 44 at 8 (2d Mecca Decl. ¶ 12), it apparently has no plans to apply its novel interpretation of § 1001(a)(2) consistently to other States or other types of programs, including within Texas. Taken to its logical conclusion, this rule would threaten the eligibility of

---

[5] *See also Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2263 (2024) ("When the best reading of a statute is that it delegates discretionary authority to an agency, the role of the reviewing court under the [Administrative Procedure Act] is, as always, to independently interpret the statute and effectuate the will of Congress subject to constitutional limits.").

all manner of higher-education programs, including programs at non-profit four-year colleges. But the Department is arbitrarily limiting its focus to Cortiva and similarly situated Texas schools—transparently because Cortiva dared to bring this case challenging the Bare Minimum Rule. Moreover, because the Department hastily adopted this policy in reaction to this lawsuit, it has wholly failed to grapple with important aspects of the issue. *See Dep't of Com. v. New York*, 588 U.S. 752, 783-84 (2019); *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins.*, 43 U.S. 29, 43 (1983) ("[T]he agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made . . . [A]n agency rule would be arbitrary and capricious if the agency…entirely failed to consider an important aspect of the problem."); *Texas v. Biden*, 646 F. Supp. 3d 753, 777 (N.D. Tex. 2022) (A federal agency's "decisionmaking based on 'policy preferences' cannot replace required reasoned decisionmaking").

In particular, the Department cannot sensibly explain how Texas law permits Cortiva, a licensed massage therapy school, to operate its 600-hour PMT Program, *see* App. 000033–35 (Thompson Decl. Ex. A (July 30, 2024 Email from TDLR General Counsel Doug Jennings)), and yet the program is not "authorized" within the meaning of federal law.

***Finally***, the Department's new retaliatory action against Cortiva, in response to its filing of this regulatory litigation, violates Cortiva's rights under the First Amendment to the United States Constitution.

The First Amendment "'prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)).  Filing lawsuits and criticizing public officials constitute protected speech.  *Lozman v. City of Riviera Beach*, 585 U.S. 87, 101 (2018).

"[W]hen nonretaliatory grounds are in fact insufficient to provoke the adverse consequences, . . . retaliation is subject to recovery as the but-for cause of official action offending the Constitution." *Hartman*, 547 U.S. at 256.  "To prevail on such a claim, a plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'"  *Nieves*, 587 U.S. at 398.  The issue is whether the Department would reach the same decision absent Plaintiff Cortiva's protected speech in filing this lawsuit.  *Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274, 283-84 (1977).

The Department admits that it reached the decision to cut off Plaintiff Cortiva's federal funds under Title IV only as a result of the instant lawsuit.  Shari Mecca, Case Manager for Federal Student Aid's Multi-Regional and Foreign Schools Participation Division, clearly states in her declaration: "On June 6, 2024, after the filing of the Complaint in this case, I contacted TDLR to see if Cortiva had submitted an application to reduce the number of hours in its Massage Program from 600 to 500, the minimum required for licensure, based on the Department's revised program length provision, 34 C.F.R. § 668.448(b)(26)(ii)(A), that was set to go into effect on July 1, 2024." ECF No. 44 at 4 (2d Mecca Decl. ¶ 8).  As a result of this lawsuit, the Department contacted the TDLR to learn whether Cortiva was seeking to comply with the Bare Minimum Rule that is now preliminarily enjoined nationwide.

The Department further acknowledges that the TDLR allegedly notified them that it "'will not and cannot approve any massage, barber, or cosmetology course for more than the required hours of education for licensure.'"  ECF No. 43 at 7 (quoting ECF No. 44 (2d Mecca Decl. ¶ 11)). Nonetheless, the Department is scrutinizing only massage therapy programs in Texas and has turned a blind eye to cosmetology and barber programs.  ECF No. 43 at 5 (stating Government Defendants' intentions to conduct "a statewide review because of the likelihood that other Texas

18

massage programs" may be ineligible for Title IV funds). This focus on Cortiva's massage therapy program which is at issue in the instant lawsuit and on the massage therapy programs of Cortiva's peer institutions in Texas is clearly retaliatory.

As a result of this lawsuit, the Department has misconstrued Texas law to prohibit a massage therapy program longer than 500 hours and concluded such a program is not legally authorized in Texas, even though the TDLR continues to allow Cortiva's PMT Program to operate in Texas. The Department acknowledges that it will cut off Cortiva's federal funds under Title IV for its massage therapy program and will review other massage therapy programs in excess of 500 hours in Texas to determine whether their federal funds should be cut off too. The Department also insinuates—but does not directly say—that it may fine and seek to recoup funds from Plaintiff Cortiva and similarly situated massage therapy programs in Texas for alleged operating a massage therapy program that is not legally authorized in Texas. ECF No. 44 at 7 (2d Mecca Decl. ¶ 12); ECF No. 44 at 39 (July 19, 2024 Email from Martina Fernandez-Rosario, FSA to Lorrain Sroufe, TDLR). The Department does not even try to hide its retaliatory motive to destroy standing for Cortiva's massage therapy program as well as other similarly situated massage therapy programs in Texas and to chill their First Amendment rights to challenge the Bare Minimum Rule.

*      *      *

Any one of these infirmities is a sufficient basis to enjoin the Department from enforcing or implementing the Bare Minimum Rule 2.0.

## B.    Absent an Injunction, Plaintiffs Will Suffer Irreparable Harm

Plaintiffs are entitled to injunctive relief because they will suffer irreparable harm without it. Indeed, by the Department's own telling, this Bare Minimum Rule 2.0 will cause Cortiva to lose access to Title IV funds for its PMT Program in Arlington, Texas, or at a minimum to incur

unrecoverable compliance costs to meet the Department's newly announced standard. *See* ECF No. 44 at 8–9 (2d Mecca Decl. ¶ 12). That is the same irreparable injury that this Court relied upon in issuing a preliminary injunction against the Bare Minimum Rule. *See* ECF No. 30 at 9–13 (Memorandum Opinion & Order).

Moreover, while the Court expressed some skepticism that the Bare Minimum Rule itself would "threaten[] the very existence of [Cortiva's] business," *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985), the Department's latest retaliatory threat raises the stakes. Cortiva will likely need to either discontinue its PMT Program, which is its largest program, or to shut down its doors in Arlington altogether if the Department cuts off all funds under Title IV for the PMT Program. Additionally, Plaintiff Coalition for Career Schools includes at least one other massage school in Texas that likely will be impacted by the Government Defendants' "review" of massage therapy programs in Texas.

### III.  The Balance of the Equities and Public Interest Favor Entering A Preliminary Injunction or Temporary Restraining Order

The last two elements of the injunctive-relief analysis—which "merge when the Government is the opposing party," *Nken v. Holder*, 556 U.S. 418, 435 (2009)—also favor entering a preliminary injunction or temporary restraining order.

The Court must determine "the relative harm to both parties if the injunction is granted or denied." *Def. Distrib. v. U.S. Dep't of State*, 838 F.3d 451, 459 (2016). Here, Cortiva will bear the brunt of the relative harm because the Department threatens to withhold its Title IV funds as a result of filing this lawsuit. The Department has correctly recognized that Cortiva and other Texas schools are eligible for Title IV funding for years. Cortiva has operated the same PMT Program since at least 2019 and never received any pushback from the Department that its PMT Program did not comply with federal or state law. Yet, after filing this lawsuit, the Department discerned a

20

new interpretation to its prior regulations that would result in the same harm as that which Cortiva complained of. In comparison, the only harm to the Department would be to no longer fund Cortiva's PMT Program, something this Court has held is not enough to allow the Department to enforce an arbitrary and capricious rule. *See* ECF No. 30 at 14 (noting the "disparity in the[] alternative outcomes" for the Department and Plaintiffs favored entering an injunction).

This Court has recognized that the key inquiry of this analysis is what will result in the least harm and preserve the status quo. *See Chamber of Com. of United States v. Consumer Fin. Prot. Bureau*, No. 4:24-CV-00213-P, 2024 WL 2310515, at *3 (N.D. Tex. May 10, 2024) ("The Fifth Circuit usually goes with the 'do-no-harm' approach, so the Court applies it here. Again, as the Final Rule has not yet gone into effect, the status quo would necessarily be preserved by granting injunctive relief." (citation omitted)); *see also Morgan v. Fletcher*, 518 F.2d 236, 239 (5th Cir. 1975) ("The function of a preliminary injunction is merely to preserve the status quo until the merits of a case can be adjudicated . . . ."). Further, "it is always in the public interest" to stop enforcement of unconstitutional or invalid laws. *See Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 458 n.9 (5th Cir. 2014). Applying these principles, the Court should find that the interest factors favor issuing a preliminary injunction or temporary restraining order preventing the Department from withholding Title IV funds from Cortiva and other Texas-based proprietary schools covered by the 150% Rule, pending final resolution of Plaintiffs' claims.

## CONCLUSION

The Court should promptly enter an order for the Department to show cause why it should not be held in civil contempt. In the alternative, the Court should further enjoin the Department from taking *any* action to deprive Cortiva of Title IV eligibility for student aid without first affirmatively seeking leave of court.

Dated: August 1, 2024                Respectfully submitted,

                                     */s/ Farnaz Farkish Thompson*
                                     Melissa M. Hensley (Texas Bar No. 00792578)
                                     Cory R. Ford (Texas Bar No. 24121098)
                                     Michael C. Elliott (Texas Bar No. 24086913)
                                     MᴄGᴜɪʀᴇWᴏᴏᴅѕ LLP
                                     2601 Olive Street, Suite 2100
                                     Dallas, TX 75201
                                     Telephone:  (469) 372-3926
                                     Facsimile:  (214) 273-7475
                                     mhensley@mcguirewoods.com
                                     cford@mcguirewoods.com
                                     melliott@mcguirewoods.com

                                     Farnaz Farkish Thompson (D.C. Bar No. 1659285) (*pro hac vice*)
                                     John S. Moran (D.C. Bar No. 1014598) (*pro hac vice*)
                                     Jonathan Helwink (D.C. Bar No. 1754411) (*pro hac vice*)
                                     Stephen Tagert (Virginia Bar No. 99641) (*pro hac vice*)
                                     MᴄGᴜɪʀᴇWᴏᴏᴅѕ LLP
                                     888 16th Street NW, Suite 500
                                     Washington, DC 20006
                                     Telephone:  (202) 828-2817
                                     Facsimile:  (202) 828-3327
                                     fthompson@mcguirewoods.com
                                     jmoran@mcguirewoods.com
                                     jhelwink@mcguirewoods.com
                                     stagert@mcguirewoods.com

                                     *Counsel for Plaintiffs*

22

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 1, 2024, I caused the foregoing to be filed with the Clerk of the U.S. District Court for the Northern District of Texas using the Court's CM/ECF system, which will electronically serve copies of the same on counsel for all parties.

*/s/ Farnaz Farkish Thompson*
Farnaz Farkish Thompson
