IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| 360 DEGREE EDUCATION, LLC *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF EDUCATION, *et al.*, <br><br> *Defendants*. | No. 4:24-cv-00508-P |

**DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ............................................................................................................................. 2

    I.     Plaintiffs' Twin Concessions that (1) TDLR Has Not Authorized Cortiva's 600-Hour Program and (2) Title IV Requires Each Program To Be Legally Authorized Defeat Cortiva's Standing ................................................................... 2

    II.    CCS's Belated Revision of Its Stated Purpose Does Not Confer Standing ........... 7

    III.   Cortiva's Current Title IV Ineligibility Means Venue Is Improper ....................... 8

CONCLUSION ........................................................................................................................ 10

# **TABLE OF AUTHORITIES**

**Cases**

*Arkansas v. Wilmington Tr. Nat'l Ass'n*,
    No. 3:18-CV-1481-L, 2020 WL 1249570 (N.D. Tex. Mar. 16, 2020) .............................. 1

*Career Colleges & Sch. of Texas* ("*CCST*") *v. U.S. Dep't of Educ.*,
    No. 4:23-CV-0206-P, 2023 WL 2975164 (N.D. Tex. Apr. 17, 2023) .............................. 9

*CCST v. U.S. Dep't of Educ.,* 98 F.4th 220 (5th Cir. 2024) ...................................................... 7, 8

*FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024) ............................................. 7-8

*Grupo Dataflux v. Atlas Glob. Grp., L.P.,* 541 U.S. 567, 570 (2004) ........................................... 8

*Guarantee Co. v. Hous. & Land Dev. Corp.,* No. 4:23-CV-01456, 2024 WL 3431339
    (S.D. Tex. May 31, 2024), *rpt. & rec. adopted* 2024 WL 3581978
    (S.D. Tex. July 30, 2024) .................................................................................................. 1

*Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673 (E.D. Tex. 2001) .................................................. 10

*In re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. 2008) ..................................................... 10

*Louisiana v. Haaland*, 86 F.4th 663 (5th Cir. 2023) ............................................................... 2, 8

*New Leaf Serv. Conts., Inc. v. Gerhard's Inc.,* No. 3:22-CV-1145-G, 2023 WL 2938241
    (N.D. Tex. Apr. 13, 2023), *appeal dismissed,* No. 23-10786, 2023 WL 9423931
    (5th Cir. Sept. 25, 2023) ............................................................................................... 4, 8

**Statutes**

28 U.S.C. § 1406 ........................................................................................................................ 10

TEX. OCC. CODE ANN. § 455.0511 ............................................................................................. 7

TEX. OCC. CODE ANN. § 455.156 ................................................................................................ 7

TEX. OCC. CODE ANN. § 455.205 ................................................................................................ 7

**Regulations**

34 C.F.R. § 600.2 ................................................................................................................ 2, 5, 6

34 C.F.R. § 600.40 ............................................................................................................... 5

34 C.F.R. § 668.8 ............................................................................................................ 2, 5

34 C.F.R. § 668.14 .......................................................................................................... 2, 6

16 TEX. ADMIN. CODE § 117.62 ...................................................................................... 2, 7

**Administrative Decisions**

*Matter of Academy for Social Action*, 84 Ed. Law. Rep. 1207, 1993 WL 546806
    (Dep't of Educ. O.H.A. No. 91-6-SP Mar. 9, 1993) ............................................. 6

*Matter of Molloy Coll.,* 111 Ed. Law Rep. 1430, 1430, 1995 WL 931577
    (Dep't of Educ. O.H.A. No. 94-63-SP Mar. 1, 1995) ..................................... 2, 5-6

# **INTRODUCTION**

Nothing in Plaintiffs' opposition brief helps them avoid dismissal for lack of standing and improper venue. Most fundamentally, Plaintiffs finally concede—refuting their own prior sworn statement to the contrary that they relied on for their preliminary injunction—that the Texas Department of Licensing and Regulation ("TDLR") has not approved or legally authorized plaintiff Cortiva's current 600-hour massage program. Rather, TDLR has only approved a 500-hour program. As established in Plaintiffs' filing, TDLR has confirmed to them directly that this is so, and that it provides no oversight whatsoever for hours beyond the 500 that it approves. Plaintiffs also concede, through the testimony of their own declarant, that Title IV requires each program of a specific length to be legally authorized by the state. The inevitable conclusion is that Cortiva's 600-hour massage program is not Title IV eligible—and under Title IV law, it is ineligible now. Cortiva thus faces no certainly impending injury from the separate regulation challenged in this case and would get no redress from the Court's favorable decision. Cortiva's lack of standing alone requires dismissal because it also means that organizational plaintiff CCS has identified no member with standing, and no party in this Division will be affected by the challenged provision, so venue is improper. Plaintiffs strain mightily to overcome the fact that Cortiva's 600-hour program is not legally authorized, but their efforts fail.[1]

---

[1] Concurrently with their opposition brief, Plaintiffs filed a Motion for Order to Show Cause, or in the Alternative, for a Further Preliminary Injunction [ECF 49], and their opposition to Defendants' Motion to Dismiss purports to incorporate explanations provided in that separate filing. *E.g.*, Pl. Opp. [ECF 47] at 1, 4, 5-6, 8. Such conclusory references to arguments made in an entirely separate motion inappropriately seek to circumvent established page limits and are insufficient to preserve any defense; such arguments should be deemed waived and should not be considered in connection with Defendants' Motion. *Arkansas v. Wilmington Tr. Nat'l Ass'n*, No. 3:18-CV-1481-L, 2020 WL 1249570, at *5 (N.D. Tex. Mar. 16, 2020) ("Failure of a party to respond to arguments raised in a motion to dismiss constitutes waiver or abandonment of that issue at the district court level."); *Guarantee Co. v. Hous. & Land Dev. Corp.,* No. 4:23-CV-01456, 2024 WL 3431339, at *7 (S.D. Tex. May 31, 2024), *rpt. & rec. adopted* 2024 WL 3581978 (S.D. Tex. July 30, 2024) (inadequately briefed counterarguments were waived). Moreover, all arguments in Plaintiffs'

## ARGUMENT

I. **Plaintiffs' Twin Concessions that (1) TDLR Has Not Authorized Cortiva's 600-Hour Program and (2) Title IV Requires Each Program To Be Legally Authorized Defeat Cortiva's Standing**

As explained in Defendants' opening brief, Cortiva lacks standing because, even if Plaintiffs were to prevail on the merits of their challenge to the revised 34 C.F.R. § 668.14(26)(b)(ii)(A), Cortiva's massage program would receive no redress when it is already ineligible for Title IV for an independent reason—because it fails to satisfy the Title IV requirement that it be "legally authorized." *See* 34 C.F.R. §§ 600.2 ("educational program" must be "legally authorized"); 668.8(a) ("eligible" program is an "educational program"). That requirement is uncontroversial and longstanding. *E.g.*, *Matter of Molloy Coll.,* 111 Ed. Law Rep. 1430, 1430, 1995 WL 931577 (Dep't of Educ. O.H.A. No. 94-63-SP Mar. 1, 1995) ("[[I]n order for students in an educational program to receive Title IV funds, not only must the *school* be legally authorized by the state, but the *educational program* must also be legally authorized by that state. 34 C.F.R. § 600.2 defines an 'educational program' as '[a] legally authorized postsecondary program . . . .'"). As the party invoking this Court's jurisdiction and seeking injunctive relief, Plaintiffs bear the burden to show a "certainly impending" future injury that is "likely" to "be redressed by a favorable decision." *Louisiana v. Haaland*, 86 F.4th 663, 666 (5th Cir. 2023)

---

Motion are meritless. Defendants have not violated the existing injunction, which barred implementation or enforcement of 34 C.F.R. § 668.14(26)(ii)(A) (the "Revised Provision," the only regulation at issue in this case), not other existing rules. Nor have Defendants engaged in unlawful retaliation simply by filing a Motion to Dismiss arguing that this Court lacks subject matter jurisdiction and venue because Cortiva's 600-hour massage program is already ineligible for Title IV. Defendants' arguments are based on the application of longstanding Title IV law to the new information that TDLR provided—which Plaintiffs now concede—about TDLR's practices of approving only 500-hour massage programs and failing to regulate any additional course hours, which it considers "strictly voluntary." 16 TEX. ADMIN. CODE § 117.62(c)(4). The Department has taken no enforcement action against Cortiva, but if it were to do so, Cortiva would have ample opportunity to raise any defenses during the applicable administrative process and could seek judicial review thereafter, as Plaintiffs concede in their opposition brief. Pl. Opp. at 6.

2

(internal quotation omitted). They cannot meet that burden when Cortiva's massage program is already ineligible for Title IV.

Significantly, rather than establishing Cortiva's standing, Plaintiffs' opposition concedes the key facts and law that show Cortiva's massage program is already Title IV ineligible:

***First***, Plaintiffs now concede that TDLR has only approved a 500-hour massage program and has not approved Cortiva's 600-hour program. They do so in the face of incontrovertible evidence provided by Defendants, Mecca Decl. attach. A [ECF 23-2, at 5]; Def. App. [ECF 44] 4-7, 28-35, and only after Cortiva's declarant Nicole Vitez swore in support of Plaintiffs' TRO motion that "[s]ince at least 2019, and subsequently in 2021 and 2023 thereafter, Cortiva has been approved by the TDLR to offer a massage therapy program in excess of 500 hours." Vitez Decl. [ECF 26-2] ¶ 7.[2] Now, Plaintiffs finally provide a statement from TDLR's General Counsel contradicting that testimony and confirming what Defendants have already explained—that "TDLR approved the Cortiva Institute's 500-hour massage therapy course," that TDLR "does not 'approve' or 'authorize' a school to offer beyond 500 hours of massage instruction," and that TDLR "will not consider or opine upon any material beyond the minimum [500 hour] requirements" for a massage therapy license in Texas. Pl. App. [ECF 48] 34-35.

***Second***, Plaintiffs also concede that Title IV's requirement that each program be "legally authorized" operates exactly as the Department has described. They submit the declaration of

---

[2] By the time Vitez submitted her testimony, Defendants had already provided conclusive evidence that, in fact, TDLR had approved only a 500-hour program. *See* Mecca Decl. attach.A [ECF 23-2, at 5] (TDLR's Certificate of Approval for Cortiva, identifying approved course as "Massage Therapy 500 Hour Course"). Soon after that, Plaintiffs' counsel contacted TDLR directly, yet their written correspondence submitted to the Court carefully omits mention of Cortiva's 500-hour approval. Thompson Decl. ex.A-B [ECF 26-1, at 4-7]. Taken as a whole, Plaintiffs' TRO Reply submission suggests that Plaintiffs were well aware that TDLR had not approved Cortiva's 600-hour massage program, but that they sought to obscure that fact by filing numerous confusing and irrelevant documents. *See* Def. Surreply [ECF 29] at 2-7 (describing Plaintiffs' various misleading TRO Reply exhibits); Second Mecca Decl. ¶¶ 9-10 [Def. App. 5-6].

3

former Department political appointee Diane Jones, who states that, "[u]nder the HEA and related regulations, the Department requires that a program be legally authorized by a state." Jones Decl. ¶ 17 [Pl. App. 21]. She further asserts that "the state . . . review[s] program content and length as part of their program approval and review process, and programs of different length require separate review and approval." *Id.* Jones thus confirms exactly what the Department has explained—that "[e]ach program that a participating postsecondary institution provides must also be legally authorized by the state . . . . Where states approve programs of a specific number of clock or credit hours, the Department considers the state's authorization to cover only programs of that length." Second Mecca Decl. ¶ 5 [Def. App. 3].

These two concessions leave no doubt that Cortiva's 600-hour massage program is not eligible for Title IV. Yet Plaintiffs run through a series of misguided arguments to the contrary. They first try to rely on the Court's preliminary injunction order. Pl. Opp. at 5. That order concluded Plaintiffs satisfied the irreparable harm prong for a preliminary injunction, but it did so before Defendants presented the jurisdictional arguments now before the Court in Defendants' Motion to Dismiss. Plaintiffs now bear the burden to establish their standing. *New Leaf Serv. Conts., Inc. v. Gerhard's Inc.,* No. 3:22-CV-1145-G, 2023 WL 2938241, at *2 (N.D. Tex. Apr. 13, 2023). But Cortiva can show no certainly impending injury fairly traceable to the Revised Provision and likely to be redressed by a favorable decision in this case when its massage therapy program is already ineligible for Title IV. Because Cortiva's program is already Title IV ineligible, setting aside the Revised Provision under the APA would be unlikely to affect Cortiva at all.

Plaintiffs also argue that Cortiva's 600-hour massage program remains Title IV eligible until the Department completes an enforcement action. But that is not how Title IV works. It is true that the Department cannot stop Cortiva from improperly disbursing Title IV funds until it

4

proceeds through the applicable administrative process, and that the Department has agreed to abstain from initiating such enforcement action against Cortiva at least until the Court rules on Defendants' Motion to Dismiss. *See* Pl. Show-Cause Mot. Certificate of Conference [ECF 49, at 4]. Under Title IV, however, schools have an affirmative obligation to notify the Secretary when they cease to satisfy an eligibility requirement, 34 C.F.R. § 600.40(d)(1), and if the Secretary has designated a school's educational program as Title IV eligible "on the basis of inaccurate information or documentation, the Secretary's designation is void from the date the Secretary made the designation, and the . . . [educational] program . . . never qualified as eligible." 34 C.F.R. § 600.40(c)(1). Here, the Secretary's prior designation of Cortiva's 600-hour program as eligible was based on inaccurate information and documentation, which had failed to reveal that TDLR had only approved a 500-hour massage program, not Cortiva's 600-hour program. Second Mecca Decl. ¶¶ 6-7 [Def. App. 4]. Thus, it is not simply that the Department "could potentially . . . strip Cortiva['s massage program] of eligibility . . . in the future," Pl. Opp. at 5. Cortiva's massage program is ineligible for Title IV now.

Plaintiffs otherwise vaguely argue (by generally referencing their separate show-cause motion) that the Department's conclusion that Cortiva's 600-hour program is Title IV ineligible is "an improper repackaging" of the Revised Provision that Plaintiffs challenge in this case. Pl. Opp. at 5. Plaintiffs further argue that the Department is applying a "new" "retaliatory position" that "has not gone through notice-and-comment rulemaking." *Id.* at 7. Neither assertion is accurate.

In fact, as explained above and in Defendants' opening brief, and as conceded by Plaintiffs' declarant Jones, existing Title IV law requires programs to be "legally authorized" by the state. 34 C.F.R. §§ 600.2 (defining "educational program" as one that is "legally authorized"), 668.8(a) ("eligible" program is an "educational program"); *Matter of Molloy Coll.,* 111 Ed. Law Rep. at

5

1430; Second Mecca Decl. ¶¶ 5, 12 & ex. D [Def. App. 3, 7, 38]; Jones Decl. ¶ 17 [Pl. App. 21]. The other discussion by Plaintiffs' declarants has no bearing on the Department's determination here. The current Title IV ineligibility of Cortiva's massage program has nothing to do with the 150% rule (the rule amended by the Revised Provision), which Jones and Rubenstein discuss at length for no apparent reason.[3] *See* Rubinstein Decl. ¶ 4 [Pl. App. 26] (ignoring the definition of "educational program" in 34 C.F.R. § 600.2, as well as Jones' concession described above); Jones Decl. ¶¶ 18-19 [Pl. App. 21] (discussing the 150% rule, even after conceding that the separate "legally authorized" requirement operates exactly as the Department has described). As explained, there is nothing new, retaliatory, or even controversial about the Department's position, which simply applies Title IV's longstanding "legally authorized" requirement—which is entirely unrelated to the Revised Provision—to Cortiva's specific circumstances, in the same manner that Plaintiffs' declarant Jones concedes it has always done.

The Department's longstanding, consistent application of the "legally authorized" requirement is further confirmed by a decision by the Department's Office of Hearings and Appeals over three decades ago, in 1993. *See Matter of Academy for Social Action*, 84 Ed. Law. Rep. 1207, 1993 WL 546806 (Dep't of Educ. O.H.A. No. 91-6-SP Mar. 9, 1993). The program at issue in that case, similar to Cortiva's, consisted of a certain number of mandatory course hours that were legally authorized by the State of New York, plus an additional number of "elective"

---

[3] Jones and Rubenstein both claim, with no support whatsoever, that the Department has applied the current 150% rule in 34 C.F.R. § 668.14(26)(i)(A) as a "safe harbor" rather than a strict maximum. That is false but it is also irrelevant. Cortiva's 600-hour program does not violate the 150% rule either way. Rather, Cortiva's 600-hour program is Title IV ineligible because it is not "legally authorized" by the state. The Jones declaration, except for the concession in ¶ 17, and the Rubenstein declaration in its entirety should be stricken because they provide nothing helpful and do not satisfy the requirements for expert testimony. FED. R. EVID. 701(b), 702. Neither demonstrates any knowledge of Texas law or TDLR practice. They both appear to improperly conflate the "legally authorized" requirement with the 150% rule and focus almost exclusively on the latter, which they mischaracterize but which, as explained, is irrelevant to Defendants' Motion.

6

course hours that, under State law, were not specifically approved. *Id.* at 1209. The Department concluded that, because "the elective courses were not approved" by the State, those hours were not legally authorized and did not count for purposes of Title IV eligibility. *Id.*

The Department's reasoning in that case applies equally here. Texas law requires TDLR to "regulate the number of school hours and the content of the coursework provided by a massage school," TEX. OCC. CODE ANN. § 455.0511(b)(2), and prohibits massage schools from requiring more than 500 hours, *id.* §§ 455.156(b)(1), .205(b). TDLR thus only approves a massage program's required 500-hour curriculum, Second Mecca Decl. ¶¶ 8, 11-12 & exs. B, C [Def. App. 4-7, 29-31, 34], and any additional hours the program provides are not regulated by TDLR in any way but instead are "strictly voluntary," or elective. 16 TEX. ADMIN. CODE § 117.62(c)(4); Pl. App. 35 (TDLR confirming that it only "approves" or "legally authorizes" a 500-hour program while it does not "prohibit" a 600-hour program, and that the additional 100 hours are unregulated, unapproved, and "strictly voluntary"). As such, those hours are not "legally authorized" for purposes of Title IV.

In the end, Plaintiffs fail to meet their burden to show that Cortiva's 600-hour massage program is currently Title IV eligible, so they fail to establish Cortiva's standing.

## II.     CCS's Belated Revision of Its Stated Purpose Does Not Confer Standing

As explained in Defendants' opening brief, CCS stands in stark contrast to the typical organization seeking to rely on associational standing because it does not assert the interests of a preexisting membership based on an established mission. Instead, it was created solely for the purpose of litigating this case, to allow Plaintiffs to circumvent established jurisdictional and equitable principles, so its interests are not "germane" within the meaning of standing doctrine. *See* Def. Mem. at 11-12; *CCST v. U.S. Dep't of Educ.,* 98 F.4th 220, 233–34 (5th Cir. 2024); *FDA*

7

*v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 403 (2024) (Thomas, J., concurring). Moreover, of the two CCS members that Plaintiffs identify, Cortiva lacks standing for the reasons already explained, and Bellus Academy asserted only *past* compliance costs, which are not redressable when no damages are available here. *See* Def. Mem. at 11 & n.4.

Plaintiffs continue to rely on the Fifth Circuit's holding that "future or continuing" compliance costs qualify as irreparable harm, *CCST*, 98 F.4th at 236, but Plaintiffs concede that Bellus' alleged costs are already in the past, Pl. Opp. at 9 (Bellus "has suffered" an injury due to compliance costs); 11 (CCS members "have expended" time); *see also* Lynch Decl. [ECF 5-2] ¶ 20 (describing *past* compliance efforts). Plaintiffs fail to identify a "certainly impending" injury of any CCS member. *Louisiana*, 86 F.4th at 666.[4]

Plaintiffs also argue that because CCS revised the stated purpose in its Charter on June 24, 2024—nearly two months after Plaintiffs filed suit and three days after Defendants filed their Surreply—it has cured any standing problem. However, standing must exist at the time suit is filed. *Grupo Dataflux v. Atlas Glob. Grp., L.P.,* 541 U.S. 567, 570 (2004). Moreover, merely calling its purpose to file suit in this case a "social welfare purpose," Pl. App. 37, when the only identified CCS members are two for-profit schools that wish to maximize their own access to students' federally funded tuition money, changes nothing.

### III. Cortiva's Current Title IV Ineligibility Means Venue Is Improper

As explained in Defendants' opening brief, Cortiva's lack of standing means venue that depends on Cortiva is improper. Def. Mem. at 15-16. Moreover, because Cortiva's massage

---

[4] Plaintiffs again cite the Court's Order of June 21, 2024, but that Order questioned Plaintiffs' predicted dire consequences and then appeared simply to assume that the Revised Provision could lead to reduced enrollments or "trimming some fat." Order of June 21, 2024, at 12. Here, Plaintiffs bear the burden to establish standing, *New Leaf Serv. Conts., Inc.*, 2023 WL 2938241, at *2, and they have proven no certainly impending concrete, nonspeculative injury-in-fact.

8

program is already ineligible for Title IV, Cortiva does not face any prospect of being subject to the Revised Provision that Plaintiffs challenge in this case, which would impose a further condition on programs seeking to maintain Title IV eligibility. Even if Cortiva were to offer a "legally authorized" 500-hour program consistent with TDLR's approval, the Revised Provision would have no impact because it would not require any change in program length for Cortiva. Thus, venue in this Division is improper because no plaintiff in this case is both "(1) present in the division and (2) subject to the burden imposed by the rule," *CCST v. U.S. Dep't of Educ.*, No. 4:23-CV-0206-P, 2023 WL 2975164, at *2 (N.D. Tex. Apr. 17, 2023). *See* Def. Mem. at 15-18.

Plaintiffs' concessions establish the lack of proper venue here. They do not deny that, if Cortiva lacks standing, venue is improper. Pl. Opp. at 13. Plaintiffs also do not contest that Cortiva's principal place of business is in Florida. *See* Def. Mem. at 15-16. They rely solely on the notion that Cortiva's 600-hour massage program is Title IV eligible and would therefore be burdened by operation of the Revised Provision. But as explained above, by Plaintiffs' own admissions, TDLR has only approved a 500-hour massage program, Pl. App. 34-35, and the Department bases its "legally authorized" determination on the state licensing agency's approval. Jones Decl. ¶ 17 [Pl. App. 21] (Title IV requires each "program" to be "legally authorized" by the state, and programs of different lengths require separate state approval). Cortiva's 600-hour program is not "legally authorized" for purposes of Title IV. Accordingly, Cortiva's operation of a massage program in this Division—the only basis for venue that Plaintiffs cite, *see* Pl. Opp. at 13-14—does not suffice.[5] This case therefore should be dismissed based on improper venue. *See*

---

[5] Plaintiffs make much of the fact that Defendants have referenced TDLR's lack of approval of Cortiva's 600-hour program when explaining why that program is not Title IV eligible and why Cortiva thus lacks standing. Pl. Opp. at 12, 17. Of course, the fact that Title IV eligibility depends on a state's legal authorization does not establish proper venue in a state that hasn't authorized the relevant program. If anything, Plaintiffs' concessions demonstrate that no massage program in

9

28 U.S.C. § 1406(a).

Moreover, even if Cortiva's lack of standing were not enough to show improper venue, the Court would be well within its discretion to transfer this case to the District Court for the District of Columbia, where a similar case, *AMTA v. U.S. Dep't of Educ.,* No. 1:24-cv-1670 (D.D.C. filed June 7, 2024), is currently pending. If this case were transferred, there would be no need to address the interplay between Title IV "legally authorized" requirements and TDLR's implementation of Texas law, which together defeat Cortiva's standing and make venue uniquely ill-suited in this Division.[6] D.C. is clearly a more convenient forum for all involved under the circumstances here. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 313 (5th Cir. 2008); *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 677 (E.D. Tex. 2001) ("Where the plaintiff's chosen forum has no factual nexus to the case, that choice carries little significance if other factors weigh in favor of transfer."). Indeed, Plaintiffs have already unduly taxed this Court's very busy docket by continuing to try to circumvent the conclusion—even as they now concede the facts that make it inevitable—that Cortiva's 600-hour massage program is not Title IV eligible because it has not been legally authorized by TDLR.

## **CONCLUSION**

For the foregoing reasons and those set forth in Defendants' opening brief, this case should be dismissed or transferred to the District of Columbia.

DATED: August 5, 2024                                  Respectfully submitted,

---

Texas has standing to challenge the Revised Provision. Any such challenge should be litigated in a forum where at least one party resides or faces some impact from the litigation's outcome.

[6] Plaintiffs suggest that a D.D.C. court would still have to resolve Cortiva's standing and that such "localized interests" should instead be resolved in this Division. Pl. Opp. at 16. However, Cortiva's parent company has other programs in other states. Second Mecca Decl. ¶ 2 [Def. App. 2]. The fact that Cortiva chose to bring suit here solely as a Texas program reflects Plaintiffs' forum-shopping efforts and does not suggest this forum is more convenient than any other.

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Director, Federal Programs Branch

<u>/s/ Kathryn L. Wyer</u>
KATHRYN L. WYER (DC Bar #90023642)
U.S. Department of Justice, Civil Division
1100 L Street, N.W., Room 12014
Tel. (202) 616-8475
kathryn.wyer@usdoj.gov
*Counsel for Defendants*

11