## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| 360 DEGREE EDUCATION, LLC *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF EDUCATION, *et al.*, <br><br> *Defendants*. | No. 4:24-cv-00508-P |

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER TO SHOW CAUSE OR, IN THE ALTERNATIVE, FOR A FURTHER PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ........................................................................................................... 1

RELEVANT BACKGROUND ......................................................................................... 3

ARGUMENT ................................................................................................................ 6

    I.    Defendants Have Not Violated the Court's Preliminary Injunction ..................... 6

    II.    Plaintiffs Are Not Entitled to a Second Preliminary Injunction ........................... 8

        A.    Plaintiffs Are Unlikely to Succeed on the Merits of a Claim They Have Not Asserted in Their Complaint ............................................................. 8

            1.    Plaintiffs' PI Request Improperly Asks the Court to Enjoin Department Action Beyond the Scope of the Allegations in Plaintiffs' Complaint ...................................................................... 8

            2.    Plaintiffs Fail to Show that the Department's Application of a Longstanding Programmatic "Legally Authorized" Requirement to Cortiva Would Be Invalid ........................................................ 11

            3.    Defendants Have Not Engaged in Retaliation ............................. 15

        B.    Plaintiffs Fail to Show Irreparable Harm................................................. 19

        C.    The Balance of Equities and Public Interest Favor Denying a Preliminary Injunction That Exceeds the Scope of Relief Sought in Plaintiffs' Complaint and Undermines the Department's Oversight Responsibilities ...................................................................................... 20

CONCLUSION ............................................................................................................. 21

# **TABLE OF AUTHORITIES**

## **Cases**

*10 Ring Precision, Inc. v. Jones*, 722 F.3d 711 (5th Cir. 2013) .................................................. 16

*Alexander v. City of Dallas*,
    No. 3:22-CV-1193-S, 2024 WL 1260584 (N.D. Tex. Mar. 25, 2024) ........................... 17

*Allen v. Reid*, No. 15-1905, 2016 WL 3136859 (D. Minn. June 3, 2016) .................................... 9

*Bathija v. DHS*, No. 3:24-cv-0526, 2024 WL 2854271 (N.D. Tex. June 5, 2024) ..................... 16

*Budri v. FirstFleet Inc.*, No. 3:19-cv-409, 2021 WL 849012 (N.D. Tex. Feb. 18, 2021),
    *rpt. & rec. adopted*, 2021 WL 842123 (N.D. Tex. Mar. 5, 2021) .................................... 8

*Clark v. Bank of Am. N.A.*, No. 14-232, 2015 WL 1433834 (D. Idaho Mar. 27, 2015) ............... 9

*Dennis v. Thomas*, No. 09-1317, 2010 WL 3927488 (D. Or. Oct. 4, 2010) ............................... 10

*Fort Bend Cnty. v. U.S. Army Corps of Eng'rs*, 59 F.4th 180 (5th Cir. 2023) ........................... 10

*Grisham v. Valenciano*, 93 F.4th 903 (5th Cir. 2024) ................................................................. 16

*In re U.S. Bureau of Prison*, 918 F.3d 431 (5th Cir. 2019) ......................................................... 8

*Kokesh v. Curlee*, 14 F.4th 382 (5th Cir. 2021) ......................................................................... 17

*Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024) ........................................................ 14

*Murthy v. Missouri*, 144 S. Ct. 1972 (2024) ................................................................................ 19

*N. Arapaho Tribe v. LaCounte*, No. CV-16-11, 2017 WL 908547 (D. Mont. Mar. 7, 2017) ....... 9

*Nken v. Holder*, 556 U.S. 418 (2009) ......................................................................................... 20

## **Statutes**

5 U.S.C. § 704 ............................................................................................................................. 10

Higher Education Act ("HEA") Title IV, 20 U.S.C. §§ 1070-1099dd .......................................... 1

20 U.S.C. § 1001 ......................................................................................................................... 14

20 U.S.C. § 1018 ......................................................................................................................... 19

20 U.S.C. § 1094 ........................................................................................... 14, 19

Tex. Occ. Code Ann. § 455.156 ............................................................................ 13

Tex. Occ. Code Ann. § 455.205 ............................................................................ 13

Tex. Occ. Code Ann. § 455.0511 .......................................................................... 13

**Regulations**

Final regulations, 88 Fed. Reg. 74568 (Oct. 31, 2023) .......................................... 6, 9

34 C.F.R. § 600.2 ................................................... 2, 5, 6, 8, 11, 12, 14, 18

34 C.F.R. § 600.9 .......................................................................................... 11

34 C.F.R. § 600.40 ..................................................................................... 5, 11

34 C.F.R. § 600.41 ................................................................................... 10, 21

34 C.F.R. § 668.8 ..................................................................................... 9, 11, 18

34 C.F.R. § 668.14 ............................................................................... 1, 4, 6, 9

34 C.F.R. § 668.91 ................................................................................... 11, 21

16 Tex. Admin. Code § 117.62 ...................................................................... 5, 13

**Administrative Decisions**

*Matter of Academy for Social Action*, 84 Ed. Law. Rep. 1207, 1993 WL 546806
    (Dep't of Educ. O.H.A. No. 91-6-SP Mar. 9, 1993) .................................. 13, 15

*Matter of Molloy Coll.,* 111 Ed. Law Rep. 1430, 1430, 1995 WL 931577
    (Dep't of Educ. O.H.A. No. 94-63-SP Mar. 1, 1995) ........................... 11, 15, 18

## INTRODUCTION

Plaintiffs' latest emergency motion, seeking to hold Defendants in contempt based on arguments in Defendants' Motion to Dismiss and to enjoin application to plaintiff Cortiva of a provision that Plaintiffs have not challenged in this case, should be denied. This Court previously issued a preliminary injunction that prohibits the Department of Education from enforcing or implementing a revised regulatory provision, 34 C.F.R. § 668.14(b)(26)(ii)(A) (the "Revised Provision"), set to take effect on July 1, 2024, that would tie the maximum length of a vocational program that could be funded through the Higher Education Act ("HEA"), Title IV's student financial aid programs to a state's occupational licensing requirements. Meanwhile, Defendants became aware that plaintiff Cortiva's 600-hour massage program has not been approved by the Texas Department of Licensing and Regulation ("TDLR") and therefore does not comply with a separate, longstanding Title IV requirement that each eligible program be "legally authorized" by the state. On that basis, Defendants filed a Motion to Dismiss arguing that Cortiva lacks standing, and that venue, which relies on the Revised Provision's impact on Cortiva, is improper in this District. Defendants explained in their Motion that TDLR's approval of a 500-hour massage program for Cortiva does not "legally authorize" Cortiva's 600-hour program, as Title IV requires, where TDLR has made clear it provides no oversight of the additional 100 hours and considers them "strictly voluntary." Meanwhile, however, Defendants have provided Plaintiffs with written assurances that the Department will take no enforcement action against Cortiva at least until the Court rules on Defendants' Motion to Dismiss.

Plaintiffs first seek contempt sanctions, on the theory Defendants have violated this Court's preliminary injunction. But that theory is nonsensical. As mentioned, the Court has enjoined implementation of 34 C.F.R. § 668.14(b)(26)(ii)(A), the only regulatory provision that Plaintiffs

challenge in this case. The Department has fully complied with the injunction and in no way has sought to enforce or implement that provision. Plaintiffs' contrary suggestion relies on the notion that Title IV does not actually require each program to be legally authorized but that the Department has instead invented a new Title IV requirement out of thin air to circumvent the injunction. But Title IV's "legally authorized" requirement for programs, in the definition of "educational program" in 34 C.F.R. § 600.2, was promulgated through notice and comment rulemaking over thirty years ago. In fact, Plaintiffs' own declarant acknowledges that this requirement is longstanding and operates exactly as Defendants have described. Because no violation of the Court's injunction has occurred, Plaintiffs' request for a contempt finding should be rejected.

In the alternative, Plaintiffs request another preliminary injunction. But this time, they ask the Court to enjoin the Department's application of a regulation that is not identified in their Complaint—the same programmatic "legally authorized" requirement in § 600.2 that Plaintiffs claim is a new invention but in fact has remained unchanged for over thirty years. The relief Plaintiffs request would exceed the scope of this Court's jurisdiction. Moreover, Plaintiffs' arguments that the Department has improperly applied the "legally authorized" requirement, or that it has done so as a form of retaliation, are meritless. Title IV's programmatic "legally authorized" requirement was promulgated through notice and comment over thirty years ago consistent with the Secretary's statutory authority. And thus far, the Department has not initiated an enforcement action against Cortiva. Rather, it has made the legal argument in a Motion to Dismiss that Cortiva lacks standing to challenge the Revised Provision (which would apply only to otherwise-eligible Title IV programs) because, under established Title IV law, Cortiva's 600-hour massage program is already Title IV ineligible. Moreover, Plaintiffs' concession, through

2

their declarant, that the "legally authorized" requirement operates as Defendants have described undermines their contentions. Indisputably, this requirement was not invented by the Department simply because Cortiva filed a lawsuit (nor is such a notion plausible as, after all, the Department faces many lawsuits, including another lawsuit challenging the same provision at issue in this case), but has existed and been applied in its current form for at least thirty years. Plaintiffs fail to show a likelihood of success even if their assertions regarding this longstanding provision were properly part of this case.

Plaintiffs also fail to show that any of the other requirements for a preliminary injunction are satisfied here. Plaintiffs cannot show irreparable harm when the Department has provided assurances that it will not initiate an enforcement action at least until the Court rules on Defendants' Motion to Dismiss, and if the Department were to initiate such an action, it would have to proceed through its standard administrative process for such an action. Such a process would afford Cortiva a full opportunity to raise any applicable defenses and obtain judicial review of the final result. Meanwhile, the government and the public have a strong interest in ensuring the Department's ability to provide appropriate oversight of the proper use of federal Title IV funds. Indeed, given the billions of taxpayer dollars at stake and the Department's role in ensuring those funds are spent to help students attend educational programs that are Title IV eligible, the Department has a compelling interest in carrying out its oversight responsibilities when faced with information suggesting a program is ineligible for Title IV under existing law.

## RELEVANT BACKGROUND[1]

Plaintiffs filed suit on May 31, 2024, challenging a single regulatory provision promulgated

---

[1] Defendants provided a more comprehensive description of the statutory and regulatory framework underlying Plaintiffs' claims in their opposition to Plaintiffs' first emergency motion. *See* ECF 23. The description here is limited to information relevant to Plaintiffs' new motion.

by the Department and set to go into effect on July 1, 2024. *See* ECF 1. The Revised Provision that they challenge, the new 34 C.F.R. § 668.14(b)(26)(ii)(A), would amend an existing provision that limits the amount of training in certain vocational programs that can be paid for with taxpayer funds by reducing Title IV-eligible program length limits from 150% to 100% of what a state requires for licensure. In other words, under this provision, vocational programs that do not seek Title IV eligibility may continue to offer courses of whatever length they wish (as long they comply with nonfederal requirements), but the Department would not provide Title IV student aid funds through programs that mandate extra training beyond what the state has determined is necessary for a particular occupation. Plaintiffs allege that, if the provision takes effect, Cortiva would be forced to reduce its 600-hour massage therapy program to a 500-hour program—the massage therapy licensure requirement in Texas—in order to remain Title IV eligible. Compl. ¶ 10.

Upon filing suit, Plaintiffs also sought emergency relief to enjoin the Revised Provision from taking effect as scheduled. *See* ECF 5. On June 21, 2024, the Court ordered that "enforcement and implementation of [the Revised Provision, 34 C.F.R. § 668.14(b)(26)(ii)(A)] . . . is hereby ENJOINED pending resolution of this lawsuit." Order of June 21, 2024 [ECF 30].

Meanwhile, while defending against Plaintiffs' emergency motion, the Department discovered that TDLR had only approved a 500-hour Cortiva massage program and that TDLR does not approve any Texas massage program for more than 500 hours pursuant to state law. Declaration of Shari Mecca ("First Mecca Decl.") [ECF 23-2] ¶ 7 & attach. A; Second Declaration of Shari Mecca ("Second Mecca Decl.") Ex. B [Def. MTD App. [ECF 44] 28-31]. Later communications from TDLR confirmed this and further indicated that TDLR considers any hours a massage program may provide beyond the approved 500 hours to be "strictly voluntary,"

requiring a student waiver. Second Mecca Decl. ¶¶ 10-11 & Ex. C [Def. MTD App. 34].[2]

Based on this information, the Department concluded that Cortiva's 600-hour massage program does not appear to be eligible for Title IV because it is not "legally authorized" by the State, as required under 34 C.F.R. § 600.2. *See* Second Mecca Decl. ¶¶ 5, 12 & Ex. D [Def. MTD App. 3, 7, 38]. Moreover, TDLR's practice of not approving any massage program for over 500 hours suggested that any other massage programs in Texas over 500 hours would also be ineligible. *See id.* The Department emailed TDLR on July 19, 2024 to explain this conclusion and to notify TDLR of the Department's intention to review the Title IV eligibility of all Texas massage programs. *Id.* ¶ 12 & Ex. D. On July 26, 2024, Defendants filed a Motion to Dismiss, arguing that Cortiva lacks standing to challenge the Revised Provision because it is already ineligible for Title IV. [ECF 42, 43.]

However, the Department has not initiated any enforcement action against Cortiva based on its conclusion. When conferring with Plaintiffs, Defendants provided written assurances that the Department would abstain from initiating an enforcement action against Cortiva at least until after the Court rules on Defendants' Motion to Dismiss. *See* Certificate of Conference, Pl. Mot. [ECF 49], at 4. As explained in Defendants' briefing in support of its Motion to Dismiss, Title IV law deems Cortiva's program ineligible as of the date the Secretary originally made an erroneous eligibility determination based on inaccurate information (here, the inaccurate notion that TDLR had approved Cortiva's 600-hour program). 34 C.F.R. § 600.40(c)(1); *see* Def. MTD Reply [ECF

---

[2] TDLR's General Counsel identified the applicable waiver form as TDLR Form MAS 123N. Thompson Decl. ex. B [ECF 26-1, at 6]. That form, included in the record before the Court at Vitez Decl. ex.G at 3 [ECF 26-2 at 51] and available at https://www.tdlr.texas.gov/mas/masforms.htm, reflects TDLR requirements set forth in 16 TEX. ADMIN. CODE § 117.62(c)(4). TDLR's General Counsel has since reiterated that TDLR "will not consider or opine upon any material beyond the minimum requirements" and anything beyond 500 hours is "strictly voluntary." Pl. App. [ECF 48, 51] 34-35.

53], at 4-5. However, absent a final decision in an enforcement action—which would afford Cortiva a full opportunity to assert any applicable defenses and ultimately to obtain judicial review—the Department cannot force Cortiva to stop disbursing Title IV funds for its 600-hour massage program.

## ARGUMENT

### I.   DEFENDANTS HAVE NOT VIOLATED THE COURT'S PRELIMINARY INJUNCTION

Plaintiffs seek a contempt order based on the notion that Defendants have violated the Court's preliminary injunction. Their argument is specious and should be rejected. The Court's preliminary injunction enjoined "enforcement and implementation of" a specific regulatory provision, 34 C.F.R. § 668.14(26)(ii)(A) (the "Revised Provision"), "contained in the Department of Education's October 31, 2023 Final Regulations," 88 Fed. Reg. 74568, 74696 (Oct. 31, 2023), which had been set to take effect on July 1, 2024. Order of June 21, 2024 [ECF 30], at 15. Consistent with the Court's Order, the Department has not enforced or implemented the Revised Provision at issue in this case, and nothing in Defendants' Motion to Dismiss—which triggered Plaintiffs' new emergency filing—suggests otherwise.

Plaintiffs assert that Defendants' Motion to Dismiss sets forth a "new policy position" that "inflicts the same consequence" as the Revised Provision "for the same reason," "citing the same authority." Pl. Opp. at 11. That is wrong and a clear misrepresentation of Defendants' filing. Defendants explain in their Motion that existing Title IV law requires each program of a Title IV-participating school to be "legally authorized," as required by the definition of "educational program" in 34 C.F.R. § 600.2. Plaintiffs' own declarant, former Department political appointee Diane Auer Jones, concedes that there is nothing "new" about this rule. Jones states that, "[u]nder the HEA and related regulations, the Department requires that a program be legally authorized by

a state." Jones Decl. ¶ 17 [Pl. App. 21]. Moreover, "the state . . . review[s] program content and length as part of their program approval and review process, and programs of different length require separate review and approval." *Id.* Jones thus confirms exactly what the Department has explained—that "[e]ach program that a participating postsecondary institution provides must also be legally authorized by the state . . . . Where states approve programs of a specific number of clock or credit hours, the Department considers the state's authorization to cover only programs of that length." Second Mecca Decl. ¶ 5 [Def. MTD App. 3]. Certainly, the longstanding "legally authorized" requirement is not "the same" as the Revised Provision, which limits Title IV eligibility by reference to the amount of training that a state requires for occupational licensure, not by reference to the state's approval of a specific program.

Simply put, Title IV's "legally authorized" requirement makes Cortiva's 600-hour massage program ineligible for Title IV because TDLR did not approve that 600-hour program; rather, it approved only a 500-hour program. By contrast, the Revised Provision—which is not in effect due to the Court's injunction—would limit Title IV eligibility where a program's length exceeds a state's training requirements for an occupational license, even if the state has approved a curriculum beyond what is required for licensure. The fact that Cortiva's 600-hour program would also be ineligible for Title IV under the Revised Provision—because Texas requires only 500 hours of training for a massage therapy license—does not mean the two separate requirements are one and the same. To the contrary, the fact that Cortiva's program is already Title IV ineligible pursuant to the programmatic "legally authorized" requirement is the reason that Cortiva lacks standing to challenge the entirely separate Revised Provision.

Accordingly, the requirements for civil contempt are not met. Plaintiffs have not shown by "clear and convincing evidence" that the Court prohibited the Department, through a "definite and

specific order," from concluding that Cortiva's massage program is ineligible for Title IV pursuant to the "legally authorized" requirement in § 600.2. *See In re U.S. Bureau of Prison*, 918 F.3d 431, 439–40 (5th Cir. 2019) (reversing contempt order against BOP because "[t]he BOP did not violate a court order by implementing [certain requirements] according to governing law"); *Budri v. FirstFleet Inc.*, No. 3:19-cv-409, 2021 WL 849012, at *5–6 (N.D. Tex. Feb. 18, 2021) (contempt finding not justified where court order did not expressly prohibit party from filing an administrative complaint), *rpt. & rec. adopted*, 2021 WL 842123 (N.D. Tex. Mar. 5, 2021). This Court enjoined implementation of the Revised Provision. It did not insulate Cortiva from the operation of all other Title IV requirements, including the "legally authorized" requirement.

Moreover, even aside from Plaintiffs' erroneous construction of the Court's injunction, Defendants' inclusion of a legal analysis in their Motion to Dismiss of how the "legally authorized" requirement applies to Cortiva, in support of their argument that Cortiva lacks standing, cannot properly be subject to a finding of contempt. As described, the Department has provided assurances that it will not initiate an enforcement action against Cortiva at least until the Court rules on that Motion.

## II. PLAINTIFFS ARE NOT ENTITLED TO A SECOND PRELIMINARY INJUNCTION

### A. Plaintiffs Are Unlikely to Succeed on the Merits of a Claim They Have Not Asserted in Their Complaint

#### 1. Plaintiffs' PI Request Improperly Asks the Court to Enjoin Department Action Beyond the Scope of the Allegations in Plaintiffs' Complaint

As an alternative to their request that the Court find Defendants in civil contempt, Plaintiffs ask that the Court enjoin the Department "from taking *any* action to deprive Cortiva of Title IV eligibility" without "first affirmatively seeking leave of court." Pl. Mem. at 22. Plaintiffs fail to show that they are entitled to the extraordinary remedy of another preliminary injunction—this

time one that goes far beyond the scope of relief sought in Plaintiffs' Complaint.

Indeed, this Court lacks jurisdiction to grant the requested relief for the very reason that the alleged conduct that Plaintiffs seek to enjoin is not what Plaintiffs challenge in this lawsuit. Plaintiffs' Complaint challenges the Revised Provision, not any other Title IV requirement. Compl. ¶¶ 1, 65-66 (identifying 34 C.F.R. § 668.14(b)(26)(ii)(A), as set forth in the Department's October 31, 2023 final regulations, 88 Fed. Reg. 74568, as the subject of their challenge). In particular, Plaintiffs' Complaint did not mention, much less challenge, Title IV's "legally authorized" requirement for programs, as identified in the definition of "educational program," 34 C.F.R. § 600.2. *See also* 34 C.F.R. § 668.8(a) (an "eligible program" must be an "educational program"). Nor did the Complaint challenge any potential future enforcement action by the Department against Cortiva based on the "legally authorized" requirement. Plaintiffs concede that their new motion has nothing to do with the Revised Provision challenged in this case by acknowledging their Complaint contains no "substantive count" challenging the "separate agency action" that they allege in their motion, and that they would have to amend their Complaint to assert such a challenge. *See* Pl. Mem. at 14.

To the extent a court has subject matter jurisdiction over a case, that jurisdiction is bound by the claims raised in the plaintiff's complaint, and courts routinely deny emergency motions outside the scope of such claims. *See, e.g., N. Arapaho Tribe v. LaCounte*, No. CV-16-11, 2017 WL 908547, at *2–3 (D. Mont. Mar. 7, 2017) (denying TRO motion because it fell "beyond the scope" of the plaintiff's complaint); *Allen v. Reid*, No. 15-1905, 2016 WL 3136859, at *4 (D. Minn. June 3, 2016) ("[T]o the extent that [plaintiff] seeks injunctive relief for alleged mistreatment and retaliation that are unrelated to the claims in his Amended Complaint, he is not entitled to such relief."); *Clark v. Bank of Am. N.A.*, No. 14-232, 2015 WL 1433834, at *8 (D.

Idaho Mar. 27, 2015) (declining to address "new arguments" in a TRO motion "unrelated to the allegations contained" in the plaintiff's complaint because they are "beyond the scope of the Court's review"); *Dennis v. Thomas*, No. 09-1317, 2010 WL 3927488, at *1 (D. Or. Oct. 4, 2010) (denying preliminary injunction prohibiting BOP from transferring plaintiff inmate as retaliation for lawsuit in part because the relief sought "extends beyond the scope of the allegations in [the plaintiff's] Complaint"). Here, Defendants have moved to dismiss this case for lack of subject matter jurisdiction because plaintiff Cortiva's massage program is already ineligible for Title IV and therefore cannot plausibly claim a certainly impending injury from the Revised Provision that is likely to be redressed by a favorable decision in this case. While Plaintiffs are free to make legal arguments in opposition to Defendants' Motion, they may not expand the Court's subject matter jurisdiction by seeking to enjoin Department regulations that they have not challenged in their Complaint.

That is especially true where a plaintiff seeks to raise a challenge that is not only outside the scope of its complaint but also beyond the Administrative Procedure Act ("APA")'s waiver of the United States' sovereign immunity. *Fort Bend Cnty. v. U.S. Army Corps of Eng'rs*, 59 F.4th 180, 189 (5th Cir. 2023) (the terms of Congress's waiver of sovereign immunity "define the parameters of federal courts' subject matter jurisdiction over actions against the Government"). The APA waives sovereign immunity only for challenges to a "final agency action." 5 U.S.C. § 704. Here, Plaintiffs evidently seek to enjoin a future enforcement action by the Department based on its application of Title IV's "legally authorized" requirement to Cortiva, in accord with Defendants' arguments in their Motion to Dismiss. But, as Plaintiffs concede, the Department has not even begun an enforcement action. If the Department were to initiate such an action against Cortiva, Cortiva would be entitled to raise any applicable defenses in that process, and judicial

review would be available after the agency's final decision. *See* 34 C.F.R. §§ 600.41(b), (c)(1). 668.91.[3] Plaintiffs' request for an injunction is therefore premature and beyond the APA's sovereign immunity waiver.

> ### 2. Plaintiffs Fail to Show that the Department's Application of a Longstanding Programmatic "Legally Authorized" Requirement to Cortiva Would Be Invalid

Plaintiffs allege that "[i]f" they "ever need to challenge" what they identify as a new "policy"—but would in fact be the Department's application to Cortiva of the longstanding Title IV requirement that each program be "legally authorized"—they would be likely to succeed. Pl. Mem. at 14. Their argument, relying on the notion that a requirement that is over thirty years old, and operates exactly as their own declarant describes, somehow violates Title IV, highlights the impropriety of reaching the issue at all at this juncture.

Not only have Plaintiffs not challenged the regulatory requirement that programs be "legally authorized" in their Complaint, but their argument fails even to acknowledge the provision at issue. Plaintiffs focus entirely on 34 C.F.R. § 600.9. But the requirement that each program of a Title IV-participating school be "legally authorized" to be Title IV eligible is longstanding and expressly set forth in other Department regulations. *See* 34 C.F.R. §§ 600.2 ("educational program" must be "legally authorized"); 668.8(a) ("eligible" program is an "educational program"); *see also*, *e.g.*, *Matter of Molloy Coll.,* 111 Ed. Law Rep. 1430, 1430, 1995 WL 931577 (Dep't of Educ. O.H.A. No. 94-63-SP Mar. 1, 1995) ("[[I]n order for students in an educational

---

[3] As Defendants have explained in their Motion to Dismiss, the Department believes Cortiva's 600-hour massage program is currently ineligible for Title IV based on the undisputed fact that TDLR has only approved a 500-hour program. Def. MTD Mem. at 6-10; Def. MTD Reply at 2-7. Because the Department's prior conclusion that the 600-hour program was eligible relied on a lack of accurate information and documentation regarding TDLR's approval, the Department deems the program ineligible as of the date of the Department's original incorrect eligibility determination. 34 C.F.R. § 600.40(c)(1). However, the Department cannot force Cortiva to stop improperly disbursing funds unless and until it goes through the applicable enforcement process.

program to receive Title IV funds, not only must the *school* be legally authorized by the state, but the *educational program* must also be legally authorized by that state. 34 C.F.R. § 600.2 defines an 'educational program' as '[a] legally authorized postsecondary program . . . .'"). Nor is the requirement in any sense controversial. Indeed, as mentioned above, Plaintiffs' own declarant Jones concedes this is so. Jones Decl. ¶ 17 (recognizing that, "[u]nder the HEA and related regulations, the Department requires that a program be legally authorized by a state" and that "the state . . . review[s] program content and length as part of their program approval and review process, and programs of different length require separate review and approval"). Plaintiffs' suggestion that the Department would need to go through negotiated rulemaking, Pl. Mem. at 16, ignores that the Department already promulgated the relevant rule decades ago.

Under this longstanding requirement, where state licensing agencies approve or legally authorize a specific program, the Department considers that program—and only that program—to be legally authorized. Indeed, Defendants' and Plaintiffs' declarants are in full agreement on this point, including that programs of different lengths require separate approval. First Mecca Decl. ¶ 5; Second Mecca Decl. ¶ 5 [Def. MTD App. 3]; Jones Decl. ¶ 17 [Pl. App. 21]. It follows that because TDLR has approved only a 500-hour massage program for Cortiva, Cortiva's 600-hour program is not "legally authorized" by TDLR.

Plaintiffs fail to explain how TDLR's approval of a 500-hour program could possibly mean that every other Cortiva program, regardless of length, is also automatically "legally authorized." Such a notion would lead to the absurd result that, if Cortiva offered a so-called massage program consisting of 500 hours of the state-required curriculum, plus 100 hours of dance or video gaming instruction with no connection whatsoever to massage, the Department would be forced to allow taxpayer funds to be spent on those 100 additional hours of courses that contributed nothing

whatsoever to their training as a massage therapist. TDLR has confirmed that it provides no oversight whatsoever beyond the 500 hours that it approves. Pl. App. 35 (TDLR General Counsel stating that TDLR "will not consider or opine upon any material beyond the minimum requirements"). Rather, TDLR views any hours beyond the approved 500 hours to require a student waiver and deems them "strictly voluntary," from its perspective. *Id.*; *see also* 16 TEX. ADMIN. CODE § 117.62(c)(4).

The Department has long considered voluntary or elective hours not to be included in a state's legal authorization of a program, as evidenced by a decision by the Department's Office of Hearings and Appeals over three decades ago, in 1993. *See Matter of Academy for Social Action*, 84 Ed. Law. Rep. 1207, 1993 WL 546806 (Dep't of Educ. O.H.A. No. 91-6-SP Mar. 9, 1993). The program at issue in that case, similar to Cortiva's, consisted of a certain number of mandatory course hours that were legally authorized by the State of New York, plus an additional number of "elective" course hours that, under State law, were not specifically approved. *Id.* at 1209. The Department concluded that, because "the elective courses were not approved" by the State, those hours were not legally authorized and did not count for purposes of Title IV eligibility. *Id.*

The Department's reasoning in that case applies equally here. Texas law requires TDLR to "regulate the number of school hours and the content of the coursework provided by a massage school," TEX. OCC. CODE ANN. § 455.0511(b)(2), and prohibits massage schools from requiring more than 500 hours, *id.* §§ 455.156(b)(1), .205(b). TDLR considers any hours beyond the 500 hours that it approves "strictly voluntary." Pl. App. 35; 16 TEX. ADMIN. CODE § 117.62(c)(4). Any hours that a massage program provides beyond the 500 that TDLR approves thus unquestionably qualify as unapproved elective hours. As such, those hours are not "legally authorized" for purposes of Title IV.

13

Nor are Plaintiffs likely to prevail in any challenge to the Secretary's statutory authority in promulgating or enforcing this requirement. Congress charged the Secretary with promulgating regulations "as may be necessary" to ensure the "sound administration of [Title IV] financial aid programs." 20 U.S.C. § 1094(c)(1)(B). Congress also required that schools participating in Title IV be "legally authorized within [their] State to provide a program of education beyond secondary education." 20 U.S.C. § 1001(a)(2). Together, these statutory provisions provide ample authority for the Secretary to determine that each "educational program" must be "legally authorized" in order to justify the expenditure of Title IV funds on such programs. *See* 34 C.F.R. § 600.2; *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2263 & n.6 (2024) (recognizing that Congress may "empower an agency to prescribe rules to 'fill up the details' of a statutory scheme" by using such phrases as "appropriate," "reasonable," or "necessary," and that an agency may engage in "reasoned decisionmaking" to do so).

Plaintiffs further argue that the Department has applied its interpretation only to Texas massage programs, "but not to other schools," such as those with barber or cosmetology programs. Pl. Mem. at 16, 18. Again, they do not point to any final agency action, but instead cite a declaration that Defendants submitted in support of their Motion to Dismiss and an email that the Department sent TDLR. *Id.* Those materials reflect the information that the Department had at the time, and Plaintiffs fail to show that the Department currently has equivalent information about other categories of schools—including Texas barber or cosmetology programs.

In particular, Plaintiffs point to a June 24, 2024 inquiry that TDLR sent the Department, asking how TDLR would be affected by new regulations since TDLR "will not and cannot approve any massage, barber, or cosmetology course for more than the required hours of education for licensure," Def. MTD App. 34. Pl. Mem. at 18. That email was the first time TDLR mentioned

14

any state restrictions on barber or cosmetology program approval to the Department, and TDLR did not elaborate on the basis for any such restrictions or whether any barber or cosmetology programs in the state exceed the approved length. Meanwhile, by the time of that email, TDLR had already provided the Department with an explanation of its position regarding massage programs, citing state laws that specifically reference massage programs. Def. MTD App. 28-29. The Department is also already aware, based on the information TDLR previously provided, of at least one massage program—Cortiva's 600-hour program—that purports to be Title IV eligible even though Cortiva has been approved only for 500 hours.[4] Plaintiffs do not identify any barber or cosmetology program that operates a program in Texas beyond the hours that TDLR approves or that claims Title IV eligibility for such a program, and the Department is unaware of any such program. Plaintiffs fail to show that the Department's email to TDLR (which in any event does not qualify as a "final agency action" subject to judicial review) was arbitrary in addressing accurate information that it had recently learned, which was specific to TDLR's approval of massage programs. To the contrary, the Department's oversight role to ensure Title IV funds are spent responsibly requires it to act on such information, and where the Department has had information in the past suggesting that a program was not legally authorized or was otherwise ineligible for Title IV, it has acted on it. *E.g.*, *Matter of Molloy Coll.*, 111 Ed. Law. Rep. 1430; *Matter of Academy for Social Action*, 84 Ed. Law. Rep. 1207.

### 3.  Defendants Have Not Engaged in Retaliation

Plaintiffs finally argue that the Department has violated Cortiva's First Amendment rights by engaging in "new retaliatory action" against it, "in response to [Cortiva's] filing" this lawsuit. Pl. Mem. at 17. Plaintiffs' retaliation claim, like the other bases for their new request for emergency

---

[4] Plaintiffs' own filings in this case purport to identify examples of other massage programs in Texas that exceed 500 hours. Pl. TRO Reply ex. 3 [ECF 26-3, at 2].

relief, relates to a potential future enforcement action by the Department, based on a regulatory provision not at issue in this case. Such a claim thus also falls outside the scope of their Complaint. Moreover, where a retaliation claim is asserted against a federal agency in the context of the agency's administration of programs under its authority, the APA, including its "final agency action" requirement discussed above, governs such a claim. *See* 5 U.S.C. § 706(2)(B) (covering claims that an agency has violated constitutional rights). Even if Plaintiffs had a valid claim of retaliation, such an argument would properly be raised in their defense against any enforcement action that the Department may take, not in this challenge to the Revised Provision.

Even if the Court were to entertain Plaintiffs' argument, they are wrong in all respects and fail to overcome by "clear and convincing evidence" the "presumption of regularity" that "attaches to the actions of Government agencies." *Bathija v. DHS*, No. 3:24-cv-0526, 2024 WL 2854271, at *3 (N.D. Tex. June 5, 2024) (quoting *10 Ring Precision, Inc. v. Jones*, 722 F.3d 711, 725 n.79 (5th Cir. 2013)) (further quotation omitted) (rejecting plaintiff's claimed concern that DHS would retaliate in response to plaintiff's filing suit). Outside the employment context, courts require plaintiffs alleging retaliation to show that "(1) Plaintiffs were engaged in constitutionally protected activity, (2) Defendants caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) Defendants' adverse actions were substantially motivated by the Plaintiffs' exercise of constitutionally protected conduct." *Grisham v. Valenciano*, 93 F.4th 903, 909 (5th Cir. 2024) (internal quotation omitted).

Here, Plaintiffs point to this lawsuit as the First Amendment-protected activity at issue. But they fail to show that, by challenging Cortiva's standing in a Motion to Dismiss, Defendants have caused an injury likely to chill Plaintiffs' litigation efforts. To the contrary, Plaintiffs could and did simply respond to Defendants' Motion in an opposition brief.

Plaintiffs argue that they can establish a causal relationship between this lawsuit and the Department's discovery of information from TDLR showing that Cortiva's massage program is already ineligible for Title IV. However, the Department obtained the information from TDLR only incidentally, while exploring any applicable defenses to Plaintiffs' first request for an emergency injunction in this case. Where the government has a valid reason for its action, unrelated to the plaintiff's First Amendment-protected activity, courts generally reject retaliation arguments. *E.g., Alexander v. City of Dallas*, No. 3:22-CV-1193-S, 2024 WL 1260584, at *7–8 (N.D. Tex. Mar. 25, 2024) (where plaintiffs alleged arrests were retaliation for First Amendment activity, they "must 'first establish the absence of probable cause, and then demonstrate that the retaliation was a substantial or motivating factor behind the arrest'" (citing *Kokesh v. Curlee*, 14 F.4th 382, 396 (5th Cir. 2021)).

The fact that the Department became aware that TDLR does not approve massage programs for more than 500 hours through a communication with TDLR that related to this lawsuit does not prove retaliation. As described in Defendants' Motion to Dismiss filing, the Department's Federal Student Aid ("FSA") office employs case managers who oversee specific school groups that participate in the Title IV student financial aid programs and who "communicate regularly with school representatives, state licensing boards, and accreditors" regarding schools' and programs' compliance with Title IV requirements. Second Mecca Decl. ¶ 1. The FSA case manager who oversees the school group including Cortiva contacted TDLR after Plaintiffs filed their first TRO motion simply to ask whether Cortiva had already submitted a request to reduce its program length in order to comply with the Revised Provision, as that information was potentially relevant to Cortiva's assertions of irreparable harm. Def. MTD App. 30; First Mecca Decl. ¶ 7.  In response, TDLR volunteered the fact that Cortiva was already only approved to offer a 500-hour massage

program and provided the Certificate of Approval for the 500-hour course. Def. MTD App. 30-31.

As discussed above, Department regulations include the longstanding requirement that each program of a Title IV-participating school be "legally authorized" in order to be Title IV eligible. *See* 34 C.F.R. §§ 600.2 ("educational program" must be "legally authorized"); 668.8(a) ("eligible" program is an "educational program"); *see Matter of Molloy Coll.,* 111 Ed. Law Rep. at 1430. As Ms. Mecca explained in her first declaration, the Department approves specific programs for Title IV eligibility "based on the credits or clock hours approved by the state and the accreditor." First Mecca Decl. ¶ 5; *see also* Jones Decl. ¶ 17 (recognizing that, "[u]nder the HEA and related regulations, the Department requires that a program be legally authorized by a state" and that "the state . . . review[s] program content and length as part of their program approval and review process, and programs of different length require separate review and approval"). Thus, this initial communication from TDLR already raised a serious question regarding the Title IV eligibility of Cortiva's 600-hour massage program. Subsequent communications from TDLR, including communications between TDLR's General Counsel and Plaintiffs' counsel, confirmed that, as a matter of state law, TDLR did not approve any massage programs for more than 500 hours, the number of hours required for a massage license, *see* Def. MTD App. 34, and any hours that a massage school sought to provide beyond that amount, though not prohibited, were considered "strictly voluntary," requiring a student waiver. *See* Thompson Decl. ex. B [ECF 26-1, at 6]; Vitez Decl. ex.G at 3 (TDLR Form MAS 123N) [ECF 26-2 at 51] .

Faced with the new information that TDLR had provided, the Department was not required to ignore the clear indications that Cortiva's 600-hour program is not eligible for Title IV under existing law. To the contrary, as the agency charged with administering Title IV programs, the Department's oversight obligations require it to act appropriately to ensure that Title IV funds are

properly disbursed, and enforcing Title IV's school and program eligibility requirements are central to that endeavor. *Cf.* 20 U.S.C. §§ 1018(b)(2)(A)(vi), 1094(c). Here, the Department has nevertheless provided assurances that it will not initiate enforcement action at least until after the Court rules on Defendants' Motion to Dismiss. Certainly, Defendants were not prohibited from moving to dismiss where the available information suggests that, because Cortiva's 600-hour program is already ineligible for Title IV, Plaintiffs cannot meet their burden to establish that Cortiva faces a certainly impending injury fairly traceable to a separate requirement, the Revised Provision, which has not yet gone into effect but would have no impact on Cortiva's already-ineligible 600-hour program. To suggest that Defendants have engaged in retaliation simply because they pointed out the Court's lack of subject matter jurisdiction in this situation, as well as the implications for proper venue, reverses the normal order of things. It would instead be inappropriate for either Defendants or the Court to ignore Cortiva's lack of standing because subject matter jurisdiction "is 'fundamental to the judiciary's proper role in our system of government.'" *Murthy v. Missouri*, 144 S. Ct. 1972, 1985 (2024).

**B.      Plaintiffs Fail to Show Irreparable Harm**

Beyond the fact that Plaintiffs have not challenged the programmatic "legally authorized" requirement in this case and have otherwise failed to show a likelihood of success on the merits, including with respect to their retaliation claim, Plaintiffs fail to meet their burden to establish a preliminary injunction is necessary to avoid irreparable harm. Plaintiffs do not claim (nor could they) that Defendants' argument in a Motion to Dismiss that Cortiva lacks standing could, by itself, qualify as irreparable harm warranting a preliminary injunction. Plaintiffs also concede that the Department thus far has not initiated any action to enforce Title IV's "legally authorized" requirement against Cortiva, and that Defendants have provided assurances that the Department

19

will take no such action at least until the Court rules on Defendants' Motion to Dismiss. *See* Certificate of Conference, Pl. Mot. at 4 ("Defendants have provided written assurances that the Department will abstain from initiating an enforcement action against Cortiva at least until after the Court rules on Defendants' Motion to Dismiss."). Moreover, if the Department were to initiate such an action, it would proceed through the normal administrative channels, and Cortiva would be able to raise any defenses during that process and ultimately would be able to seek judicial review of a final Department decision. Indeed, Plaintiffs have argued in opposition to Defendants' Motion to Dismiss that the "hurdles" that the Department "would have to clear" in order to enforce any Title IV requirement against Cortiva "are substantial." Pl. MTD Opp. [ECF 47], at 6. Plaintiffs cite no authority for the notion that going through an administrative process, followed by an opportunity for judicial review, could qualify as irreparable harm.

> **C.    The Balance of Equities and Public Interest Favor Denying a Preliminary Injunction That Exceeds the Scope of Relief Sought in Plaintiffs' Complaint and Undermines the Department's Oversight Responsibilities**

The balance of equities and public interest factors merge when the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Both factors weigh against an emergency injunction here. The Department and the public have a strong interest in protecting the Department's ability to oversee the Title IV student financial aid programs and to ensure that the federal taxpayer funds that the Department provides to Title IV-participating schools are being used appropriately for students' attendance at Title IV eligible programs. Filing a lawsuit challenging one regulatory provision does not normally immunize a Title IV-participating school from its obligations to comply with other existing Title IV requirements, nor does it provide a mechanism to enjoin enforcement of regulations that are not challenged in the case. Indeed, the broad injunction Plaintiffs seek here, prohibiting the Department "from taking *any* action to

deprive Cortiva of Title IV eligibility for student aid without first affirmatively seeking leave of court," Pl. Mem. at 22, would be unprecedented in broadly shielding Cortiva from all current Title IV requirements when this case only challenges a single regulatory provision that has not yet taken effect. Issuing such an injunction would only encourage every other school that might be out of compliance with any Title IV requirement to file suit to seek similar immunity, ultimately interfering with the availability of Title IV funds for their intended purpose, to help students gain training and other education at *eligible* programs.

Here, moreover, the Department has not initiated any enforcement action against Cortiva and has provided assurance that it will not do so at least until after the Court rules on Defendants' Motion to Dismiss. Moreover, if the Department were to initiate such an action, the administrative enforcement procedures that it would follow already provide protections for schools so that they can raise any defenses and ultimately obtain judicial review. *See* 34 C.F.R. §§ 600.41(b), (c)(1). 668.91. Plaintiffs' attempt to use a standing argument in Defendants' Motion to Dismiss as a mechanism to undermine the Department's general oversight role should be rejected.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Order to Show Cause, or in the alternative, for a Further Preliminary Injunction, should be denied.

DATED:  August 22, 2024                    Respectfully submitted,

                                           BRIAN M. BOYNTON
                                           Principal Deputy Assistant Attorney General

                                           MARCIA BERMAN
                                           Assistant Director, Federal Programs Branch

                                           /s/ Kathryn L. Wyer
                                           KATHRYN L. WYER (DC Bar #90023642)
                                           U.S. Department of Justice, Civil Division
                                           1100 L Street, N.W., Room 12014

Tel. (202) 616-8475
kathryn.wyer@usdoj.gov
*Counsel for Defendants*