# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | |
|---|---|
| 360 DEGREE EDUCATION, LLC, d/b/a Cortiva Institute; and THE COALITION FOR CAREER SCHOOLS,<br><br>                                 Plaintiffs,<br><br>v.<br><br>DEPARTMENT OF EDUCATION; and SECRETARY MIGUEL A. CARDONA, in his official capacity as Secretary of the Department of Education,<br><br>                                 Defendants. | Case No. 4:24-cv-00508-P<br><br>**Plaintiff's Reply to Defendant's Memorandum in Opposition to the Plaintiff's Motion for Order to Show Cause or, in the Alternative, for a Further Preliminary Injunction** |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ................................................................................................................................ 2

    I.    The Department Is Violating the Preliminary Injunction ........................................ 2

    II.    The Department Alternatively Should Be Enjoined from Implementing Its Novel Interpretation of 20 U.S.C. § 1001(a)(2), the "Bare Minimum Rule 2.0" ........................................................................................................................ 4

        A.    Plaintiff Cortiva is likely to succeed in challenging the Department's § 1001(a)(2) argument ................................................................................. 5

        i.    The Department's argument represents a substantively and procedurally invalid application of § 1001(a)(2) ........................................ 5

        ii.    The Department's argument constitutes unlawful First Amendment retaliation ................................................................................................... 8

        B.    Plaintiff Cortiva has established irreparable harm and that the balance of the equities and public interest favor equitable relief ............... 10

CONCLUSION ........................................................................................................................... 10

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Alexander v. City of Dallas*,
　No. 3:22-CV-1193-S, 2024 WL 1260584 (N.D. Tex. Mar. 25, 2024) ...............................8

*Auer v. Robbins*,
　519 U.S. 452 (1997) .........................................................................................................6

*Babler v. Futhey*,
　618 F.3d 514 (6th Cir. 2010) ..........................................................................................10

*Bauer v. DeVos*,
　325 F. Supp. 3d 74 (D.D.C. 2018) ...................................................................................6

*Bennett v. Hendrix*,
　423 F.3d 1247 (11th Cir. 2005) ........................................................................................9

*Borough of Duryea v. Guarnieri*,
　564 U.S. 379 (2011) .........................................................................................................9

*Bowen v. Georgetown Univ. Hosp.*,
　488 U.S. 204 (1988) .........................................................................................................6

*Christopher v. SmithKline Beecham Corp.*,
　567 U.S. 142 (2012) .........................................................................................................6

*Elam Const., Inc. v. Reg'l Transp. Dist.*,
　127 F.3d 1109 (10th Cir. 1997) ......................................................................................10

*In re Joseph P. Conte Toyota, Inc.*,
　17 F.3d 537 (5th Cir. 1998) .............................................................................................4

*Keenan v. Tejeda*,
　290 F.3d 252 (5th Cir. 2002) ...........................................................................................9

*Kisor v. Wilkie*,
　588 U.S. 558 (2019) .........................................................................................................6

*Loper Bright Enters. v. Raimondo*,
　144 S. Ct. 2244 (2024) .....................................................................................................5

*N.R.A. v. Vullo*,
　602 U.S. 175 (2024) ................................................................................................2, 8, 9

*Sackett v. E.P.A.*,
    566 U.S. 120 (2012)...................................................................................................1

*United Presbyterian Church in the U.S.A. v. Reagan*,
    738 F.2d 1375 (D.C. Cir. 1984).............................................................................2, 9

**STATUTES**

5 U.S.C. § 706.............................................................................................................5

20 U.S.C. § 1001(a)(2)...................................................................................2, 3, 4, 5

20 U.S.C. § 1098a(b)(2)..............................................................................................6

**REGULATIONS**

*Financial Responsibility, Administrative Capability, Certification Procedures,
Ability to Benefit (ATB)*, 88 Fed. Reg. 74,568 (Oct. 31, 2023).........................................3

*Student Assistance General Provisions & Federal Pell Grant Program*,
59 Fed. Reg. 9,526 (Feb. 28, 1994) ................................................................................7

**OTHER AUTHORITY**

American Bar Association, *A Blackletter Statement of Federal Administrative Law*,
54 Admin. L. Rev. 17 (2002).......................................................................................10

## **INTRODUCTION**

Defendants' Opposition confirms that the Court must intervene to protect Cortiva from the Department's heavy-handed and retaliatory effort to declare—as if by fiat—its Professional Massage Therapy Program ("PMT Program") ineligible for Title IV funding. The Department attacks Cortiva's Title IV eligibility in an effort to make this lawsuit go away, raising a newly concocted interpretation of the state-authorization requirement to effectuate the preliminarily enjoined Bare Minimum Rule. The Department insists that it is not yet violating the preliminary injunction because it has not initiated an enforcement proceeding.[1] But it is well-established that a "Sword of Damocles" legal pronouncement has a concrete coercive effect and does not insulate an agency position from judicial review. *See Sackett v. E.P.A.*, 566 U.S. 120, 127 (2012).

***First***, the Court should issue an order to show cause because the Department has violated the preliminary injunction, which bars it from "enforcement ***and implementation***" of the Bare Minimum Rule. ECF No. 30 at 15 (Order) (emphasis added). The Department repeats its thin assurance that "it will not initiate an enforcement action against Cortiva at least until the Court rules on [its pending motion to dismiss]." ECF No. 55 at 8 (Opp.). But that merely addresses enforcement, not implementation. The Department completely fails to address Plaintiffs' point that the Department's position is based on "the state authorization requirement in § 1001(a)(2)," which "is one of the very provisions the Department cited as statutory authority for promulgating the Bare Minimum Rule in the first place." ECF No. 50 at 6 (Mem.) (citing the relevant portion of the Federal Register). The Department's position reflects an improper attempt to *implement* the Bare Minimum Rule in violation of this Court's preliminary injunction.

---

[1] The Department has made clear through its conversations with the Texas regulator (ECF No. 43 at **10 (**Mem. in Supp. of Mot. to Dismiss)) that it intends to apply its wrongful interpretation of state authorization rules against all massage therapy programs in Texas.

1

***Second***, even if the argument did not implement the enjoined rule, it would still be an invalid action which the Court could and should enjoin in its own right. The Department attempts to evade review of that new legal theory by claiming that the Court should not reach "the issue at all at this juncture." ECF No. 55 at 11. But the Department cannot have it both ways. Either the Department's ineligibility argument is irrelevant, in which case the Department should withdraw its motion to dismiss and avoid gratuitously opining on issues not before the Court; or the Department is attempting to give legal effect to its interpretation, in which case it is wholly proper for the Court to review it. As the Department's excessive defensiveness highlights, it does not have any good defense on the merits for this new Bare Minimum Rule 2.0, which at a minimum, should go through negotiated and notice-and-comment rulemaking before the Department implements it.

***Third***, the Department argues that it has not engaged in First Amendment retaliation because its actions are not "likely to chill Plaintiffs' litigation efforts." Opp. at 16. But Defendants cannot disprove retaliation simply because Cortiva has not dropped its lawsuit.[2] To the contrary, First Amendment retaliation is actionable even when it does not succeed, *see, e.g.*, *United Presbyterian Church in the U.S.A. v. Reagan*, 738 F.2d 1375, 1379 (D.C. Cir. 1984) ("[T]o require that the harm of 'chilling effect' actually be suffered by the plaintiff would destroy the whole purpose of the concept."), and subjective retaliatory intent is prohibited even if the Department could otherwise take the same action, *see N.R.A. v. Vullo*, 602 U.S. 175, 196 (2024).

## ARGUMENT

### I.   The Department Is Violating the Preliminary Injunction

The Department's current argument—that Cortiva's PMT Program is ineligible for Title IV funding based on the state-authorization requirement in § 1001(a)(2) because the PMT Program

---

[2] If that were the standard, retaliation would be the Department's best tactic in every case: either you succeed in retaliating, and the case is dropped, or you fail, but your effort cannot be challenged because it did not work.

is longer than Texas's 500-hour requirement for massage therapy programs—is precisely what it sought to do through the Bare Minimum Rule, which this Court enjoined from implementing. *See* ECF No. 50 at 11–13.

The Department nevertheless insists that its *current* § 1001(a)(2) argument is based on a "separate requirement[]," ECF No. 55 at 7, which it claims is "far beyond the scope of relief sought in Plaintiffs' Complaint," *id.* at 9. But the Department wholly fails to acknowledge, much less address, that § 1001(a)(2), concerning state authorization, was one of the very provisions underlying the enjoined Bare Minimum Rule. *See Financial Responsibility, Administrative Capability, Certification Procedures, Ability to Benefit (ATB)*, 88 Fed. Reg. 74,568, 74,638 (Oct. 31, 2023). The Department disingenuously declares state authorization and the Bare Minimum Rule are "separate requirements" and that it remains free to implement its view of § 1001(a)(2)— and how it relates to Texas's 500-hour requirement—without regard to the preliminary injunction.

The Department fails to offer any convincing explanation how this "Bare Minimum Rule 2.0" is not the exact same policy as the enjoined Bare Minimum Rule. Since the Department's initial Opposition Brief and Sur Reply to Plaintiffs' Motion for Preliminary Injunction, the Department knew that the Texas Department of Licensing and Regulation ("TDLR") approves a 500-hour curriculum massage therapy program. The Department's initial argument in opposition to the Motion for Preliminary Injunction, repeated during oral argument and in its Sur Reply, was that "Texas law already limits massage therapy programs to 500 hours, and Texas has approved 360 Degree's Arlington program only for 500 hours." ECF No. 23 at 7 (Defs. Opp'n to Mot. for Preliminary Injunction); *see also* ECF No. 29 at 4 (Sur Reply to Mot. for Preliminary Injunction) ("Plaintiff 360 Degree Education d/b/a Cortiva Institute ("Cortiva")'s [sic] massage therapy

3

program in Arlington, Texas has TDLR approval only for a 500-hour program."). Nothing has changed except the Department's novel interpretation of its state authorization requirements.

When the TDLR authorizes a school to offer massage therapy programs in Texas, it reviews and certifies only the 500-hour program portion because that is the "base curriculum" required for licensure in Texas, and that is what the Texas Legislature has tasked TDLR with regulating. ECF No. 51 at 36 (Ex. A to Thompson Decl. (TLDR General Counsel July 30, 2024 email)). This does not mean that Texas law does not authorize massage schools to offer longer programs. It plainly does, as illustrated by the fact that Cortiva and other schools, including Texas community colleges, have offered and offer massage therapy programs longer than 500 hours for years. ECF No. 26-3 (Ex. 3 to Pls.' Reply Br.) (listing 25 massage therapy programs in Texas with programs exceeding 500 hours). TDLR—both then and now—never told schools to reduce program length.

The Department claims that its interpretation of the state authorization requirements is longstanding, which means that these requirements applied in June. It took the Department five weeks since this Court issued the preliminary injunction to come up with this interpretation which coincidentally has the same effect as the enjoined Bare Minimum Rule. The Department seeks to call the Bare Minimum Rule by another name, and the Court should hold it accountable.

## II. The Department Alternatively Should Be Enjoined from Implementing Its Novel Interpretation of 20 U.S.C. § 1001(a)(2), the "Bare Minimum Rule 2.0"

The Department offers threshold objections that this Court's substantive review of its § 1001(a)(2) argument, the centerpiece of its motion to dismiss, is beyond the scope of the Complaint, *see* ECF No. 55 at 9, and that it would be "improp[er]" for the Court to "reach[] the issue at all at this juncture," *id.* at 11. But those protestations fail. And the Department has completely failed to address the Court's inherent authority to protect its jurisdiction. *See* ECF No. 50 at 14 (citing *In re Joseph P. Conte Toyota, Inc.*, 17 F.3d 537 (5th Cir. 1998)).

The Department cannot have it both ways—invoking its § 1001(a)(2) argument to attack Cortiva's standing but then protesting that the issue is not properly before the Court. If the Department's *ex cathedra* declaration about the Title IV eligibility of the PMT Program is legally irrelevant, then the Department should withdraw its motion to dismiss and stop making irrelevant arguments about the legality of the conduct of a regulated party and Administrative Procedure Act ("APA") litigant. If instead, the Department wants the Court to give legal force and effect to its pronouncement about Cortiva, then it has to face that the Court will review and weigh in on the validity of that position. In an APA case like this one, "'the reviewing court'—not the agency whose action it reviews—is to 'decide *all* relevant questions of law' and 'interpret . . . statutory provisions.'" *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2265 (2024) (quoting 5 U.S.C. § 706) (emphasis in original).

### A. Plaintiff Cortiva is likely to succeed in challenging the Department's § 1001(a)(2) argument

The application of § 1001(a)(2) to Texas's 500-hour minimum requirement is part and parcel of the Bare Minimum Rule challenged in the complaint.

#### i. The Department's argument represents a substantively and procedurally invalid application of § 1001(a)(2)

The Department's novel interpretation of the intersection of Texas law and § 1001(a)(2) is substantively and procedurally defective.

As identified in the Jones Declaration and the Rubinstein Declaration, the 150% Rule has always been a "safe harbor" and not a strict maximum. ECF No. 51 at 24 (Jones Decl. ¶ 25); ECF No. 51 at 27, 28 (Rubinstein Decl. ¶¶ 4, 6). As such, the Department's revised interpretation of state authorization does not comport with prior Department interpretation or practice. *Id.*

Historically, approval of program length for a program like the PMT Program is "automatic" when it meets the 150% Rule. *Id.* ¶ 27.

If the Department's latest interpretation of state authorization requirements—*i.e.*, turning a "safe harbor" into a strict ceiling—were developed, *ad hoc*, for purposes of defending against the Plaintiff's emergency motion, that interpretation does not have the force and effect of law. *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012) ("[D]eference is likewise unwarranted . . . when it appears that the [agency's] interpretation is nothing more than a 'convenient litigating position' [quoting *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 213 (1988) ] . . . or a '*post hoc* rationalization[n]'" quoting *Auer v. Robbins*, 519 U.S. 452, 462 (1997).). As such, the Department should refrain from invoking this erroneous argument against Cortiva and should relinquish the argument entirely.

If, in the alternative, the Department's revised interpretation of state authorization requirements *does* have the force and effect of law, then the Department—as required by the APA and the Higher Education Act ("HEA") at 20 U.S.C. § 1098a(b)(2)—must put its new policy position through negotiated rulemaking. *Bauer v. DeVos*, 325 F. Supp. 3d 74, 96 (D.D.C. 2018) (parties agreed that a Department policy was subject to the HEA's negotiated rulemaking requirement at § 1098a(b)(2)). The Department's entire argument is premised upon the notion that its new interpretation applies to and binds Cortiva, such that Cortiva lacks standing. *See* ECF No. 43 at 6–9. But the Department simply cannot make that argument where, as in this case, a new interpretation is not reflected in a legislative rule that has gone through notice-and-comment rulemaking. *Kisor v. Wilkie*, 588 U.S. 558, 583 (2019).

The Department also does not—because it cannot—show that the revised interpretation comports with the historical interpretation of state authorization or the 150% Rule. In the 1994 Notice of Proposed Rulemaking on the 150% Rule, the Department wrote:

> The Secretary proposes to consider the relationship between the quantity of training provided in the program and entry-level requirements to be reasonable if the number of clock hours in the program does not exceed by more than 50 percent any State requirement for the minimum number of clock hours necessary to train the student in the occupation for which the program prepares the student.

*Student Assistance General Provisions & Federal Pell Grant Program*, 59 Fed. Reg. 9,526, 9,548 (Feb. 28, 1994). Clearly, the Department intended the provision to be a safe harbor provision for students to offer 150% of the state's minimum hours requirement, as Cortiva has done. The Department has no basis to reinterpret this history going back over thirty (30) years.[3]

The Department willfully misinterprets the Jones Declaration to confirm that a state must approve each hour of a program for authorization requirements, while quoting the Department's own declaration that where states approve programs of a specific number of hours, "the Department considers the state's authorization to cover only program of that length." ECF No. 55 at 11 (quoting Second Mecca Decl. ¶ 5 [Def. MTD App. 3]). The Department, however, blatantly ignores the following statement from the Jones Declaration:

> If the program is longer than the bare minimum hours for licensure, which the state approves, and within 150% of the clock hours required for licensure, then [the] Department *may not deny* Title IV participation *on the*

---

[3] The Office of Hearings and Appeals ("OHA") cases the Department cites are similarly unavailing. In addition to being subject to a New York state statute that differs from the Texas rules in the instant case, *In re Academy for Social Action*, Dkt. No. 91-6-SP, predates the 150% Rule regulation and, therefore, cannot be relied upon for cherry-picked language that the current Department views favorably. New York law back then, unlike the Texas rule, stated that schools "shall conduct only those curricula or courses which have been approved by the Commissioner." *Id*. at 3. The other OHA Case, *In the Matter of Molloy College*, Dkt. No. 94-63-SP, not only predates the 150% Rule (the case arises out of a Final Program Review Determination for the 1991-92 and 1992-93 award years) but stands only for the provision that a school's programs must be legally authorized by the state in which the school is physically located, which is not a subject of controversy in this case. Indeed, the Department has offered no evidence that TDLR has determined that the PMT Program is not authorized in Texas.

*basis of inappropriate program length*." ECF No. 51 at 22 (Jones Decl. ¶ 19) (emphasis added).

The Jones Declaration does not purport to support the Department's position but states the obvious: the 150% Rule allows for schools, like Cortiva, to offer 150% of the minimum number of clock hours under state law without becoming ineligible for Title IV, HEA funds.

The Department entirely ignores the fact that, as an equal member of the higher education triad, the Accrediting Commission of Career Schools and Colleges, a Department-recognized and approved accreditor and Cortiva's accreditor, approved the 600-hour PMT Program, confirming that the additional 100 hours are not, as the Department shockingly suggests, "for dance or video gaming." ECF No. 55 at 16; ECF No. 44 at 4 (Second Mecca Decl.) (stating that Cortiva's "schools are accredited by the Accrediting Commission of Career Schools and Colleges").

### ii. The Department's argument constitutes unlawful First Amendment retaliation

The Department also fails in refuting Plaintiff Cortiva's First Amendment challenge to its retaliatory conduct. The Department misstates the law on First Amendment retaliation claim. The Department argues that if the government "has a valid reason for its action, unrelated to the plaintiff's First Amendment-protected activity, courts generally reject retaliation arguments." ECF No. 55 at 17 (citing *Alexander v. City of Dallas*, No. 3:22-CV-1193-S, 2024 WL 1260584, at *7–8 (N.D. Tex. Mar. 25, 2024)). But the Department's argument is contradicted by the Supreme Court's recent decision in *N.R.A. v. Vullo*, 602 U.S. 175 (2024). The Supreme Court held that, even if the government could permissibly pursue law-enforcement efforts, a plaintiff may nevertheless state a valid First Amendment retaliation claim that the government did so for an impermissible retaliatory purpose. *See id.* at 195. The Supreme Court held that even "the conceded illegality of the [plaintiff's] . . . programs does not insulate [the government] from First Amendment scrutiny."

*Id.* at 196. Although a government official "can pursue violations of . . . law, she cannot do so in order to punish or suppress [a private party's] protected expression." *Id*.

Plaintiffs engaged in quintessential protected First Amendment activity. "[T]he Petition Clause [of the First Amendment] protects the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes." *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 387 (2011) (collecting cases). In response to Plaintiff Cortiva's filing of this lawsuit, and after five weeks of stalling, the Department dreamed up a new interpretation of a longstanding regulatory requirement to pursue the back-door application of a preliminarily enjoined regulation to declare Plaintiff Cortiva ineligible for any Title IV funds. Under *N.R.A. v. Vullo*, that is impermissible First Amendment retaliation.

The Department further resists this conclusion by arguing that there has been no chilling effect, since Cortiva has not been coerced into dropping its lawsuit. *See* ECF No. 55 at 16. But that is not how courts evaluate chilling effect. First Amendment retaliation is actionable even when it does not succeed. "[A]n actual chill is not necessary to state a First Amendment violation," *Bennett v. Hendrix*, 423 F.3d 1247, 1254 (11th Cir. 2005), and "to require that the harm of 'chilling effect' actually be suffered by the plaintiff would destroy the whole purpose of the concept," *United Presbyterian Church in the U.S.A. v. Reagan*, 738 F.2d 1375, 1379 (D.C. Cir. 1984). "The effect on freedom of speech may be small, but since there is no justification for harassing people for exercising their constitutional rights it need not be great in order to be actionable." *Keenan v. Tejeda*, 290 F.3d 252, 259 (5th Cir. 2002) (quotation omitted). "[I]t would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity." *Id.* (quotation omitted). Plaintiff Cortiva has adequately and credibly averred that the Department's tactics and threat of enforcement have had

a chilling effect, and the Department's observation that Cortiva has nevertheless been forced to stay in this case does not change that.[4]

This Court should not condone the Department's retaliatory tactics in violation of the First Amendment, which also violate this Court's preliminary injunction.

**B.   Plaintiff Cortiva has established irreparable harm and that the balance of the equities and public interest favor equitable relief**

The Department's arguments against irreparable harm, *see* ECF No. 55 at 19–20, are essentially that the Department will be harmed if it can no longer threaten enforcement actions against to destroy standing. Plaintiff Cortiva is plainly harmed by the Department's public declaration that it is unlawfully accepting Title IV funding. Plaintiff Cortiva also demonstrates irreparable harm by establishing "the potential chilling effect on the guarantees of free speech." *Babler v. Futhey*, 618 F.3d 514, 524 (6th Cir. 2010); *see also Elam Const., Inc. v. Reg'l Transp. Dist.*, 127 F.3d 1109 (10th Cir. 1997). The Department also offers no meaningful response to the straightforward principle that the equities and public interest favor an injunction to prevent the Department from engaging in unlawful activity. *See generally* ECF No. 50 at 20–21.

## CONCLUSION

For the reasons stated herein, the Court should promptly enter an order for the Department to show cause why it should not be held in civil contempt. In the alternative, the Court should further enjoin the Department, as previously requested, from taking *any* action to deprive Cortiva of Title IV eligibility for student aid without first affirmatively seeking leave of court.

---

[4] The Department is simply attempting to throw everything they can at Plaintiff Cortiva in a heavy-handed effort to make this case go away. The Department declares that Cortiva is "ineligible" for Title IV funding more than 10 times in its 21-page Memorandum in Opposition. At this point, it is unclear whether Cortiva could even get a fair hearing before the Department when it has already publicly stated that Cortiva is ineligible. *See* American Bar Association, *A Blackletter Statement of Federal Administrative Law*, 54 Admin. L. Rev. 17, 22 (2002) ("A decision by a biased decisionmaker may violate due process as well as the APA . . . . Bias or prejudgment exists when the decisionmaker . . . has prejudged the facts against a party, or, prior to the commencement of the hearing, had developed personal animus against a party, witness, or counsel or a group to which they belong.").

| | |
|---|---|
| Dated August 30, 2024 | Respectfully submitted,<br><br>*/s/ John S. Moran*<br>Melissa Hensley (Texas Bar No. 00792578)<br>Cory R. Ford (Texas Bar No. 24121098)<br>Michael C. Elliot (Texas Bar No. 24086913)<br>McGuireWoods LLP<br>2601 Olive Street, Suite 2100<br>Dallas, TX 75201<br>Telephone: (469) 372-3926<br>Facsimile: (214) 273-7475<br>mhensley@mcguirewoods.com<br>cford@mcguirewoods.com<br>melliott@mcguirewoods.com<br><br>Farnaz Farkish Thompson (D.C. Bar No. 1659285) (*pro hac vice*)<br>John S. Moran (D.C. Bar No. 1014598) (*pro hac vice*)<br>Jonathan Helwink (D.C. Bar No. 1754411) (*pro hac vice*)<br>Stephen Tagert (Virginia Bar No. 99641) (*pro hac vice*)<br>McGuireWoods LLP<br>888 16th Street NW, Suite 500<br>Black Lives Matter Plaza<br>Washington, DC 20006<br>Telephone: (202) 828-2817<br>Facsimile: (202) 828-3327<br>fthompson@mcguirewoods.com<br>jmoran@mcguirewoods.com<br>jhelwink@mcguirewoods.com<br>stagert@mcguirewoods.com<br><br>*Counsel for Plaintiffs* |

## **CERTIFICATE OF SERVICE**

  I hereby certify that on August 30, 2024, I caused the foregoing to be filed with the Clerk of the U.S. District Court for the Northern District of Texas using the Court's CM/ECF system, which will electronically serve copies of the same on counsel for all parties.

            */s/ John S. Moran*
            John S. Moran